1  Richard N. Sieving, Esq. (SBN 133634)
   **THE SIEVING LAW FIRM, A.P.C.**
2  100 Howe Avenue, Suite 220N
   Sacramento, CA 95825
3  Telephone: (916) 444-3366
   Facsimile: (916) 444-1223
4  rsieving@sievinglawfirm.com

5  Shanon J. Carson, *pro hac vice forthcoming*
   Lawrence Deutsch, *pro hac vice forthcoming*
6  Jacob M. Polakoff, *pro hac vice forthcoming*
   **BERGER & MONTAGUE, P.C.**
7  1622 Locust Street
   Philadelphia, PA 19103
8  Telephone: (215) 875-3000
   Facsimile: (215) 875-4604
9  scarson@bm.net
   ldeutsch@bm.net
10 jpolakoff@bm.net

11 Charles E. Schaffer, *pro hac vice forthcoming*
   **LEVIN, FISHBEIN, SEDRAN & BERMAN**
12 510 Walnut Street, Suite 500
   Philadelphia, PA 19106
13 Telephone: (215) 592-1500
   Facsimile: (215) 592-4663
14 cschaffer@lfsblaw.com

15 *Attorneys for Plaintiffs Jeffrey Snyder and Martin and Beth Melnick*

16

17              UNITED STATES DISTRICT COURT

18              EASTERN DISTRICT OF CALIFORNIA

                     FRESNO DIVISION
19

20 JEFFREY SNYDER and MARTIN and
   BETH MELNICK, on behalf of themselves        No.
21 and all others similarly situated,

22              Plaintiffs,

                                                **CLASS ACTION COMPLAINT**
23        v.

24 TAMKO BUILDING PRODUCTS, INC.,
   a Missouri Corporation,                      **JURY TRIAL DEMANDED**
25
                Defendant.
26

27 / / /

28 / / /

   CLASS ACTION COMPLAINT – Page 1

Plaintiffs Jeffrey Snyder ("Snyder") and Martin and Beth Melnick (the "Melnicks;" collectively, "Plaintiffs") on behalf of themselves and all persons and entities similarly situated (the "Class"[1]), by and through the undersigned counsel, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief based on, *inter alia*, investigation conducted by counsel.

## I. <u>INTRODUCTION</u>

1.       This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a Class of individuals and entities who own or have owned homes, residences, buildings and other structures on which fiberglass roofing shingles, sold under the name "Heritage" and manufactured by TAMKO Building Products, Inc., a Missouri Corporation (formerly known as TAMKO Roofing Products, Inc.) ("Defendant" or "TAMKO"), are or have been installed.

2.       Defendant's Heritage shingles are plagued by design and/or manufacturing flaws that result in the shingles becoming brittle, cracking, curling, blistering, degranulating, growing algae, generally deteriorating and leaking.  Yet Defendant continues to sell the shingles to the public and continues to make false representations and warranties despite the fact that the shingles are defective and will prematurely fail – causing property damage and costing consumers substantial removal and replacement costs.

3.       Defendant has failed to disclose these problems to consumers, including Plaintiffs and the Class, and has breached its warranty by refusing to adequately compensate property owners who have been injured as a result of the latent defects.

4.       This class action seeks damages, punitive damages, injunctive relief, costs, attorneys' fees, and other relief as a result of Defendant's willful, wanton, reckless, and/or grossly negligent conduct in causing consumers' homes, residences, buildings and other structures to be in a defective, unsafe and unfit condition for habitation.

/ / /

/ / /

/ / /

---

[1] The Class is fully defined in paragraph 71 below.

CLASS ACTION COMPLAINT – Page 2

1

## II. PARTIES

2      5.      At all relevant times, Plaintiff Jeffrey Snyder has been a citizen of California,

3   residing in Tuolumne County.

4      6.      At all relevant times, Plaintiffs Martin and Beth Melnick have been citizens of

5   Connecticut, residing in Hartford County.

6      7.      TAMKO Building Products, Inc. is a corporation organized and existing under

7   the laws of the State of Missouri, with its principal place of business located in Joplin, Missouri.

8   Prior to June 2006, TAMKO Building Products, Inc. was known as TAMKO Roofing Products,

9   Inc.

10      8.      Defendant designed, manufactured, warranted, advertised, and sold defective

11   shingles that were installed on thousands of structures located in California, Connecticut and

12   throughout the United States.

13

### III. JURISDICTION AND VENUE

14      9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(d).  The

15   matter in controversy in this class action exceeds $5,000,000.00 exclusive of interest and costs,

16   and Plaintiffs and most members of the Class are citizens of states other than the state in which

17   Defendant is incorporated and has its primary place of business.

18      10.      Venue is proper pursuant to 28 U.S.C. §1391(b) because: (1) a substantial part of

19   the events giving rise to this action occurred in this District; and (2) a substantial part of the

20   property that is the subject of this action is located in this District.   In addition, Defendant

21   distributes shingles through twenty-seven (27) California dealers and distributors within 100

22   miles of Plaintiff Snyder's home.

23      11.      As a result of Defendant marketing, distributing, promoting, and/or selling

24   Heritage shingles throughout California, either directly or indirectly through third parties (such as

25   the dealers and distributors mentioned above) or related entities, Defendant obtained the benefits

26   of the laws of California and profited from California commerce.

27   / / /

28   / / /

CLASS ACTION COMPLAINT – Page 3

12.     Defendant conducted systematic and continuous business activities throughout the state of California and otherwise intentionally availed itself of the market in California through the promotion and marketing of its products.

## IV. FACTUAL ALLEGATIONS

13.     Since 1985, Defendant has been engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing fiberglass Heritage shingles.  On its website, Defendant boasts that "Heritage Series Laminated Asphalt Shingles by TAMKO have always provided years of striking beauty and excellent roofing protection."[2]

14.     Defendant sells its products through a network of retailers, installers, dealers and distributors.

15.     Heritage shingles are manufactured using the same basic formula: a base that consists of a double-layer fiberglass mat coated on both sides with asphalt, and a top layer of ceramic mineral granules along with a strip of asphalt sealant.

16.     Defendant has manufactured and marketed its shingles under the American Heritage series with various product names including, but not limited to, Heritage, Heritage 50, Heritage 50 AR[3], Heritage XL AR, Heritage 30, Heritage 30 AR, Heritage Vintage, Heritage Vintage AR, Heritage Premium, Heritage Woodgate, Heritage IR, Heritage Declaration, Heritage M50, Heritage MXL, Heritage M30, Heritage Stormfighter AR, and Heritage Windfighter.

17.     Defendant maintains District Offices in Colorado, Alabama, Maryland, Texas and Missouri; Manufacturing Facilities in Alabama, Maryland, West Virginia, Tennessee, Kansas, Missouri, Florida and Texas; Warehouses in Colorado, Utah, Arizona, Nebraska, Oklahoma, Missouri and Florida; and a Public Warehouse in Texas.

18.     Customers of Defendant make purchasing decisions based, in part, upon the information presented by the company through its website, marketing literature, advertisements and warranties.

/ / /

---

[2] *See* http://www.tamko.com/ResidentialRoofing/LaminatedAsphalt/Heritage (last visited November 6, 2015).
[3] Defendant has defined "AR" as "[a] suffix used in TAMKO shingle product names denoting algae resistance." *See, e.g.,* https://web.archive.org/web/20020605220426/http://www.tamko.com/glossary/glossaryalpha.asp?A. Despite this definition, Defendant's shingles promote the growth of algae.

19.     On its website, www.tamko.com, Defendant makes the following claims concerning its shingles (including Heritage):

Offering quality roof protection is in our Heritage.

\*\*\*

Heritage Series Laminated Asphalt Shingles by TAMKO® have always provided years of striking beauty and excellent roofing protection.

\*\*\*

Choosing TAMKO® products will provide professional-grade performance to enhance roof protection.

\*\*\*

TAMKO products offer a powerful combination of cut, color and coverage to give customers the beauty and performance they need.

\*\*\*

Nothing distinguishes the look of a home quite like an architecturally shingled roof. But more than aesthetics alone, a roof should offer performance and protection. TAMKO® offers a complete line of shingles that delivers the cut, color and coverage that not only allows you to express your style as a homeowner, but also helps protect your most valuable asset. Now that's beauty that performs.

\*\*\*

Shingles with a great Heritage.

\*\*\*

The beautiful look that lasts.

- Extra-thick weather-resistant construction provides years of protection.

\*\*\*

Reinforce the beauty with Heritage construction.

- Made with a double-layer fiberglass mat for strength.
- Coated on both sides with weathering-grade asphalt and topped with ceramic mineral granules for excellent roofing protection.
- Features self-sealing asphalt strip for added wind resistance.

\*\*\*

- Improves the look and curb appeal of your home without the high costs or liabilities associated with wood.
- Excellent for new construction or reroofing.

\*\*\*

CLASS ACTION COMPLAINT – Page 5

BUILDING PRODUCTS FOR THE PROFESSIONAL.

Since 1944, building professionals and homeowners have looked to TAMKO for quality products that are built to perform.

20.     Defendant has knowingly and intentionally concealed that, notwithstanding statements on its website (such as the above), brochures, advertisements and warranties, its shingles routinely deteriorate by becoming brittle, cracking, curling, blistering and degranulating far in advance of the expiration of their purported warranty periods, often causing leaking and resulting in mold formation.  Indeed, Defendant's shingles have deteriorated and will continue to deteriorate at a rate which demonstrates their lack of durability and resiliency.

21.     Defendant advertised that the shingles meet certain industry standards (*i.e.*, ASTM International – a standard setting organization that establishes industry standards for many different products) despite failing to test and adequately determine the reliability of its product when used in the real world.

22.     Defendant has knowingly and intentionally concealed that it actually had no intention of providing the services set forth in its purported warranties.

23.     Defendant has had ample notice of the deficiencies described herein for many years and has been extensively notified by its customers (by way of warranty claim submissions and complaints) that its shingles are/were defective and not functioning as advertised and warranted.

24.     Defendant has routinely obstructed Class members' attempts at making warranty claims for their defective shingles.

25.     In addition to damages to their shingles and roofs, Plaintiffs and the Class have also suffered damage to the underlying structures, including to their real and personal property.

26.     Defendant has ignored customers' complaints and concerns, and has failed to implement any changes to its shingle products or warranty procedures to remedy the defects associated with its products.

/ / /

/ / /

27. Had Defendant not withheld and omitted vital information concerning the design, reliability and performance of the shingles, Plaintiffs and members of the Class would not have purchased and/or installed them on the roofs of their structures.

**Frustrated Customer Postings**

28. The following represents a small sample of internet postings by owners of Defendant's shingles [sic throughout]:

> We had a 30 yr. roof installed on our home 10 yrs ago! We have been having trouble with this roof for the last 3 1/2 yrs, leaks and water damage! We ended up having to have a new roof put on our house because the shingles were Cracking, De-laminating and Disintegrating! We were told that the shingles were defectives! We filed a claim with Tamko and did what we were told to do! We sent them samples of the roof that were bad along with pictures of the roof! Now 8 weeks later they are telling us that the roof was not installed proper and that they will not reimburse us for the new roof![4]

> I purchased a new RYAN home in 2000 that has a TAMKO roof. The first time I had water damage and reported it TAMKO sent out a local consultant who tried to tell me the shingles was not breaking down and the tar on my home was bird droppings. I had another contract review my roof and he told me that was BULL. HE said he'd never seen shingle break down that fast. Now TAMKO is trying to say the cannot fix my roof because my shingle warranty is void since we had a wind event of 60 mile an hour winds (or more).[5]

> These shingles are the worst I have ever seen and I was married to a roofing contractor. I bought a brand new house in Nov 2006 and in July I about lost my whole roof, water pouring in every room due to shingles flying off like frisbees. They are half the thickness of most and don't have enough tar to make them stick together. What a nightmare with buckets all over my 4 bedroom house, water pouring in like the falls in every room, in the middle of the night, while listening to shingles flapping all over the roof. Every room had to be treated for stains and painted. Don't buy Tamko![6]

> These, by far, are the worst shingles I have ever had installed. I had a professional installer put these on a few years ago (they are 30 year shingles)... It was a very warm day (90+) and the shingles did not seal on over half my roof. I have literally had to re-install almost half my roof in the past 5 years. I am just biding my time until I can install metal. Note: never buy this product![7]

> My 25 year warranty on these "upgraded" Tamko shingles is apparently worth nothing! The shingles are curling and look awful. There is also a great loss in granules with every rain. Our roofer that our whole family has used for 2 decades (with no problem ever) says the shingles are defective. Tamko says our very experienced roofer put the shingles on incorrectly and it's not their problem.

---

[4] http://mythreecents.com/reviews/tamko (last visited November 6, 2015).

[5] *Id.*

[6] http://www.roofery.com/shingles/reviews/tamko/ (last visited November 6, 2015). On www.roofery.com, sixty (60) TAMKO shingles consumers have given a Satisfaction Rating of "Very Unsatisfied" – the lowest Satisfaction Rating choice offered by the website.

[7] *Id.*

Roofer says they are installed correctly. Tamko is also blaming winds for causing the damage despite the fact that all the roofs on other homes surrounding me are fine. So, I'm stuck with a crap roof and no help. Do not buy anything from Tamko![8]

My roof is falling apart, I thought it was hail damage, but the insurance guy and the roofing contractor said the shingles were defective. You can't believe the hoops you have to jump through for Tamko to tell you it's not their fault it's the installer's fault. They will not send anyone to even look at your roof. Your contact person is a very rude woman who could care less. This company does not stand behind their product! I have a 30 year roof. I've been in my home since 2000. I've replaced two places on the roof so far. Shingles are falling off right and left. I will have to get an attorney to get this matter solved. Do not use this company!!!!![9]

29.     Defendant should have or could have reasonably expected that Plaintiffs and members of the Class would be adversely affected by defective shingles as a result of using the shingles in a foreseeable way on their homes, residences, buildings and other structures.

**Failure to Warn**

30.     Defendant failed to properly design, test, and manufacture its shingles.   The shingles reached the consuming public, including Plaintiffs, without substantial correction of their defects and without warning of the latent defects alleged herein.

31.     Defendant was aware that problems existed with its shingles but did not provide warnings with the shingles or otherwise warn consumers, installers and/or distributors of the problems or dangers that it knew existed.   In fact, to this day, Defendant has concealed its knowledge of the defects and the potential defects in its shingles from the public.

32.     Defendant never informed Plaintiffs, or other consumers of its shingles, of the defective nature of its shingles and the resultant inability of such products to last for the periods for which they would reasonably be expected to last, that is, for the length of the warranties they were seemingly arbitrarily given.

33.     To this day, Defendant has not recalled its defective shingles.

**Inadequate Testing**

34.     Defendant did not test the shingles in their anticipated environments before selling them to the public.

/ / /

---

[8] *Id.*
[9] *Id.*

CLASS ACTION COMPLAINT – Page 8

35.     Defendant conducted inadequate testing, quality control and research and development on the shingles and failed to test them for things that they knew or should have known would result in their premature failure.

36.     Defendant failed to investigate or test whether various conditions would lead to premature failure of the shingles.

**Defendant's Shingle Warranty**

37.     Defendant sold and sells warranties with their Heritage shingles for various periods of time – the longest being 50 years.  The warranties are marketed and promoted and create an expectation and belief within the industry, and with ordinary consumers, that the shingles will last as long as the warranty period.  The warranty furthers these expectations by guaranteeing that a shingle will last for a specified period of time.

38.     Defendant makes[10] the following representations concerning its warranties:

**ALL LIMITED WARRANTIES AREN'T CREATED EQUAL.**

\*\*\*

TAMKO's Limited Warranty value is clear.

\*\*\*

GOING BEYOND THE BEAUTY.

The beauty of your roof is only half the story. Shingles begin to age as soon as they are exposed to nature. Buildings experience aging factors differently, so it is difficult to predict how long shingles will last. That's why TAMKO provides a limited warranty.

39.     Defendant states that its shingles are listed for and meet the following industry standards: ASTM D 3462; Class A Fire Resistance; Wind Resistance; UL Evaluation Report ER2919-01; UL Evaluation Report ER2919-02; UL 790/ASTM E 108, Class A; ASTM D 3161, Type I, Class F (110 mph); ASTM D 7158 Class H (150 mph); and UL 2390/ASTM D 6381 Class H (150 mph)[11]

40.     The proposed Class was generally charged more money to purchase shingles with a longer warranty.

/ / /

---

[10] *See* www.tamko.com (last visited November 9, 2015).
[11] https://www.tamko.com/ResidentialRoofing/LaminatedAsphalt/Heritage (last visited November 9, 2015).

CLASS ACTION COMPLAINT – Page 9

41.     Defendant established a warranty period to be advertised and guaranteed for its shingles without conducting appropriate testing to determine if the warranty period was supported by actual or simulated use.

42.     Defendant has received a litany of complaints from consumers, such as Plaintiffs and other members of the Class.  Defendant has refused to convey any notice to consumers concerning defects with its shingles, repair defective roofs fully, or repair property damaged by the premature failure of its product.

43.     As described herein, Defendant routinely impedes consumers' efforts to make warranty claims for their shingles.  When consumers contact Defendant, Defendant's customer service representatives dissuade consumers from filing warranty claims.

44.     When Defendant does allow a consumer to submit a warranty claim, Defendant often denies the claim without proper justification, blaming the failure of the shingles on improper installation or fictional circumstances such as high wind events that never occurred.

45.     When Defendant does accept a warranty claim, Defendant's response is woefully inadequate in that it limits the recovery of Plaintiffs and members of the Class to replacement costs of individual shingles piece-by-piece, and excludes costs of labor to remove and replace the shingles.

**Plaintiffs' Facts**

**Plaintiff Jeffrey Snyder**

46.     Plaintiff Jeffrey Snyder is the first and current owner of a home located in Sonora, California.

47.     In or around October 2004, Defendant's Heritage 30 shingles were installed on Snyder's home during construction.  Snyder purchased the home from the builder in or around February 2005.

48.     In 2013, a contractor told Snyder that his shingles were in very poor condition. The shingles had bare patches and granules had collected in Snyder's gutters.

/ / /

/ / /

49.      Over the next year, the condition of Snyder's shingles worsened.  Snyder noticed degranulation, cracking and curling of the shingles.  The shingles had become brittle and dry and felt could be seen through several of the shingles.

50.      In June 2015, Snyder became aware that the shingles were Defendant's Heritage 30 shingles and contacted Defendant to file a warranty claim.  Defendant's representative was hostile and attempted to prevent Snyder from making a claim.  Snyder insisted, so the representative finally opened a claim.  Pursuant to Defendant's instructions, Snyder provided Defendant with the requested information and sent two (2) full shingles from his roof to Defendant.

51.      In response to Snyder's warranty claim, on August 14, 2015, Defendant sent Snyder a settlement certificate for 15 of the 23 squares of shingles needed for Snyder to reroof his home and a check for $100.

52.      In order to accept the settlement certificate and check, Snyder was required to sign a release that would waive any claims Snyder may have related to Defendant's defective product.  Snyder refused to sign Defendant's release or cash the check.

53.      In June 2015, Snyder had his defective TAMKO roof replaced at a cost of approximately $12,000, an expense he should not have had to incur for another two decades.

**Plaintiffs Martin and Beth Melnick**

54.      Plaintiff Martin and Beth Melnick are the owners of a home located in West Hartford, Connecticut, which they purchased in or around November 1988.

55.      The Melnicks selected Defendant's Heritage 50 AR shingles for the reroofing of their home because of the duration of the warranty and the fact that the product was "algae resistant."

56.      In September 2002, the Heritage 50 AR shingles were installed on the Melnicks' home.  The installation of Defendant's shingles cost the Melnicks $6,400.

57.      The Melnicks' shingles have cracked and degranulated, including many areas where all of the shingles' granules have come off.  These issues have caused water to leak into the Melnicks' home in at least four distinct places, damaging the home's ceiling and walls.

58.     In June 2013, the ceiling in the Melnicks' master bedroom began to crack and peel.  This leak has continued to get worse in the time since.

59.     In late 2014, the Melnicks noticed water marks on the perimeter wall of the Melnicks' master bedroom.

60.     Also in late 2014, a ceiling leak occurred in one of the home's bathrooms.

61.     In June 2015, the Melnicks discovered water coming down the wall in the upper level hallway of their home.  This leak has caused the paneling on the wall to delaminate and has resulted in mold formation.

62.     Additionally, the Melnicks' shingles are now covered with areas of dark mildew and are growing moss.

63.     In December 2014, the Melnicks initiated a warranty claim with Defendant.  The Melnicks followed Defendant's burdensome warranty claim instructions, including removing at their own expense and sending to Defendant two shingle samples, one exhibiting cracking and one exhibiting mildew.

64.     On March 23, Defendant sent the Melnicks a letter denying their warranty claim.  In the letter, Defendant made several dubious assertions, including that the cracks in the Melnicks' shingles were a part of the "natural aging process."

65.     The problems with the Melnicks' shingles will force them to prematurely replace the roof at their own expense to avoid further damage to their home.  Had their consumer expectations been met, the costs associated with such replacement would not be expected to be incurred for nearly four more decades.

## V. ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

66.     Defendant knew that its shingles were defective prior to the time of their sale, and intentionally concealed material information and the truth concerning its products from Plaintiffs, members of the Class and the general public, all the while continually marketing and promoting the shingles.  Defendant's acts of fraudulent concealment include failing to disclose that Defendant's shingles were defectively manufactured and would deteriorate in less than their expected lifetime, leading to damage.

67.     Because the defects in the Defendant's shingles are latent and not detectable until manifestation, and given the locations where Defendant's shingles are foreseeably placed and therefore difficult to view, defects are difficult to detect.  Plaintiffs and the Class members were not reasonably able to discover that Defendant's shingles were defective and unreliable until recently, despite their exercise of due diligence.  Thus, the running of the applicable statutes of limitation have been tolled with respect to any claims that Plaintiffs or the Class members have brought or could have brought as a result of the unlawful or fraudulent course of conduct described herein.

68.     Defendant had a duty to disclose that its shingles were defective, unreliable and inherently flawed in their design and/or manufacture and that the shingles would fail within their expected period of use, resulting in significant damages and eventually catastrophic failure.  Notwithstanding its duty to inform Plaintiffs and Class members, Defendant has never disclosed the defects to Plaintiffs and the Class.

69.     As a result, Defendant is estopped from pleading any statute of limitations defense.  Defendant actively concealed and misrepresented to Plaintiffs and the Class members facts that were essential to understanding that Plaintiffs and the Class members had claims against Defendant, and thus, Defendant has acted to prevent Plaintiffs and the Class members from learning that they possessed claims against Defendant.  Had Plaintiffs and the Class been aware of the facts which Defendant misrepresented and concealed, they would have commenced suit against Defendant before the running of any statute of limitations alleged to be applicable to this case.

70.     Defendant is further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of its fraudulent concealment.

## VI. <u>CLASS ACTION ALLEGATIONS</u>

71.     Plaintiffs seek to bring this case as a class action, under Federal Rule of Civil Procedure 23, on behalf of themselves and all others similarly situated.  The proposed Class is defined as:

/ / /

All individuals and entities that own or have owned TAMKO Heritage shingles, or who own or have owned homes, residences, buildings or other structures located in the United States, on which TAMKO Heritage shingles are or were installed (the "Class"). Excluded from the Class are TAMKO, any entity in which TAMKO has a controlling interest or which has a controlling interest in TAMKO, and TAMKO's legal representatives, assigns and successors.

72.    Alternatively, or in addition to the nationwide Class claims, Plaintiffs brings these claims under Federal Rule of Civil Procedure 23 on behalf of themselves and on behalf of Subclasses of individuals and entities residing in California and Connecticut (the "California Subclass" and the "Connecticut Subclass").  The California Subclass is defined as:

All individuals and entities that own or have owned TAMKO Heritage shingles, or who own or have owned homes, residences, buildings or other structures located in the State of California, on which TAMKO Heritage shingles are or were installed (the "California Subclass"). Excluded from the California Subclass are TAMKO, any entity in which TAMKO has a controlling interest or which has a controlling interest in TAMKO, and TAMKO's legal representatives, assigns and successors.

The Connecticut Subclass is defined as:

All individuals and entities that own or have owned TAMKO Heritage shingles, or who own or have owned homes, residences, buildings or other structures located in the State of Connecticut, on which TAMKO Heritage shingles are or were installed (the "Connecticut Subclass"). Excluded from the Connecticut Subclass are TAMKO, any entity in which TAMKO has a controlling interest or which has a controlling interest in TAMKO, and TAMKO's legal representatives, assigns and successors.

73.    Plaintiffs reserve the right to redefine the Class (and/or Subclasses) prior to the certification of the Class (and/or Subclasses).

74.    The Class and Subclasses described in this Complaint are collectively referred to as the "Class."

**Numerosity**

75.    The use of Defendant's shingles has damaged and continues to damage a vast number of persons and entities who own homes, residences, buildings or other structures on which its shingles are installed in California, Connecticut and throughout the United States.  The members of the Class are so numerous that joinder of all members is impracticable.

76.    The exact number of Class members is unknown as such information is in the exclusive control of Defendant.  However, given the widespread use of Defendant's shingles in

the United States, and the size and reach of its operations, Plaintiffs believe the Class consists of thousands of consumers statewide and nationwide, making joinder of Class members impracticable.

**Commonality and Predominance**

77.     The claims of Plaintiffs and members of the Class rely upon common questions of law and fact.   Plaintiffs and all Class members are also entitled to a common form of relief, namely damages.

78.     The harm that Defendant's shingles has caused, is causing, and will cause is substantially uniform with respect to all Class members.   Common questions of law and fact that affect the Class members include, but are not limited to:

a.     Whether Defendant's shingles are defective;

b.     Whether Defendant's shingles suffer from common design defects, as alleged herein;

c.     Whether the design defects concerning Defendant's shingles result in the Defendant's shingles being prone to becoming brittle, cracking, curling, blistering, degranulation, growing algae, general deterioration and failing to perform the tasks for which they were designed;

d.     Whether Defendant knew or should have known of the defect in the Defendant's shingles prior to putting them into the stream of commerce for purchase by Plaintiffs and the Class;

e.     Whether Defendant has failed to prevent damages caused by the defective product it designed, manufactured and sold into the stream of commerce;

f.     Whether Defendant has failed to advise consumers about the likelihood of premature failure of Defendant's shingles;

g.     Whether Defendant owes a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, warranting and marketing of the shingles;

h.      Whether Defendant breached its duty to Plaintiffs and the Class by designing, manufacturing, advertising and selling to Plaintiffs and the Class defective shingles;

i.      Whether Defendant breached its duty to Plaintiffs and the Class by failing to promptly remove the defective shingles from the marketplace or take other remedial action;

j.      Whether Defendant's shingles fail to perform in accordance with the reasonable expectations of ordinary consumers;

k.      Whether Defendant's shingles fail to perform as advertised, marketed and warranted;

l.      Whether Defendant breached express warranties;

m.     Whether Defendant breached implied warranties;

n.      Whether Defendant acted negligently;

o.      Whether Defendant violated consumer fraud acts and/or deceptive trade practice acts;

p.      Whether Defendant was unjustly enriched by the sale of the defective shingles;

q.      Whether Defendant's conduct should be enjoined;

r.      Whether Defendant should be required to notify all Class members about its defective shingles; and

s.      Whether Plaintiff and the Class have sustained damages and, if so, the proper measure of such damages.

79.     These common questions of law and fact predominate over any individual questions that may exist or arise.

**Typicality**

80.     Plaintiffs' claims are typical of absent Class members' claims.  All claims arise from the same factual background and legal theories.  Plaintiffs and all members of the Class sustained damages arising out of Defendant's wrongful course of conduct.  The harms suffered by Plaintiffs are typical of the harms suffered by the members of the Class, and Plaintiffs and other

/ / /

1  members of the Class have an interest in preventing Defendant from engaging in such activity in

2  the future.

3       **Adequacy of Representation**

4       81.    Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs

5  have retained counsel competent and experienced in class action and product liability litigation

6  and have no conflict of interest with other Class members in the maintenance of this class action.

7  Plaintiffs have no relationship with Defendant except as consumers who purchased Defendant's

8  products.  Plaintiffs will vigorously pursue the claims of the Class.

9       **Superiority**

10      82.    A class action is superior to other available methods for the fair and efficient

11 adjudication of this controversy because joinder of all members is impracticable.  Furthermore,

12 because the damages suffered by individual Class members may be relatively small, the

13 expense and burden of individual litigation makes it impracticable for the Class to individually

14 seek redress for the wrongs done to them.   Plaintiffs believe that Class members, to the extent

15 they are aware of their rights against Defendant herein, would be unable to secure counsel to

16 litigate their claims on an individual basis because of the relatively small nature of the

17 individual damages, and that a class action is the only feasible means of recovery for the Class

18 members.  Individual actions also would present a substantial risk of inconsistent decisions, even

19 though each Class member has an identical claim of right against Defendant.

20      **Manageability**

21      83.    Plaintiffs envision no difficulty in the management of this action as a class action.

22 The advantages of maintaining the action as a class action far outweigh the expense and waste of

23 judicial effort that would result from hundreds or thousands of separate adjudications of these

24 issues for each member of the Class or the injustice that would result if individual actions could

25 not be brought due to lack of notice or resources.

26      84.    Through the actions and omissions described herein, Defendant has acted or

27 failed to act on grounds that apply generally to the Class, so that final injunctive or declaratory

28 relief is proper as to the Class as a whole.

85.     Class treatment further ensures uniformity and consistency in results and will provide optimum compensation to members of the Class for their injuries.

### FIRST CAUSE OF ACTION

### Breach of Express Warranty

86.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

87.     Defendant marketed and sold the shingles into the stream of commerce with the intent that the shingles would be purchased by contractors, subcontractors, and end users for installation on homes, residences, buildings and other structures owned and bought by Plaintiffs and the Class.

88.     Defendant expressly warranted in writing that its shingles are well-suited as roofing material with a useful life of 30-50 years, depending on the version of shingles.  For purchasers of the shingles or of homes, residences, buildings and other structures with the shingles, these warranties became part of the basis of the bargain and Plaintiffs relied upon the warranties.

89.     Pursuant to Defendant's express warranty, Defendant is obligated to replace defective shingles or provide monetary relief.  In exchange for these duties and obligations, Defendant received payment of the purchase price for the shingles from Plaintiffs and the Class.

90.     Defendant created express warranties for the shingles through its sales brochures and marketing materials.  These warranties have full force and effect, notwithstanding any limitations in the "limited warranties" from Defendant.

91.     Defendant made the express warranties to the ultimate consumers, such as Plaintiffs and the Class.

92.     Defendant failed to perform as required under its purported warranties and breached said contracts and agreements by providing Plaintiffs and the Class with shingles that were defective and unfit for their intended use, and failed to appropriately replace the shingles or otherwise provide relief.

///

93.     Defendant breached its express warranties because the shingles do not perform as promised.  The shingles become brittle, crack, curl, blister, degranulate, grow algae, otherwise deteriorate and leak.  As a result, the shingles are not suitable for use as a roofing product.

94.     After determining that they had suffered damages from the failure of the shingles, Plaintiffs gave Defendant notice of the breaches of warranty, and Defendant had actual notice of these breaches.

95.     The limitations and exclusions in Defendant's warranties are unconscionable and unenforceable.

96.     Defendant denied or failed to pay all costs and damages associated with replacing Plaintiffs' shingles.

97.     Plaintiffs and the Class have relied on Defendant's express warranties to their detriment.

98.     Because of Defendant's breach of warranty, Plaintiffs and the Class suffered damages, including but not limited to any damage to underlying structures caused by the deterioration or failure of the shingles, and any other compensatory or consequential damages.  Plaintiffs and the Class reserve their right to seek all damages available by statute or law.

## **SECOND CAUSE OF ACTION**

### **Breach of the Implied Warranty of Merchantability**

99.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

100.    Defendant designed, manufactured, and sold its shingles knowing that they would be installed on homes, residences, buildings and other structures owned or bought by Plaintiffs and members of the Class.

101.    Defendant is a merchant of the shingles and marketed, promoted, and sold the shingles to the consuming public.

102.    Defendant expected the consuming public, including Plaintiffs and Class members, to install and use Defendant's shingles on their homes, residences, buildings and other

/ / /

structures and such use was reasonably foreseeable.  The shingles sold by Defendant were not merchantable at the time Defendant sold them.

103.    Defendant warranted to Plaintiffs and members of the Class that its shingles were of a quality that would pass without objection in the trade and were at least fit for the ordinary purposes for which such goods were used, and in all other respects were of merchantable quality.

104.    Plaintiffs and members of the Class relied on that implied warranty.

105.    Defendant breached its implied warranty of merchantability because Defendant's shingles were not of merchantable quality as they became brittle, cracked, curled, blistered, degranulated, grew algae, otherwise deteriorated and caused leaking, and were unfit for the ordinary purposes for which they were designed and used.

106.    Given where Defendant's shingles are installed – permanently affixed to the roof – any limitation of remedies claimed by Defendant must fail of its essential purpose in that if the shingles fail, significant damage to property will occur and the replacement of the failed shingles and the repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

107.    Defendant has been notified by Plaintiffs of the defective nature of its shingles and of its breach of warranty within a reasonable time of discovery.  As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

### THIRD CAUSE OF ACTION

**Breach of the Implied Warranty of Fitness for a Particular Purpose**

108.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

109.    Defendant designed, manufactured, and sold its shingles knowing that they would be installed on the homes, residences, buildings and other structures owned or bought by Plaintiffs and members of the Class.

110.    Defendant marketed, promoted, and sold the Defendant's shingles for installation and use on homes, residences, buildings and other structures owned or bought.

111.     Defendant knew that the shingles it designed, manufactured, and sold were to be used by Plaintiffs, Class members and other consumers on their homes, residences, buildings and other structures.

112.     Plaintiffs relied on Defendant's skill and/or judgment to furnish the shingles for use on their homes, residences, buildings and other structures which they owned.

113.     Defendant impliedly warranted that roofs using Defendant's shingles would be fit for the particular purpose of providing aesthetically pleasing protection from the elements for homes, residences, buildings and other structures owned by Plaintiffs and members of the Class.

114.     The Defendant's shingles were not fit for the particular purpose for which they were intended and became brittle, cracked, curled, blistered, degranulated, grew algae, otherwise deteriorated, prematurely failed and caused leaking when installed on Plaintiffs' and Class member's homes, residences, buildings and other structures.

115.     Defendant was properly notified of the defective nature of its shingles and of its breach of the implied warranty of fitness for a particular purpose within a reasonable time of its discovery.

116.     Given where Defendant's shingles were installed – permanently affixed to the roof – any limitation of remedies claimed by Defendant must fail of its essential purpose in that if the shingles fail, significant damage to property will occur and the replacement of the failed shingles and the repairs necessitated by the failure cannot be accomplished without considerable consequential cost and expense.

117.     As a direct and proximate result of Defendant's breach of implied warranty of fitness for a particular purpose, Plaintiffs and members of the Class have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**Strict Liability – Design Defect**

118.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

/ / /

119.    Defendant designed its shingles to be used and installed on the Plaintiffs' and Class members' homes, residences, buildings and other structures.

120.    The design of Defendant's shingles, including the formulation and composition of the material making up the shingle is defective and because of such design defects, Defendant's shingles are unreasonably dangerous to the consuming public, including Plaintiffs and members of the Class.  In contravention of Section 402A of the Restatement (Second) of Torts, Defendant's shingles posed a substantial likelihood of harm at the time they were sold.

121.    The design defect in Defendant's shingles existed at the time the shingles were sold and/or when the shingles left Defendant's possession or control.

122.    The risks inherent in the design of Defendant's shingles outweigh the benefits of its design.

123.    Feasible design alternatives existed to make Defendant's shingles safer for their intended use at the time of their design.

124.    Defendant's shingles were expected to be and were installed in consumers' homes, residences, buildings and other structures, including Plaintiffs' homes, without substantial change in its condition from the time of their design, manufacture and sale.

125.    Defendant is strictly liable for the injuries that the defective shingles have caused Plaintiffs and members of the Class.

126.    The injuries caused to Plaintiffs as a result of Defendant's defective shingles could and should have been reasonably foreseen by Defendant.

127.    As a proximate result of the defective design of the Defendant's shingles, Plaintiffs and the Class have incurred and will incur damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**Strict Liability – Manufacturing Defect**

128.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

129.    Defendant manufactured its shingles to be used and installed on Plaintiffs' and Class member's homes, residences, buildings and other structures.

130.     When the shingles left Defendant's control, they deviated in a material way from their design and/or performance standards.  As a result, Defendant's shingles were unreasonably dangerous to the consuming public, including the Plaintiffs.

131.     The Defendant's shingles were defectively manufactured and posed a substantial likelihood of harm at the time they were sold and/or when the shingles left Defendant's possession or control.

132.     Defendant's shingles were expected to be and were installed in consumers' homes, residences, buildings and other structures, including Plaintiffs' homes, without substantial change in their condition from the time of their manufacture and sale.

133.     Defendant is strictly liable for the injuries that the defective shingles have caused Plaintiffs and members of the Class.

134.     The injuries caused to Plaintiffs as a result of Defendant's defective shingles could and should have been reasonably foreseen by Defendant.

135.     As a proximate result of Defendant's defective manufacture of the shingles, Plaintiffs have incurred and will incur damages in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**

**Strict Liability – Failure to Warn**

136.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

137.     Defendant designed and manufactured the roofing shingles used and installed on Plaintiffs' and Class members' homes, residences, buildings and other structures.

138.     When Plaintiffs and members of the Class bought Defendant's shingles, they were not aware of the dangerous and destructive nature of the shingles.  Defendant knew or had reason to know that those consumers would not realize the dangerous condition of the shingles.

139.     Defendant did not provide, and Defendant's shingles did not contain, adequate warnings and as a result, the shingles were unreasonably dangerous to the consuming public, including the Plaintiffs and members of the Class.

/ / /

140.    The defect in Defendant's shingles, including the lack of warnings, existed at the time the Defendant's shingles were sold and/or when the shingles left Defendant's possession or control.

141.    Defendant's shingles were expected to be and were installed on consumers' homes, residences, buildings and other structures, including the homes of Plaintiffs and members of the Class, without substantial change in their condition from the time of their manufacture or sale.

142.    Defendant is strictly liable for the damage that its defective shingles and its lack of warnings have caused Plaintiffs.  Such harm would not have been suffered if Defendant had provided adequate warnings or instructions.

143.    The injuries caused to Plaintiffs and Class members as a result of the Defendant's defective shingles could and should have been reasonably foreseen by Defendant.

144.    As a proximate result of Defendant's failure to give adequate warnings or instructions regarding any reasonably foreseeable problems, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION

### Negligence

145.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

146.    Defendant designed, developed, formulated, tested, manufactured and sold Defendant's shingles for use and installation on homes, residences, buildings and other structures.

147.    Defendant was negligent in that it failed to use reasonable care when it designed, developed, formulated, tested, manufactured and sold its shingles.

148.    Defendant's shingles are unreasonably dangerous when used on homes, residences, buildings and other structures.

149.    Defendant owed a duty to the consuming public to design, develop, formulate, test and manufacture a product reasonably free of defect.  Defendant further had a duty not to put defective and dangerous products such as its shingles on the market.

150. At the time Defendant was selling its shingles, Defendant was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its shingles.

151. Defendant was negligent and breached its duty to the consuming public, including Plaintiffs, by designing, developing, formulating, testing, manufacturing and selling Defendant's shingles that, under ordinary use, are subject to becoming brittle, cracking, curling, blistering, degranulating, growing algae, otherwise deteriorating, prematurely failing and causing leaks.

152. The injuries sustained by Plaintiffs and members of the Class could have been reasonably foreseen by Defendant.

153. As a direct and proximate result of Defendant's negligent acts and/or omissions, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION

### Negligent Failure to Warn

154. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

155. Defendant owed a duty to the consuming public to design, develop, formulate, test, and manufacture a product reasonably free of defect.

156. Defendant had a duty to disclose to the consuming public the foreseeable risks associated with the use of its shingles on homes, residences, buildings and other structures.

157. Defendant was aware, or reasonably should have been aware, of the foreseeable risks associated with the use of its shingles on homes, residences, buildings and other structures.

158. Defendant was negligent in that it knew or, by the exercise of reasonable care, should have known that Defendant's shingles under ordinary use in homes, residences, buildings and other structures, might be harmful or injurious to the consuming public, including the Plaintiffs and members of the Class, but failed to use reasonable care to warn Plaintiffs and members of the Class and the consuming public of the potentially harmful and injurious effects in the manner that a reasonable person would under the same or similar circumstances.

159.    Defendant failed to exercise reasonable care and give adequate warnings or instructions to consumers about the reasonably foreseeable dangers that could result from using Defendant's shingles under reasonably foreseeable conditions.

160.    Consumers using and installing Defendant's shingles were not aware of the dangerous nature of them.

161.    Plaintiffs were not aware of the dangerous and destructive nature of the shingles and Defendant knew or had reason to know that consumers would not realize the dangerous condition of them.

162.    Due to Defendant's failure to provide consumers with adequate warnings or instruction about the dangerous and destructive nature of the shingles, Plaintiffs and members of the Class have been harmed.  Such harm would not have been suffered if Defendant provided adequate warnings or instructions.

163.    As a direct and proximate result of Defendant's negligent acts and/or omissions, Plaintiffs and members of the Class have incurred and will incur damages in an amount to be proven at trial.

## NINTH CAUSE OF ACTION

### Unjust Enrichment

164.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

165.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class by purchasing Defendant's shingles, and Defendant knowingly and willingly accepted and enjoyed those benefits.

166.    Defendant knew or should have known that payments received from Plaintiffs and the Class for the shingles were paid with the expectation that the shingles would perform as represented.

167.    Defendant's retention of these benefits is inequitable.

168.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest.

CLASS ACTION COMPLAINT – Page 26

169.     As a direct and proximate cause of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## TENTH CAUSE OF ACTION

### Failure of Essential Purpose

170.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

171.     When Defendant sold its shingles to Plaintiffs and the Class, it offered a warranty promising certain remedies if a defect is noticed.

172.     Plaintiffs and the Class have afforded Defendant ample opportunities to repair the complained-of defects, and Defendant has failed to remedy same in a reasonable amount of time. Plaintiffs put Defendant on notice, by way of warranty claims, that their shingles were problematic.

173.     Plaintiffs and the Class have sustained consequential or incidental losses that would not have been sustained but for Defendant's failure of remedy to repair or replace.

174.     The consequential or incidental losses sustained by Plaintiffs and the Class were within the contemplation of the parties, and therefore should not be prohibited when such bargained for remedy fails of its essential purpose.

175.     Defendant's purported "limited warranty" fails of its essential purpose because it purportedly warrants that the shingles will perform as promised for at least 30, 40 or 50 years, depending on the shingles purchased, when in fact, the shingles do not last for these periods.

176.     Defendant's purported "limited warranty" also fails of its essential purpose in that it limits recovery to the prorated replacement of shingles, as well as excludes the cost of labor. Such limitations are inadequate to redress failure of the shingles or any resulting damage to the underlying structure.  As a result, the "limited warranty" does not provide a minimum adequate remedy.

177.     Because Defendant's warranty fails in its essential purpose, Plaintiffs and the Class are entitled to recover available damages.

178.    Defendant's shingles were defective at the time they were acquired by Plaintiffs and members of the Class.

179.    Defendant knew that its shingles were defective, yet continued to represent that they were free of defects. Plaintiffs and members of the Class had no ability to detect the defect nor received notice thereof.

180.    As a direct and proximate cause of the foregoing, Plaintiffs and the Class have suffered and will continue to suffer damages and losses as alleged herein in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**

**Fraudulent Concealment**

181.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

182.    At all times mentioned herein, Defendant, through its experience, was in a position of superiority to Plaintiffs and the Class members and had the duty and obligation to disclose to Plaintiffs the true facts and its knowledge concerning its shingles; specifically, that its product was defective, would prematurely fail, and otherwise was not as warranted and represented by Defendant.  Defendants made the affirmative representations as set forth in this Complaint to Plaintiffs, the Class, and the general public prior to the date Plaintiffs purchased the shingles, while at the same time concealing the material defects described herein.  All of these facts were material to Plaintiffs' and Class members' purchase decisions.

183.    The material facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material facts that a reasonable person would have considered to be important in deciding whether or not to purchase Defendant's shingles.

184.    At all times mentioned herein, Defendant intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs with the intent to defraud as herein alleged (*i.e.*, reported that its warranties for certain time periods would be honored and that its shingles met ASTM and industry requirements).

/ / /

185.    At all times mentioned herein, Plaintiffs and members of the Class reasonably relied on Defendant to disclose those material facts set forth above.  If Defendant had disclosed these facts to Plaintiffs and the Class, and had Plaintiffs and the Class been aware of said facts, they would either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles.

186.    Defendant continued to conceal the defective nature of its shingles even after members of the Class began to report problems and submit warranty claims.  Indeed, Defendant continues still to cover up and conceal the true nature of the problem.

187.    As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiffs and the Class members sustained damages in an amount to be determined at trial.

## TWELFTH CAUSE OF ACTION

**Violation of Song-Beverly Consumer Warranty Act,**
**(Cal. Civ. Code §§ 1790, *et seq.*)**

188.    Plaintiff Jeffrey Snyder incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

189.    Plaintiff Snyder brings this Count on behalf of the California Subclass.

190.    Pursuant to the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Cal. Civ. Code §§ 1790, *et seq.*, Defendant's shingles constitute "consumer goods" used primarily for personal, family or household purposes, and Plaintiff Snyder and the other members of the California Subclass have used the shingles primarily for those purposes.

191.    Plaintiff Snyder and the other members of the California Subclass are "buyers" of consumer goods under the Song-Beverly Act.

192.    Defendant is a "manufacturer" and/or "distributor" under the Song-Beverly Act.

193.    Pursuant to the Song-Beverly Act, purchases of Defendant's shingles in California were accompanied by implied warranties of merchantability and fitness.

194.    Contrary to these applicable implied warranties, the Defendant's shingles at the time of sale and thereafter, were neither merchantable nor fit for their particular purpose.  Instead

of being reliable, durable and free of defects, the Defendant's shingles are defective and prematurely fail, becoming brittle, cracking, curling, blistering, degranulating, growing algae, otherwise deteriorating and causing leaking.  These issues manifest within the applicable express warranty period for the shingles.

195.    Defendant's actions, as complained herein, breached the implied warranties that the shingles were of merchantable quality and fit for such use, in violation of Cal. Civ. Code §§ 1792 and 1792.1.

196.    In addition to replacement or reimbursement for the defective shingles, Plaintiff Snyder and the other members of the California Subclass are entitled to all incidental, consequential, and general damages resulting from Defendant's failure to comply with its obligations under the Song-Beverly Act.

197.    Plaintiff Snyder and the other members of the California Subclass are entitled under the Song-Beverly Act to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorneys' fees reasonably incurred in connection with the commencement and prosecution of this action.

198.    Plaintiff Snyder and the other members of the California Subclass are entitled, in addition to the amounts recovered, to recover all statutory damages for Defendant's willful failure to comply with its responsibilities under the Song-Beverly Act.

## THIRTEENTH CAUSE OF ACTION

### Violation of California Consumers Legal Remedies Act
#### (Cal. Civ. Code §§ 1750, *et seq.*)

199.    Plaintiff Jeffrey Snyder incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

200.    Plaintiff Snyder brings this Count on behalf of the California Subclass.

201.    California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

202.     Defendant's shingles are "goods" as defined in Cal. Civ. Code § 1761(a).

203.     Plaintiff Snyder and the other California Subclass members are "consumers" as defined in Cal. Civ. Code § 1761(d), and Plaintiff Snyder, the other California Subclass members, and Defendant are "persons" as defined in Cal. Civ. Code § 1761(c).

204.     As alleged above, Defendant made numerous representations concerning the quality and performance of its shingles.

205.     In purchasing and installing the shingles manufactured by Defendant, or purchasing homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed, Plaintiff and the other California Subclass members were deceived by Defendant's failure to disclose that the shingles are defective and will prematurely fail.

206.     Defendant's conduct, as described herein, was and is in violation of the CLRA. Defendant's conduct violates at least the following enumerated CLRA provisions:

  a.     Cal. Civ. Code § 1770(a)(5): Representing that goods have characteristics, uses, and benefits which they do not have;

  b.     Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

  c.     Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

  d.     Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

207.     Plaintiff and the other California Subclass members have suffered injury in fact and actual damages resulting from Defendant's material omissions and misrepresentations because they paid an inflated price for Defendant's shingles.

208.     Defendant knew, should have known, or was reckless in not knowing of the defective design and/or manufacture of its shingles, and that the shingles were not suitable for their intended use.

/ / /

209.     The facts concealed and omitted by Defendant to Plaintiff and the other California Subclass members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase and install the shingles manufactured by Defendant, or purchase homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed.  Had Plaintiff and the other California Subclass members known about the defective nature of the shingles, they would not have purchased and installed the shingles manufactured by Defendant, or purchased homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed, or would not have paid the prices they paid.

210.     Plaintiff has provided Defendant with notice of its violations of the CLRA pursuant to Cal. Civ. Code § 1782(a).  The notice was transmitted to Defendant on December 11, 2015.

211.     Plaintiff and the other California Subclass members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

212.     Therefore, Plaintiff and the other California Subclass members are entitled to equitable and monetary relief under the CLRA, including, but not limited to, a permanent injunction against Defendant to refrain from continued advertising of the shingles at issue herein that omits material facts about product performance, injunctive relief forcing Defendant to replace and repair all shingles at issue herein for members of the Subclass, consequential damages for members of the Subclass who have replaced or will replace the shingles at issue herein, plus costs and attorneys' fees pursuant to California Civil Code §1780(d).

**FOURTEENTH CAUSE OF ACTION**

**Violation of California Unfair Competition Law**
**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

213.     Plaintiff Jeffrey Snyder incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

214.     Plaintiff Snyder brings this Count on behalf of the California Subclass.

/ / /

215.    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

216.    Defendant's conduct, as described herein, was and is in violation of the UCL. Defendant's conduct violates the UCL in at least the following ways:

> a.    By knowingly and intentionally concealing from Plaintiff and the other California Subclass members that Defendant's shingles suffer from a design and/or manufacturing defect while obtaining money from Plaintiff and the California Subclass;

> b.    By marketing Defendant's shingles as durable, free of defects and ASTM-acceptable when it knew the shingles would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendant; and

> c.    By limiting its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of the shingles.

217.    Defendant's misrepresentations and omissions alleged herein caused Plaintiff and the other California Subclass members to make purchases of the shingles manufactured by Defendant, or purchases of homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed.    Absent those misrepresentations and omissions, Plaintiff and the other California Subclass members would not have purchased and installed the shingles manufactured by Defendant, or purchased homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed, or would not have purchased and installed the shingles manufactured by Defendant, or purchased homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed at the prices they paid.

/ / /

/ / /

218.   Accordingly, Plaintiff and the other California Subclass members have suffered injury in fact including lost money or property as a result of Defendant's misrepresentations and omissions.

219.   Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant under Cal. Bus. & Prof. Code § 17200.

220.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and members of the Class any money it acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief set forth below.

### FIFTEENTH CAUSE OF ACTION

**Violation of California False Advertising Law**
**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

221.   Plaintiff Jeffrey Snyder incorporates by reference each preceding and succeeding paragraph as though fully set forth herein.

222.   Plaintiff Snyder brings this Count on behalf of the California Subclass.

223.   California Bus. & Prof. Code § 17500 states: "It is unlawful for any…corporation…with intent directly or indirectly to dispose of real or personal property…to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated before the public in this state,…in any newspaper or other publication, or any advertising device,…or in any other manner or means whatever, including over the Internet, any statement…which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading…."

224.   Defendant caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other California Subclass members.

225.    Defendant has violated § 17500 because the misrepresentations and omissions regarding the quality and performance of its shingles were material and likely to deceive a reasonable consumer.

226.    Plaintiff and the other California Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices.  In purchasing and installing the shingles manufactured by Defendant, or purchasing homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed, Plaintiff and the other California Subclass members relied on the misrepresentations and/or omissions of Defendant with respect to the quality and performance of Defendant's shingles. Defendant's representations turned out not to be true because the shingles are defective and will prematurely fail.  Had Plaintiff and the other California Subclass members known this, they would not have purchased and installed the shingles manufactured by Defendant, or purchased homes, residences, buildings and other structures on which the defective shingles manufactured by Defendant had been installed, or would not have paid the prices they paid.  Accordingly, Plaintiff and the other California Subclass members overpaid for their shingles and did not receive the benefit of their bargain.

227.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the State of California and nationwide.

228.    Plaintiff, individually and on behalf of the other California Subclass members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other California Subclass members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

/ / /

/ / /

/ / /

1
2
3

### SIXTEENTH CAUSE OF ACTION

**Connecticut Unfair Trade Practices Act**
**(Conn. Gen. Stat. Ann. § 42-110a, *et seq.*)**

4       229.    Plaintiffs Martin and Beth Melnick incorporate by reference each preceding and

5    succeeding paragraph as though fully set forth herein.

6       230.    The Melnicks bring this Count on behalf of the Connecticut Subclass.

7       231.    The Melnicks and Defendant are each "persons" as defined by Conn. Gen. Stat.

8    Ann. § 42-110a(3).

9       232.    The Connecticut Unfair Trade Practices Act ("CUTPA") provides that "[n]o

10   person shall engage in unfair methods of competition and unfair or deceptive acts or practices in

11   the conduct of any trade or commerce."  Conn. Gen. Stat. Ann. § 42-110b(a).  The CUTPA

12   further provides a private right of action under Conn. Gen. Stat. Ann. § 42-110g(a).

13      233.    By failing to disclose and actively concealing that Defendant's shingles were

14   defective and will prematurely fail, Defendant engaged in deceptive business practices prohibited

15   by the CUTPA, including (1) representing that Defendant's shingles have characteristics, uses,

16   benefits, and qualities which they do not have; (2) representing that Defendant's shingles are of a

17   particular standard, quality, and grade when they are not; (3) advertising Defendant's shingles

18   with the intent not to sell them as advertised; and (4) engaging in acts or practices which are

19   otherwise unfair, misleading, false, or deceptive to the consumer.

20      234.    As alleged above, Defendant made numerous material statements about the

21   benefits and characteristics of Defendant's shingles that were either false or misleading.  Each of

22   these statements contributed to the deceptive context of Defendant's unlawful advertising and

23   representations as a whole.

24      235.    Defendant knew that its shingles were defectively designed and/or manufactured

25   and were not suitable for their intended use.  Defendant nevertheless failed to warn Plaintiffs and

26   the Connecticut Subclass about these defects despite having a duty to do so.

27      236.    Defendant owed Plaintiffs and the Connecticut Subclass a duty to disclose the

28   defective nature of its shingles, because Defendant:

CLASS ACTION COMPLAINT – Page 36

a.      Possessed exclusive knowledge of the defects;

b.      Intentionally concealed the defects associated with the shingles; and/or

c.      Made incomplete representations about the characteristics and performance of the shingles, while purposefully withholding material facts from Plaintiffs and the Connecticut Subclass that contradicted these representations.

237.    Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Connecticut Subclass, about the true performance and characteristics of Defendant's shingles.

238.    As a result of its violations of the CUTPA detailed above, Defendant caused actual damage to Plaintiffs and the Connecticut Subclass and, if not stopped, will continue to harm Plaintiffs and the Connecticut Subclass.  Plaintiffs currently have Defendant's defective shingles installed on their homes.  Defects associated with the shingles have caused the value of the homes, residences, buildings and other structures owned by Plaintiffs and the Connecticut Subclass to decrease.

239.    Plaintiffs and the Connecticut Subclass sustained damages as a result of Defendant's unlawful acts and are, therefore, entitled to damages and other relief as provided under the CUTPA.

240.    Plaintiff also seeks court costs and attorneys' fees as a result of Defendant's violation of the CUTPA as provided in Conn. Gen. Stat. Ann. § 42-110g(d).  A copy of this Complaint has been mailed to the Attorney General and the Commissioner of Consumer Protection of the State of Connecticut in accordance with Conn. Gen. Stat. Ann. § 42-110g(c).

## SEVENTEENTH CAUSE OF ACTION

### Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*

241.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

242.    Plaintiffs bring this cause of action on behalf of themselves and on behalf of the members of the Class against Defendant.

/ / /

243.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages."   10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (3d ed. 1998).

244.     There is an actual controversy between Defendant and Plaintiffs concerning:

    a.     whether Defendant's shingles are defectively designed thus causing them to fail;

    b.     whether Defendant knew or should have known of the defects; and

    c.     whether Defendant failed to warn against the potential unsuitability of its defectively designed shingles.

245.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

246.     Despite the repeated failures of its shingles, Defendant refused to acknowledge that its product is defectively designed.

247.     Accordingly, based on Defendant's failure to act, Plaintiffs seek a declaration that the Defendant's shingles are defective in their design, workmanship, materials, and labeling, as alleged herein.  The defective nature of Defendant's shingles is material and requires disclosure to all persons who own the shingles.

248.     The declaratory relief requested herein will generate common answers that will settle the controversy related to the alleged defective design workmanship, materials, and labeling of Defendant's shingles and the reasons for their failure.  There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

**EIGHTEENTH CAUSE OF ACTION**

**Injunctive Relief**

249.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

250.     Plaintiffs, on behalf of themselves and the members of the Class, seek a Court declaration of the following:

A.   All Defendant's shingles have defects which cause them to become brittle, crack, curl, blister, degranulate, grow algae, otherwise deteriorate, prematurely fail and cause leaking, resulting in damage to property and the necessity of the removal and replacement;

B.   Defendant knew of the defects in its shingles and that the limitations contained in the warranties accompanying the shingles are unenforceable;

C.   All Defendant's shingles have defects in design, workmanship and/or material that cause failures;

D.   Defendant will re-audit and reassess all prior warranty claims on its shingles, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

E.   Defendant shall establish an inspection program and protocol to be communicated to members of the Class, which will require Defendant to inspect, upon request, a Class member's structure to determine whether Defendant shingle failure is manifest.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request the following relief:

A.   an Order certifying the Class (and/or Subclasses) and appointing Plaintiffs as the Class Representatives, and appointing the undersigned counsel as Class Counsel;

B.   an Order declaring that Defendant is financially responsible for notifying all Class members of the problems with Defendant's shingles;

C.   an award of all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

D.   an award of pre-judgment and post-judgment interest at the maximum rate allowable by law;

/ / /

1    E.    an award of reasonable attorneys' fees and reimbursement of costs incurred by

2    Plaintiffs and Plaintiffs' counsel in connection with this action;

3    F.    an award for equitable and injunctive relief enjoining TAMKO from continuing to

4    pursue the policies, acts and practices described in this Complaint; and

5    G.    such other and further relief as the Court deems just and proper.

6    **JURY DEMAND**

7    Pursuant to the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury

8    on all issues so triable.

9    Dated: December 18, 2015                Respectfully submitted,

10                                           THE SIEVING LAW FIRM, A.P.C.

11

12                                           By:___/s/ Richard N. Sieving_____
13                                               Richard N. Sieving, Esq. (SBN 133634)
                                                 **THE SIEVING LAW FIRM, A.P.C.**
14                                               100 Howe Avenue, Suite 220N
                                                 Sacramento, CA 95825
15                                               Telephone: (916) 444-3366
                                                 Facsimile: (916) 444-1223
16                                               rsieving@sievinglawfirm.com

17                                               Shanon J. Carson, *pro hac vice forthcoming*
                                                 Lawrence Deutsch, *pro hac vice forthcoming*
18                                               Jacob M. Polakoff, *pro hac vice forthcoming*
                                                 **BERGER & MONTAGUE, P.C.**
19                                               1622 Locust Street
                                                 Philadelphia, PA 19103
20                                               Telephone: (215) 875-3000
                                                 Facsimile: (215) 875-4604
21                                               scarson@bm.net
                                                 ldeutsch@bm.net
22                                               jpolakoff@bm.net

23                                               Charles E. Schaffer, *pro hac vice forthcoming*
                                                 **LEVIN, FISHBEIN, SEDRAN & BERMAN**
24                                               510 Walnut Street, Suite 500
                                                 Philadelphia, PA 19106
25                                               Telephone: (215) 592-1500
                                                 Facsimile: (215) 592-4663
26                                               cschaffer@lfsblaw.com

27                                               *Attorneys for Plaintiffs*

28