IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARTIN and BETH MELNICK;       )
LIA LOUTHAN; and SUMMERFIELD   )
GARDENS CONDOMINIUM, on behalf of )
themselves and all others similarly situated, )
                               )
                Plaintiffs,    )
                               )
        v.                     )        Case No. 19-2630-JWL
                               )
TAMKO BUILDING PRODUCTS, INC., )
                               )
                Defendant.     )
                               )
_____)

## MEMORANDUM AND ORDER

Three sets of plaintiffs assert claims against defendant TAMKO Building Products, Inc. ("TAMKO") arising out of its sale of roofing shingles that plaintiffs allege were defective.  This matter presently comes before the Court on TAMKO's motion to dismiss most of plaintiffs' claims (Doc. # 113).  As more fully set forth herein, the motion is **granted in part and denied in part**.  The motion is granted with respect to the following claims for each set of plaintiffs:

Martin and Beth Melnick:

      Fraudulent nondisclosure (Count X) (leave to amend);

      CPLA (Count XVI) (leave to amend);

      CUTPA (Count XVII).

<u>Lia Louthan</u>:

Breach of express warranty (Count I) to the extent based on warranties other than those contained in TAMKO's limited warranty and in the brochure on which she relied (leave to amend);

Breach of the implied warranty of fitness for a particular purpose (Count III);

Unjust enrichment (Count IX);

Fraudulent concealment (Count X) (leave to amend);

Negligent misrepresentation (Count XI);

OPLA (Count XVIII);

OCSPA (Count XIX) claims for damages other than the claim based on a 2015 violation concerning the rejection of the warranty claim.

<u>Summerfield Gardens Condominium</u>:

Breach of express warranty (Count I);

Breach of implied warranties (Counts II and III);

Strict Liability (Counts IV, V, and VI) (leave to amend);

Negligence (Counts VII and VIII) (leave to amend);

Fraudulent concealment (Count X) (leave to amend);

Negligent misrepresentation (Count XI) (leave to amend);

ICFA (Count XX) (leave to amend for one alleged violation).

Those claims are hereby dismissed.  Plaintiffs are granted leave to amend their complaint, on or before **July 15, 2020**, with respect to certain claims as indicated above and to the extent allowed below.  The motion is otherwise denied.

## I.   <u>Background</u>

In this putative class action, four individual plaintiffs – a married couple, an individual, and a corporation – assert claims against TAMKO based on their allegations that roofing shingles manufactured by TAMKO were defective.  Plaintiffs Martin and Beth Melnick allege that they installed TAMKO's shingles on their house in Connecticut in September 2002; that the shingles failed, leading to damage in 2013 through 2015; that they initiated a warranty claim with TAMKO in December 2014; and that TAMKO denied their warranty claim in March 2015.  Plaintiff Lia Louthan alleges that TAMKO'S shingles were installed on her house in Ohio in September 2004; that the shingles failed and caused damage; and that in November 2015, her husband contacted TAMKO to file a warranty claim, but that TAMKO refused to allow the claim to be filed.  Plaintiff Summerfield Gardens Condominium ("Summerfield") alleges that TAMKO's shingles were installed on its 20 duplex buildings in Illinois during construction in 2003; that the failure of the shingles caused damage; that in 2014 Summerfield filed a warranty claim with TAMKO for the shingles on one half of one building; that TAMKO provided Summerfield with a prorated number of replacement shingles (22 out of 33 shingles) in response to the warranty claim; and that Summerfield replaced the roofs on some of the other buildings.

The present suit was filed against TAMKO by the Melnicks and by Jeffrey Snyder, a California resident, on December 18, 2015, in the United States District Court for the Eastern District of California.  On May 6, 2016, plaintiffs filed an amended complaint in which Ms. Louthan and Summerfield were added as named plaintiffs.  On September 30, 2019, the California court granted TAMKO's motion to dismiss the claims asserted by

plaintiff Snyder.  Because venue no longer existed in that court after dismissal of the California plaintiff's claims, the case was transferred to this Court on October 15, 2019, by stipulation of the parties.[1]  A new scheduling order was issued on January 31, 2020, and TAMKO filed the instant motion to dismiss on February 4, 2020.

By their amended complaint, plaintiffs assert various common-law and statutory claims.  Plaintiffs Louthan and Summerfield assert claims for breach of express warranty (Count I), breach of implied warranty (Counts II and III), strict product liability (Counts IV, V, and VI), negligence (Counts VII and VIII), and negligent misrepresentation (Count XI).  All three sets of plaintiffs assert claims for unjust enrichment (Count IX) and fraudulent concealment (Count X).  Plaintiffs also assert claims under the following statutes:  the Melnicks, under the Connecticut Product Liability Act (CPLA) and the Connecticut Unfair Trade Practices Act (CUTPA) (Counts XVI and XVII); Ms. Louthan, under the Ohio Product Liability Act (OPLA) and the Ohio Consumer Sales Protection Act (OCSPA) (Counts XVIII and XIX); and Summerfield, under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count XX).  All plaintiffs also seek declaratory judgments and injunctive relief (Counts XXI and XXII).  Finally, plaintiffs' complaint asserts putative claims on behalf of a nationwide class and state-wide classes for residents of Connecticut, Ohio, and Illinois.

---

[1] TAMKO's corporate headquarters is in Kansas.

## II.      **Governing Standard**

The Court will dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.  *See Bell Atlantic*, 550 U.S. at 555.  The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III.     **The Melnicks' Claims under Connecticut Law**

### A.      *CUTPA Claim (Count XVII)*

In Count XVII of the amended complaint, the Melnicks assert a claim against TAMKO under the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. §§ 42-110a *et seq.*[2]  The Melnicks allege that TAMKO engaged in deceptive business

---

[2] For purposes of this motion, the parties have applied the substantive law of each plaintiff's home state, and the Court agrees that such application is proper.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (in diversity action, forum state's choice-of-law rules determine which state's substantive law applies); *Doll v. Chicago Title Ins. Co.*, 246 F.R.D. 683, 690 (D. Kan. 2007) (in case involving financial harm, court applies the law of the state of the plaintiff's residence).

practices prohibited by CUTPA by failing to disclose and by concealing that its shingles were defective and would fail prematurely.

TAMKO argues that this claim is barred by CUTPA's statute of limitations, which states that an action under the statute "may not be brought more than three years after the occurrence of a violation." *See id.* § 42-110g(f). TAMKO argues that any violation relating to the Melnicks' shingles occurred before or at the time the shingles were installed. The Melnicks allege that the shingles were installed on their home in September 2002, and this action was filed in December 2015.

The Melnicks' first response to this argument is that "[t]he basis for the Melnicks' CUTPA claim is when Defendant lied to the Melnicks in denying their warranty claim" in 2015. The problem with this position is that the Melnicks have alleged no such violation. In this count, the Melnicks have alleged that TAMKO violated CUTPA by failing to disclose and concealing that the shingles were defective and would prematurely fail, by making false or misleading statements about the shingles, and by failing to warn about the defects; that these acts deceived the Melnicks about the true performance and characteristics of the shingles; and that as a result, the Melnicks paid a premium for the shingles, and the shingles have caused the value of their home to decrease. Nowhere in this count have the Melnicks cited any violations relating to the denial of their warranty claim, long after the installation of the shingles and after the Melnicks suffered the alleged damage in the form of an increased price and a devalued home. Nor have the Melnicks alleged anywhere in the complaint that the denial involved any misrepresentations, as they allege only that the denial contained "several dubious assertions."

6

Moreover, under Connecticut law, the exclusivity provision of the Connecticut Product Liability Act (CPLA) precludes other claims, including warranty claims, against a product seller for harm caused by a product. *See* Conn. Gen. Stat. § 52-572n. Thus, plaintiffs could not bring a claim under CUTPA for property damage caused by a product, but they could use CUTPA to redress a purely financial injury, such as being forced to pay a higher price for the product. *See Gerrity v. R.J. Reynolds Tobacco Co.*, 818 A.2d 769, 775-76 (Conn. 2003). Thus, a claim under CUTPA that TAMKO wrongfully denied the Melnicks' warranty claim would be barred by CLPA's exclusivity provision. The Melnicks could assert a claim under CUTPA for the financial injury of paying an increased price for the shingles, but the violation causing any such injury must have occurred at the time of the purchase, well outside the limitation period. Accordingly, the Melnicks have not alleged a viable claim for a violation of CUTPA occurring within the limitation period.

Although the Melnicks argue in their brief that their CUTPA claim is based on the 2015 denial, they also argue that the statute of limitations may be tolled in this case by the continuing course of conduct doctrine. The Connecticut Supreme Court has described that doctrine as follows:

> In its modern formulation, we have held that in order to support a finding of a continuing course of conduct that may toll the statute of limitations there must be evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong. Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act.

7

. . .

> . . . The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied.

*See Blanchette v. Barrett*, 640 A.2d 74, 84-85 (Conn. 1994) (citations and internal quotations omitted). The Melnicks argue that they have alleged that TAMKO failed to meet a continuing obligation to honor its warranties.

The Court rejects application of this doctrine to toll the CUTPA statute of limitations as a matter of law. As noted above, a straightforward warranty claim under CUTPA is prohibited by CLPA's exclusivity provision. Moreover, the mere allegation that TAMKO failed to disclose a defect is not sufficient, as confirmed by the Connecticut Supreme Court:

> We are aware of no authority holding that the perpetrator of a fraud involving merely a vendor-vendee relationship has a legal duty to disclose his deceit after its occurrence and that the breach of that duty will toll the statute of limitations. Such a relationship does not give rise to obligations equivalent to those of a fiduciary.

*See Fichera v. Mine Hill Corp.*, 541 A.2d 472, 475 (Conn. 1988). As examples in which tolling has been allowed, the *Fichera* court cited cases involving continued interaction between the parties, such as repeated instructions and advice given by the defendant to the plaintiff concerning the product or a physician's course of treatment. *See id.* at 474-75 (citing cases). In this case, the Melnicks have not alleged any continued interaction with TAMKO after the initial purchase extending into the limitation period many years later. *See Phelan ex rel. Estate of Phelan v. Daimler Chrysler Corp.*, 323 F. Supp. 2d 335, 340

(D. Conn. 2004) (continuing course of conduct doctrine did not apply in the absence of such a repeated and direct interaction between the parties).[3]

Nor would application of the doctrine here further the rationale, recognized by the Connecticut Supreme Court, that "during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied." *See Blanchette*, 640 A.2d at 85. Again, the Melnicks have not alleged an ongoing relationship with TAMKO, and the specific acts in violation of CUTPA that may have caused financial injury – i.e., those at the time of the purchase – are not difficult to identify. Accordingly, the Court concludes as a matter of law that the Melnicks' CUTPA claim is time-barred.

> **B.** *CPLA Claim (Count XVI)*

In Count XVI, the Melnicks assert a claim under the Connecticut Product Liability Act (CPLA), Conn. Gen. Stat. §§ 52-572m *et seq.* TAMKO argues that this claim is barred by CPLA's ten-year statute of repose, which provides that, regardless of any delay in discovery of the harm, no action may be brought under the statute "later than ten years from the date that the [defendant] last parted with possession or control of the product." *See id.* § 52-577a(a). As TAMKO notes, the Melnicks' shingles were installed in 2002,

---

[3] The Melnicks have not argued specifically that the 2015 warranty denial was part of a continuing course of conduct that continued into the limitation period, but any such argument would be futile. As the Second Circuit recognized in considering this doctrine under Connecticut law, a single correspondence well after the alleged misrepresentations does not link up to form a continuous course of conduct. *See International Strategies Group, Ltd. v. Ness*, 645 F.3d 178, 184 (2d Cir. 2011).

and this action was not commenced until 2015.  In response, the Melnicks rely on three

exceptions to the statute of repose.

First, the ten-year limitation does not apply if the plaintiff proves that "the harm

occurred during the useful safe life of the product."  *See id.* § 52-577a(c).  The statute

identifies several factors that may be considered by the trier of fact in determining whether

a product's useful safe life has expired:

> (1)  The effect on the product of wear and tear or deterioration from natural
> causes; (2) the effect of climatic and other local conditions in which the
> product was used; (3) the policy of the user and similar users as to repairs,
> renewals and replacements; (4) representations, instructions and warnings
> made by the product seller about the useful safe life of the product; and (5)
> any modification or alteration of the product by a user or third party.

*See id.*

In support of their argument that this exception applies here, the Melnicks cite only

their allegation that they installed TAMKO's "Heritage 50 AR" shingles in part because of

"the duration of the warranty, which indicated that the singles would last 50 years."  They

argue that it is "axiomatic that the normal life expectancy for 50-year Shingles would be

approximately 50 years," and that the failure of their shingles in 11 to 13 years therefore

occurred during the useful safe life of the product.  As TAMKO points out, however, the

actual warranty merely provides a replacement remedy for the 50-year warranty period,

without making (and while disclaiming) any representation concerning the product's useful

safe life or expected duration.

The parties have cited only one case addressing this exception, *Hubbard-Hall, Inc.*

*v. Monsanto Co.*, 98 F. Supp. 3d 480 (D. Conn. 2015).  In that case, the court noted that

the duration of a product's useful safe life is a question of fact, as evidenced by the factors listed in the statute for the trier of fact to consider. *See id.* at 483. The court further concluded that the statutory factors indicate that the useful safe life "is determined by reference to reasonable expectations about how long the product may be safely used before it needs repair or replacement," and it noted that Connecticut courts have used the phrase interchangeably with "normal life expectancy." *See id* at 484 (citing cases). The court then concluded that because the alleged injury from harmful PCBs occurred only after paint containing those PCBs began to peel or flake (thereby contaminating the surrounding environment), the injury occurred after the end of the paint's useful safe life, as the paint had stopped serving its expected useful function of covering or sealing a surface. *See id.* at 484-85.

TAMKO argues that the holding in *Hubbard-Hall* supports rejection of the exception in this case, as the Melnicks did not suffer any damage until the shingles had begun to crack. The Court rejects this argument, however, which depends on circular reasoning. In this case, the Melnicks allege that defects in the shingles caused them to crack and thus not to perform as intended and expected. Therefore, the fact that cracking occurred here does not necessarily mean that the shingles had lasted the duration that was expected in the absence of a defect – the shingles were allegedly defective because they cracked too soon. *Hubbard-Hall* did not involve such a defect – there, the paint was not allegedly defective because it cracked when it did; rather it was defective because it contained PCBs. Thus, the case does not support TAMKO's position here.

As the *Hubbard-Hall* court noted, this exception would ordinarily present a question of fact.  The problem is that the Melnicks have not alleged any facts that could support an inference that the normal life expectancy of the shingles exceeded ten years.  They rely only on the 50-year warranty, but as noted, the 50 years refers only to the period during which TAMKO agreed (for consideration paid by the purchaser) to replace the shingles.  The mere fact that TAMKO has agreed to provide a remedy for a 50-year period does not support any reasonable inference concerning the normal life expectancy of the shingles.  Indeed, in the absence of facts to the contrary, one might believe that TAMKO expected to replace a purchaser's shingles one or three or more times during the warranty period (having built the cost of that remedy into the product's price).  In addition, as discussed immediately below, CLPA provides a separate exception in the case of an express warranty that the product can be used for longer than ten years, *see* Conn. Gen. Stat. § 52-577a(d), and allowing a plaintiff to satisfy a different exception solely by reference to a warranty that does not meet the express warranty exception would violate the clear intent of the statute.  The Court therefore concludes that the Melnicks have not asserted a plausible claim that their shingles' useful safe life had not expired.

It is not clear, however, that the Melnicks would be unable to allege additional facts to support application of this exception.  Thus, the Court grants leave to the Melnicks to amend their complaint in an attempt to allege such facts.

Second, CLPA provides that the ten-year statute of repose "shall be extended pursuant to the terms of any express written warranty that the product can be used for a period longer than ten years."  *See id.* § 52-577a(d).  As noted, TAMKO's warranty did

not include any representation concerning the period during which the product could be used, and thus there was no "express written warranty" satisfying this exception. *See Gonzalez v. Corning*, 317 F.R.D. 443, 475 (W.D. Pa. 2016) (limited warranty does not qualify as a representation that shingles will have a useful life of the same number of years as the warranty period) (citing cases), *aff'd on other grounds*, 885 F.3d 186 (3d Cir. 2018). The Melnicks have cited no authority supporting an argument that this exception may be satisfied by a limited replacement warranty with no representation concerning the period of the product's use. Accordingly, the Court concludes that the Melnicks may not rely on this exception as a matter of law.

Third, CLPA provides that the ten-year limitation "shall not preclude any action against a product seller who intentionally misrepresents a product or fraudulently conceals information about it, provided the misrepresentation or fraudulent concealment was the proximate cause of harm of the claimant." *See* Conn. Gen. Stat. § 52-577a(d). The Melnicks argue that this exception applies by virtue of their allegations of TAMKO's fraudulent concealment of defects in the shingles. TAMKO argues that the Melnicks have not pleaded fraudulent concealment with sufficient particularity under Fed. R. Civ. P. 9(b).

The Melnicks do not dispute that for purposes of this exception they were required to plead their allegations of fraudulent concealment with particularity. *See Dummar v. Lummis*, 543 F.3d 614, 621 (10th Cir. 2008) (fraudulent concealment for purposes of tolling a statute of limitations must be pleaded with particularity); *In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1284 (D. Kan. 2006) (Lungstrum, J.) (same) (citing *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994)). Both parties refer the

13

Court to their arguments concerning whether the Melnicks pleaded their claim for fraudulent nondisclosure with sufficient particularity.  As discussed below, the Court concludes that the Melnicks have not pleaded that claim with sufficient particularity, although the Melnicks may amend their complaint to cure that deficiency.  Accordingly, under the present complaint, the Melnicks cannot rely on this exception to the statute of repose.

Thus, because the Melnicks may not avail themselves of any of the three exceptions to CPLA's ten-year limitation period, that claim is hereby dismissed, although the Melnicks are free to attempt to amend the complaint with respect to the first and third statutory exceptions as set forth herein.

### C.   *Fraudulent Nondisclosure (Count X)*

In Count X of the amended complaint, all plaintiffs assert claims for "fraudulent concealment."  The parties now agree that Connecticut does not recognize such a cause of action.  *See, e.g.*, *Zito v. United Technologies Corp.*, 2016 WL 2946157, at *8 (D. Conn. Mar. 11, 2016), *aff'd*, 673 F. App'x 117 (2d Cir. 2016).  Connecticut does recognize a cause of action for fraudulent nondisclosure, *see, e.g.*, *Reville v. Reville*, 93 A.3d 1076, 1087 (Conn. 2014), and the parties have treated the Melnicks' claim in Count X as asserting such a claim.  Thus, the Court does as well.  *See Zito*, 2016 WL 2946157, at *8 (doing likewise).

TAMKO argues that the Melnicks' allegations do not satisfy Rule 9(b)'s requirement that fraud claims be alleged with particularity.  This Court has described that requirement as applied by the Tenth Circuit as follows:

14

> This requirement must be read in conjunction with Rule 8's requirement that pleadings be simple, concise, and direct. Rule 9(b)'s purpose is to give the defendant fair notice of the plaintiff's claims and the factual grounds upon which they are based. Thus, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statement and the consequences thereof. In other words, the plaintiff must set out the who, what, where, and when of the alleged fraud.

See *In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1284-85 (D. Kan. 2006) (Lungstrum, J.) (citations and internal quotations omitted). "This Court has noted that the rule is applied more liberally to claims of fraud by silence because of the difficulty in identifying exactly when, where, and by whom a representation should have been made." See *Woolf v. Stewart*, 2011 WL 484192, at *5 (D. Kan. Feb. 7, 2011) (Lungstrum, J.) (citation omitted).

TAMKO notes that fraudulent nondisclosure requires that the plaintiff establish the defendant's duty to speak, *see Reville*, 93 A.3d at 1087, and it argues that the Melnicks' conclusory allegation of a duty is not sufficient under Rule 9(b). The Court rejects this argument. TAMKO has not cited any Tenth Circuit law requiring a plaintiff to plead with particularity how a duty to speak arises. Moreover, plaintiffs have alleged in Count X that TAMKO had a duty to disclose certain facts to plaintiffs and that TAMKO made affirmative representations to plaintiffs prior to their purchase dates. The Connecticut Supreme Court has long held that a vendor that assumes to speak has a duty to make a full and fair disclosure and to avoid a deliberate nondisclosure. *See, e.g.*, *Franchey v. Hannes*, 207 A.2d 268, 271 (Conn. 1965); *see also Hubbard-Hall*, 98 F. Supp. 3d at 488 n.8 (for purposes of fraudulent concealment exception in Conn. Gen. Stat. § 52-577a(d), a duty to

speak may arise from a seller's partial or incomplete statements relating to the concealed information).  Thus, the Melnicks have sufficiently alleged a duty of disclosure.[4]

TAMKO also argues that the Melnicks have failed to allege the nondisclosures with sufficient detail.  The complaint does sufficiently state (for instance, in paragraph 28) the facts that TAMKO failed to disclose.  Moreover, the Court does apply a more lenient standard for omissions.  Nevertheless, the Court concludes that the Melnicks' allegations are not sufficient.  In their CPLA count, the Melnicks allege that TAMKO made misrepresentations, and in the fraudulent nondisclosure count, they allege that TAMKO made affirmative representations to them, but they have provided no details concerning such representations.  For instance, in paragraph 24, the Melnicks allege that TAMKO's shingles do not conform to its express representations, but they do not identify those representations.  In paragraph 22, they allege that TAMKO has advertised that the shingles met certain standards, but the Melnicks have not identified any particular advertisement with such a representation.   In paragraphs 21 and 23, the Melnicks cite to certain information on TAMKO's website, but they do not identify any such representation that they would have seen prior to their purchase in 2002.   The Melnicks' claim for nondisclosure turns on what TAMKO did say to plaintiffs, and the Melnicks have not

---

[4] The Melnicks also cite *Haddad v. Clark*, 43 A.2d 221 (Conn. 1945), in which the court noted that actionable nondisclosure may be based on the knowledge of a participant to a transaction that the other party is acting under a unilateral mistake, even in the absence of any representation.  *See id.* at 223-24 (citing Restatement of Restitution § 8).  It is not clear that this contractual principle concerning mistake would apply in this case, which does not include a claim for rescission of a contract on the basis of fraud, and which does not involve any transaction between the parties.  The Court need not presently decide the issue, which the parties have not extensively briefed.

identified any such representations made to them with the necessary particularity (including where and when the representations were made).

This claim is therefore subject to dismissal.  The Court grants leave to the Melnicks to amend their complaint in an attempt to allege facts sufficient to state a claim for fraudulent nondisclosure with the necessary particularity under Rule 9(b).

### D.   *Unjust Enrichment (Count IX)*

In Count IX, the Melnicks assert a claim for unjust enrichment.  TAMKO makes three arguments for dismissal of this claim.

First, TAMKO relies on the exclusivity provision of CPLA, which, as noted above, precludes other claims against a product seller for harm caused by a product.  *See* Conn. Gen. Stat. § 52-572n.  This argument depends on the relief sought because, as discussed above, a claim to redress a purely financial injury, such as being forced to pay a higher price for the product, would fall outside the scope of CPLA and its exclusivity provision. *See Gerrity*, 818 A.2d at 775-76.

TAMKO relies on two cases in which claims for unjust enrichment were dismissed for this reason, but in neither case did the court discuss whether the plaintiff had alleged an injury outside the scope of CPLA.  *See Adkins v. Nestle Purina PetCare Co.*, 973 F. Supp. 2d 905, 916-17 (N.D. Ill. 2013) (applying Connecticut law); *Palmeri v. LG Electronics USA, Inc.*, 2009 WL 1916324, at *5-7 (D.N.J. June 30, 2009) (same).  Thus, those cases are not particularly helpful.  Nor has TAMKO addressed in its briefs this distinction concerning the type of injury alleged.  In the complaint, plaintiffs have tied this count to the benefits received by TAMKO from plaintiffs' purchases of the shingles, and plaintiffs

have alleged that they paid an excessive price because the shingles were defective.  Such a claim of financial injury does not fall within the scope of the CPLA and thus is not excluded.  The Court therefore rejects this argument for dismissal of the unjust enrichment claim.

Second, TAMKO notes in a footnote that in two cases, Connecticut state district courts dismissed unjust enrichment claims because the plaintiff-purchasers had not directly paid the defendants for their products.  *See Granito v. International Bus. Machines*, 2003 WL 1963161, at *2 (Conn. Super. Ct. Apr. 16, 2003); *Parker v. Colgate-Palmolive Co.*, 2003 WL 22205061, at *2 (Conn. Super. Ct. Aug. 8, 2003) (citing *Granito*).  The Melnicks concede that they had no direct buyer-seller relationship with TAMKO, having purchased TAMKO's products from an intermediary.

The Court rejects this argument as well.  In neither case, did the court cite any appellate court authority, and the Connecticut Supreme Court's statement of the relevant element requires only a showing that the defendant was benefitted.  *See Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 522 (Conn. 1994).  The Court agrees with other courts that have criticized the *Granito* and *Parker* courts for essentially engrafting a new requirement onto the claim's list of elements without authority.  *See Stefan v. P.J. Kids, LLC*, 2005 WL 834208, at *3 & n.7 (Conn. Super. Ct. Mar. 1, 2005); *Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 25 (Conn. Super. Ct. Jan. 26, 2004).  Whether TAMKO was benefitted in this case presents a question of fact for the Court in making its equitable determination, *see Hartford Whalers*, 649 A.2d at 522, and TAMKO has not

shown that under Connecticut law the benefit cannot include income through the chain of commerce.

Third, TAMKO argues that this claim should be dismissed because it is inconsistent with the Melnicks' allegation of a breach of express warranty (as part of their CPLA claim). Under Connecticut law, "lack of a remedy under contract is a precondition for recovery based on unjust enrichment." *See Gagne v. Vaccaro*, 766 A.2d 416, 424 (Conn. 2001). TAMKO cites cases in which courts rejected unjust enrichment claims in the face of allegations that a contract existed between the parties, and it argues that a contractual relationship has been alleged here through the assertion of the express warranty claim.

The Court rejects this argument. As discussed in the preceding paragraph, the Melnicks do not allege that they purchased their shingles directly from TAMKO or that the parties had a contractual relationship. The Melnicks have not asserted any claim for breach of contract. TAMKO has not cited any authority suggesting that the Melnicks' express warranty claim somehow creates a contractual relationship between the parties. Thus, TAMKO has not shown that Connecticut law bars a claim for unjust enrichment under these circumstances.[5]

---

[5] The Melnicks also argue that they have disputed the enforceability of the express warranty (which fact distinguishes the cases cited by TAMKO) and thus have properly asserted this claim in the alternative under Fed. R. Civ. P. 8(d)(2). This is not a case, however, in which the plaintiff has asserted a contract claim, the defendant disputes the existence of an enforceable contract, and the plaintiff is thus permitted to plead a quasi-contractual claim in the alternative. In this case, the Melnicks as plaintiffs are arguing a lack of enforceability, but they do not argue that the *warranty* is unenforceable – they argue that the warranty's *disclaimers* and *limitation of remedy* are unenforceable. In asserting a claim for breach of express warranty, the Melnicks seek a remedy for breach of an express warranty and thus do not deny the existence of such a warranty.

Accordingly, TAMKO's motion is granted with respect to the Melnicks' claim for fraudulent nondisclosure (Count X) and their claims under CPLA (Count XVI) and CUTPA (Count XVII), although the Melnicks are granted leave to amend, on or before **July 15, 2020**, with respect to the CPLA and fraud claims. The motion is denied with respect to their unjust enrichment claim.

### IV.   Summerfield's Claims Under Illinois Law

#### A.   *Express Warranty (Count I)*

In Count I, plaintiff Summerfield asserts a claim for breach of express warranty under Illinois law. TAMKO moves to dismiss this claim on the ground that it satisfied its obligations under the product warranty for Summerfield's shingles, which expressly limited Summerfield's remedy to the provision of a certificate for replacement shingles and which disclaimed other remedies. TAMKO notes that, as set forth in the complaint, it provided the prorated number of replacement shingles for the one building for which Summerfield made a warranty claim, in accordance with the terms of the warranty. TAMKO further notes that Summerfield has not alleged that it experienced any problems with the replacement shingles.

Summerfield argues that its remedy under the warranty should not be limited to replacement because that remedy fails of its essential purpose. Under Illinois's enactment of the UCC, a warranty may limit a purchaser's remedies to repair and replacement of non-conforming goods, subject to certain exceptions. *See* 810 Ill. Comp. Stat. 5/2-719(1). The exception on which Summerfield relies states that "[w]here circumstances cause an

exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in [the UCC]." *See id.* 5/2-719(2).  Thus, if TAMKO's limited replacement remedy failed of its essential purpose in this case, Summerfield would be entitled to seek relief beyond mere replacement.  *See Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 618 (Ill. 2006) ("When a contract contains a limitation of remedy but that remedy fails of its essential purpose, it is as if that limitation of remedy does not exist for purposes of the damages to which a plaintiff is entitled for breach of warranty.").  Summerfield argues that the remedy failed of its essential purpose here because any replacement shingles would suffer from the same defects that led to the failure of the original shingles.  As noted, however, Summerfield does not argue or allege that its replacement shingles have failed.

The Court rejects this argument, as Summerfield has not shown that its circumstances fall within the exception as applied by Illinois courts.  First, the Court notes that the exception requires that the *limited remedy* fail of its essential purpose, not that some other purpose (such as covering costs or damages) fail.  *See* 810 Ill. Comp. Stat. 5/2-719(2); *see also Razor*, 854 N.E.2d at 616 (plaintiff claimed and jury found that the defendant's limited remedy failed of its essential purpose); 1 James J. White, et al., *Uniform Commercial Code* § 13:20, at 1132 (6th ed. 2012).  The essential purpose of a limited replacement remedy is to provide a conforming product.  Thus, Illinois courts have found that such a remedy fails of its essential purpose when the defendant has failed to fix the breach within a reasonable time or within a reasonable number of attempts.  For instance, in *Razor*, the Illinois Supreme Court noted that the limited remedy was found to have failed of its essential purpose because of the persistence of the problem with the

product.  *See Razor*, 854 N.E.2d at 616.  In upholding the jury verdict, the court of appeals cited evidence that multiple attempts had been required to effect the repair.  *See Razor v. Hyundai Motor Am.*, 813 N.E.2d 247, 260 (Ill. Ct. App. 2004), *aff'd in part and rev'd in part*, 854 N.E.2d 607 (Ill. 2006).  The court, citing numerous Illinois cases, noted that Section 2-719(2) imposes a reasonableness standard, under which a manufacturer does not have an unlimited time or an unlimited number of attempts to repair the product, and that a limited remedy thus "fails of its essential purpose if successful repairs are not made within a reasonable time or within a reasonable number of attempts."  *See id.* at 258 (internal quotations omitted) (citing cases).

The Illinois Court of Appeals has consistently applied that standard requiring a showing that the defendant was unable or unwilling to effect the repair or replacement within a reasonable time and within a reasonable number of attempts.   For instance, in *Zwicky v. Freightliner Custom Chassis Corp.*, 867 N.E.2d 527 (Ill. Ct. App. 2007), the court held that the plaintiff was required to prove an unreasonable amount of time or number of attempts for the repair to overcome a repair or replacement limited remedy.  *See id.* at 535.  In *Lara v. Hyundai Motor Am.*, 770 N.E.2d 721 (Ill. Ct. App. 2002), the court stated the rule as follows:  "A remedy limitation fails of its essential purpose when a seller unreasonably delays the replacement of the product, refuses to replace it at all, or is unsuccessful in correcting the defects within a reasonable time."  *See id.* at 728-29 (internal quotation omitted); *see also Evitts v. DaimlerChrysler Motors Corp.*, 834 N.E.2d 942, 950-51 (Ill. Ct. App. 2005); *Dewan v. Ford Motor Co.*, 842 N.E.2d 756, 762 (Ill. Ct. App. 2005); *Pearson v. DaimlerChrysler Corp.*, 813 N.E.2d 230, 235-36 (Ill. Ct. App. 2004).

Summerfield does not argue that TAMKO's limited replacement warranty failed of its essential purpose because TAMKO's attempted replacement did not succeed within a reasonable time and a reasonable number of attempts.  Indeed, Summerfield has not argued or alleged that it experienced any problems with the replacement shingles.  Nor has Summerfield provided any authority from Illinois courts that would allow it to prevail under such circumstances.  It is not enough merely to say that replacement shingles might not work.  As the court noted in *Dewan*, there can be no breach of a promise to repair until the warrantor actually refuses or fails to repair a defective product.  *See Dewan*, 842 N.E.2d at 762; *see also* 1 James J. White, et al., § 13:20, at 1133 ("Ordinarily, the buyer must provide the seller a reasonable opportunity to carry out the exclusive or limited remedy before the buyer can successfully argue failure of essential purpose.").

Summerfield does cite *In re Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, 155 F. Supp. 3d 772 (N.D. Ill. 2016), in which the court concluded that factual issues, such as whether there were latent defects, were relevant to whether an express warranty failed of its essential purpose.  *See id.* at 790.  The court did not cite any Illinois authority for that proposition, however, and instead relied on cases from other jurisdictions.  Illinois's appellate courts have not indicated that the presence of a latent defect may be enough to show the failure of a limited remedy's essential purpose under Section 2-719(2); instead, as detailed above, they have considered only whether the defendant failed to effect the replacement or repair, as required under the warranty, within a reasonable time and a reasonable number of attempts.  Moreover, the mere fact of a breach cannot be enough; otherwise, the exception would swallow the rule.  *See Ellison*

*Technologies, Inc. v. Radical Firearms, LLC*, 2019 WL 5963612, at *5 (N.D. Ill. Nov. 12, 2019).

Finally, Summerfield argues that this issue normally presents a question of fact, and that the Court should therefore decline to reject its position at the pleading stage. Summerfield has not argued that the replacement shingles were ineffective, however, and thus it has not identified any facts that it could present to satisfy the exception to the UCC provision allowing for limited remedies. Accordingly, the Court concludes as a matter of law that the limited remedy in this case did not fail of its essential purpose.

Summerfield also argues that the warranty's exclusion of consequential damages was unconscionable and therefore is unenforceable under 810 Ill. Gen. Stat. 5/2-719(3). The Illinois Supreme Court has held, however, that the essential-purpose and unconscionability exceptions present separate and discrete inquiries, such that a plaintiff must meet both to recover consequential damages in the face of a warranty (like the one here) that both provides an exclusive remedy and prohibits consequential damages. *See Razor*, 854 N.E.2d at 619. Because the limited replacement remedy here did not fail of its essential purpose, TAMKO is obligated only to provide that remedy, and the Court need not address whether the consequential damages exclusion was unconscionable.

Summerfield does not dispute that TAMKO provided a prorated number of replacement shingles for the building for which Summerfield made a warranty claim, in accordance with the warranty. Therefore, Summerfield's claim for breach of express warranty fails as a matter of law, and TAMKO's motion for dismissal of that claim is hereby granted.

B.     *Breach of Implied Warranties (Counts II and III)*

In Counts II and III, Summerfield asserts claims against TAMKO under Illinois law for breach of the implied warranties of merchantability and fitness for a particular purpose. The Court agrees with TAMKO that these claims should be dismissed because of a lack of contractual privity between the parties.

"Under the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty." *See Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003) (citing *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028, 1029-30 (Ill. 1988)); *see also Rothe*, 518 N.E.2d at 1028 ("the UCC article II implied warranties give a buyer of goods a potential cause of action only against his immediate seller") (citing *Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1986)). Summerfield does not dispute that privity is ordinarily required for the assertion of these claims under Illinois law. Nor does it dispute that it did not purchase directly from TAMKO, having alleged that the shingles are sold through intermediaries to the end users.

Summerfield argues that it may fall within an exception to this requirement of privity, as discussed in *Elward v. Electrolux Home Products, Inc.*, 214 F. Supp. 3d 701 (N.D. Ill. 2016). In *Elward*, the court discussed two such exceptions: (1) the "direct relationship" exception, "which applies when there are direct dealings between the manufacturer and the remote customer;" and (2) the third-party beneficiary exception, "which applies where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered goods specifically to meet those requirements." *See id.* at 705-06 (internal quotations omitted). Both of the exceptions may

25

be traced through the cases cited in *Elvard* back to the same two cases: *Rhodes Pharmacal Co. v. Continental Can Co.*, 219 N.E.2d 726 (Ill. Ct. App. 1966); and *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 408 N.E.2d 403 (Ill. Ct. App. 1980) (citing *Rhodes*); *see Manley v. Hain Celestial Group, Inc.*, 417 F. Supp. 3d 1114, 1123 (N.D. Ill. 2019) (cases discussing an exception to the privity rule trace back to *Rhodes*).

In *Rhodes*, the Illinois Court of Appeals held that the third-party beneficiary doctrine should be extended "to a situation where a seller makes a product for a user who is not a direct buyer, but with whom the seller has direct dealings;" and that an implied warranty of fitness could be enforced directly against the manufacturer by a third-party user not in direct privity where "the manufacturer (1) was aware of the purpose for which the product was to be put, and (2) knew of the third-party user's reliance that the product would be fit for the purpose intended." *See Rhodes*, 219 N.E.2d at 732. The plaintiff met the exception in that case because it had alleged that it met with the defendant directly concerning the design of the product, and that the defendant knew of the plaintiff's particular purpose for the product. *See id.* In *Frank's*, the court cited the general rule that "implied warranties are not applicable between the buyer and a remote manufacturer," but it held that that was not true "where there is a direct relationship between the manufacturer and the seller or where . . . the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." *See Frank's*, 408 N.E.2d at 412 (citations omitted). In *Frank's*, the plaintiff met the exception because the defendant manufacturer knew that the product had been

ordered specifically for the plaintiff and had shipped the product directly to the plaintiff. *See id.*

The Illinois Supreme Court has not recognized an exception to the privity requirement, and in fact in *Rothe* and *Szajna* reaffirmed the requirement after *Rhodes* and *Frank's* had been decided by the Illinois Court of Appeals; thus, it is not clear that the Illinois Supreme Court would recognize the exception asserted here. *See Manley*, 417 F. Supp. 3d at 1123 ("This Court is not alone in doubting the Illinois Supreme Court would recognize any exceptions to the requirement of privity for implied warranty claims.") (citing *Caterpillar, Inc. v. Usinor Industeel*, 393 F. Supp. 2d 659, 678 (N.D. Ill. 2005)).[6] In light of the supreme court's failure to recognize any exception, this Court will at least limit any possible exception to the circumstances present in *Rhodes* and *Frank's*, in which the parties had direct dealings and the defendant knew that the product was specifically intended for the plaintiff. *See Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1284 (10th Cir. 2013) ("As a federal court, we are generally reticent to expand state law without clear guidance from its highest court.") (internal quotation and citation omitted).

In opposing the motion to dismiss, Summerfield argues that it falls within the third-party beneficiary exception applied in *Elward* based on its allegations "that TAMKO was aware that members of the Class desired shingles that were durable, reliable, warranted and free of defects and marketed the Shingles to the Class as such." Thus, Summerfield argues

---

[6] A federal court interpreting state law looks to the rulings of the state's highest court, and, "if no such ruling exist, must endeavor to predict how that high court would rule." *See Johnson v. Riddle*, 305 F.3d 1107, 1118 (10th Cir. 2002).

in essence that all end purchasers of TAMKO's shingles fall within the exception because of TAMKO's general marketing.  In *Elward*, the court accepted a similar argument at the pleading stage.  *See Elward*, 214 F. Supp. 3d at 705-06.  That court concluded that the plaintiff's allegations were sufficient to meet the third-party beneficiary exception, as the plaintiff had alleged that the defendant was aware of its remote customers' requirement that their dishwashers function without overheating, catching fire, and causing floods.  *See id.* at 706.

This Court does not agree, however, that such allegations are sufficient to state a plausible claim that falls within the exception recognized in *Rhodes* and *Frank's*. Summerfield has not alleged or argued that it had any direct interaction with TAMKO prior to its purchase of the shingles, or that TAMKO knew its identity prior to the purchase, or that the shingles were manufactured specifically for Summerfield's purposes.  Thus, Summerfield has not alleged facts to show (or argued) that "the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements."  *See Frank's*, 408 N.E.2d at 412. Summerfield was not a specifically-intended beneficiary of the contract between TAMKO and its distributor, and to read the *Frank's* exception so broadly as to include essentially all end users would effectively eviscerate the rule (which the Illinois Supreme Court has reaffirmed on multiple occasions without recognizing any exception).  *See Manley*, 417 F. Supp. 3d at 1124 (even if a third-party beneficiary exception from *Rhodes* survives, it did not apply to the plaintiff in that case, who purchased the product from a retailer; rejecting

28

the argument that the plaintiff had a direct relationship with the defendant through advertising and marketing materials).

Accordingly, Summerfield cannot maintain its claims under Illinois law for breach of implied warranties, and those claims are therefore dismissed.[7]

### C.   *Strict Liability and Negligence Claims (Counts IV-VIII, XI)*

TAMKO argues that the economic loss doctrine (ELD) bars Summerfield's claims for strict liability (Counts IV, V, and VI), negligence (Count VII and VIII), and negligent misrepresentation (Count XI).  In Illinois, the ELD is also known as the *Moorman* doctrine, named for the seminal case from the Illinois Supreme Court of *Moorman Manufacturing Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982).  Under *Moorman*, solely economic losses generally are not recoverable in tort actions, including under theories of strict liability and negligence.  *See In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997).  Summerfield does not dispute that these claims fall within the scope of the ELD under Illinois law.  The Illinois Supreme Court has recognized the following three exceptions to this rule, however:

> (1) where the plaintiff has sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions.

---

[7] In light of this ruling, the Court need not address Summerfield's arguments that the applicable statute of limitations was tolled by fraudulent concealment and that the TAMKO warranty's disclaimer of implied warranties was unconscionable.

*See First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333-34 (Ill. 2006) (citations omitted).  Summerfield invokes all three exceptions in an attempt to save these tort claims.

First, Summerfield argues that it has alleged property damage (beyond damage to the shingles themselves) as required for the first exception.  Indeed, in the complaint, Summerfield alleges that issues from the shingles have caused water to leak into several of its units, causing damage, and that the failure of shingles on two buildings caused damage to the roof sheathing and resulted in water entering and damaging the buildings' attics. Summerfield cites *Disher v. TAMKO Building Products, Inc.*, 2015 WL 4609980 (S.D. Ill. July 31, 2015), in which the court allowed claims to proceed beyond the pleading stage under this exception based on allegations of damage to the underlying structure from defective roof shingles.  *See id.* at *2.

The *Disher* court, however, neglected to address the settled Illinois law that holds that this exception is not satisfied by incidental property damage that may be reasonably expected to occur if the product fails.  Nor has Summerfield addressed this issue raised by TAMKO in its initial brief.  The Illinois Supreme Court has described this gloss on the exception as follows:  "[T]he economic loss doctrine should bar tort recovery when a defective product causes the type of damage one would reasonably expect as a direct consequence of the failure of the defective product."  *See Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 682 N.E.2d 45, 58 (Ill. 1997).  As discussed by the court in *Harleysville Lake States Insurance Co. v. Superior One Electric, Inc.*, 2015 WL 9268210 (N.D. Ill. Dec. 21, 2015), this interpretation of the exception has been consistently noted

and applied by the Illinois Supreme Court, the Illinois Court of Appeals, and even the Seventh Circuit while applying Illinois law. *See id.* at *3 (citing cases); *see also Hecktman v. Pacific Indem. Co.*, 59 N.E.3d 868, 875-76 (Ill. Ct. App. 2016) (reviewing cases establishing that the necessary property damage to meet the exception may not merely be damage incidental to the defective construction, which is damage consequent to the qualitative defects and therefore not recoverable in tort).

In this case, Summerfield has alleged only damage – water leakage and damage to the roof structure – that may be expected to occur from defective roof shingles, and such damage therefore may be addressed only under contract law. In this regard, the Court agrees with the holding of the Seventh Circuit in *Chicago Heights Venture v. Dynamit Nobel of America, Inc.*, 782 F.2d 723 (7th Cir. 1986), in which the court deemed property damage to other parts of the building caused by defective roofing to be incidental damage and thus an economic loss, a claim for which was barred by the ELD. *See id.* at 729; *see also Harleysville*, 2015 WL 9268210, at *3 (concluding that "[j]ust as defective roofing material foreseeably causes water damage," as held by the Seventh Circuit in *Chicago Heights*, so too did the defect in its case foreseeably cause fire and water damage). Summerfield has not argued or alleged that it suffered any property damage that would not be considered incidental to a defect in roofing shingles. Accordingly, the Court concludes as a matter of law that Summerfield may not rely on this exception to the ELD.

Second, Summerfield argues that it can meet the ELD exception for damages proximately caused by a fraudulent representation. The parties have not extensively breached this exception, addressing it only in footnotes. TAMKO argues that Summerfield

has not sufficiently alleged any such misrepresentation, and Summerfield responds that it has alleged (a) that TAMKO misrepresented "that its products were of a certain quality, were not defective and met industry standards required by building codes," and (b) that TAMKO, in response to Summerfield's warranty claim, stated falsely that the defective shingles were merely "part of a bad batch."

To the extent that Summerfield alleges fraud, such a claim must be pleaded with particularity under Fed. R. Civ. P. 9(b), *see, e.g.*, *TNT Logistics N. Am., Inc. v. Bailly Ridge TNT, LLC*, 2006 WL 2726224, at *9 (N.D. Ill. Sept. 21, 2006) (in order to invoke the fraud exception to the *Moorman* doctrine, plaintiff was required to alleged facts with particularity under Rule 9(b)), and Summerfield has not met that standard here.  As discussed above with respect to the Melnicks' claims, Summerfield has generally alleged that TAMKO made misrepresentations in its marketing and its warranties, but Summerfield has not identified any particular false statements (including by reference to the date, location, and speaker) that it relied upon in purchasing these shingles.  Summerfield more specifically alleges that TAMKO, in response to Summerfield's 2014 warranty claim for shingles on one building, stated that those shingles were part of a bad batch, which caused Summerfield to believe that other shingles were not defective.  Summerfield has not alleged, however, who made that statement, how the statement was delivered (orally? in a document?), or when it was made.  Accordingly, because Summerfield has not alleged with sufficient particularity a fraudulent representation, Summerfield cannot satisfy this exception to the ELD.  The Court grants leave to Summerfield, however, to amend its complaint in an

attempt to allege facts sufficient to state a claim under this exception with the necessary particularity under Rule 9(b).

Third, Summerfield invokes the ELD exception for damages "proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions."  TAMKO argues that this exception cannot apply here because it was not in the business of supplying information. The Court agrees.  As the Illinois Supreme Court has stressed, for purposes of this exception "the focus must be on whether the defendant is in the business of supplying *information* as opposed to providing something tangible." *See First Midwest*, 843 N.E.2d at 334 (emphasis in original) (citing *Fireman's Fund Ins. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201-02 (Ill. 1997)).  Summerfield has not responded to this argument in its brief, and thus it has not shown how TAMKO may be considered to have been in the business of supplying information.  The complaint is reasonably read to describe TAMKO instead as a business that supplies something tangible (roofing shingles).  Thus, Summerfield has not alleged facts to support a plausible claim that could satisfy this exception to the ELD, and thus Summerfield may not rely on this exception as a matter of law.

Accordingly, as presently pleaded, Summerfield's strict liability and negligence claims as alleged in Counts IV through VIII and Count XI are barred by the ELD, and

TAMKO's motion for dismissal of those claims is hereby granted, although Summerfield is granted leave to amend as set forth above.[8]

### D.   *Unjust Enrichment (Count IX)*

In seeking dismissal of Summerfield's claim for unjust enrichment, TAMKO notes Summerfield's claim for breach of express warranty and relies on the general rule under Illinois law that no claim for unjust enrichment may lie if a specific contract governed the parties' relationship. *See People ex rel. Hartigan v. E&E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("Because unjust enrichment is based on an implied contract, 'where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application.'") (quoting *La Throp v. Bell Fed. Sav. & Loan Ass'n*, 370 N.E.2d 188, 195 (Ill. 1977)).  As numerous courts have recognized, however, a claim for unjust enrichment under Illinois law may be based on quasi-contract or tort, and the existence of a contract does not defeat the latter type of claim. *See, e.g.*, *Reid v. Unilever U.S., Inc.*, 964 F. Supp. 2d 893, 923 (N.D. Ill. 2013) (citing *Peddinghaus v. Peddinghaus*, 692 N.E.2d 1221, 1225 (Ill. Ct. App. 1998)); *Disher*, 2015 WL 4609980, at * 4.  TAMKO does not dispute that an unjust enrichment claim may be based on tort, but it argues that Summerfield has failed to show that its claim is based on tort.  The Court disagrees.  As the complaint makes clear, Summerfield's claim that it would be inequitable for TAMKO to retain benefits from its sale of shingles is based not only on representations in the

---

[8] Because Summerfield may replead to revive these claims, the Court will note that it does not agree with TAMKO's alternative position that Summerfield has not sufficiently alleged reliance in support of its negligent misrepresentation claim. Continued…

warranty but also on other representations and omissions and more generally on TAMKO's knowledge of a defect. Thus, Summerfield's unjust enrichment claim is not subject to dismissal on this basis at this time.[9]

TAMKO also argues in a footnote that this claim cannot survive if Summerfield's ICFA claim fails. TAMKO relies on *Manley v. Hain Celestial Group, Inc.*, 417 F. Supp. 3d 1114 (N.D. Ill. 2019), in which the court, relying solely on a Seventh Circuit case, concluded that because the plaintiff had failed to state a claim under ICFA, her claim for unjust enrichment failed as well. *See id.* at 1119-20 (citing *Toulon v. Continental Cas. Co.*, 877 F.3d 725, 741-42 (7th Cir. 2017)). In the Seventh Circuit case, the court, after noting that unjust enrichment does not constitute an independent cause of action, upheld the dismissal of an unjust enrichment claim because the plaintiff had argued that the claim survived with her ICFA claim but the ICFA and fraud claims were subject to dismissal. *See Toulon*, 877 F.3d at 741-42. In this case, Summerfield has not tied her unjust enrichment claim only to her ICFA claim. Moreover, the parties have not briefed whether

---

[9] In addition, as discussed above with respect to the Melnicks' claim, the rule on which TAMKO relies refers to the existence of a contract, and Summerfield has not alleged that it entered into a contract with TAMKO. Indeed, in seeking dismissal of Summerfield's implied warranty claims, TAMKO has argued that there is no privity of contract here. TAMKO has not cited any Illinois case in which this rule has been applied based on the assertion of an express warranty claim in the absence of an actual contract. The Court has located one such case: in *Reid*, the court seemed to indicate that the rule would still apply in such a situation because a claim for breach of express warranty "arises in contract," although it did not cite any authority in which the rule had been applied in that situation. *See Reid*, 964 F. Supp. 2d at 923-24. Nevertheless, that court allowed the plaintiff to plead the unjust enrichment claim in the alternative. *See id.* The Court will not weigh in on this issue at this time, however, in the absence of briefing from the parties.

Illinois law allows an independent claim for unjust enrichment.  Thus, the Court will not dismiss the claim at this stage merely because the other claims have been found deficient.

### E.   *Fraudulent Concealment (Count X)*

In its fraudulent concealment claim, Summerfield asserts that TAMKO should have disclosed that its shingles were defective and did not conform to warranted and represented standards.  TAMKO argues that this claim should be dismissed because Summerfield has not adequately alleged a duty of disclosure.  "In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff."  *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996).

Summerfield asserts two different bases for the existence of the necessary duty to disclose.  First, Summerfield argues that a duty arose from TAMKO's position of superiority.  In *Connick*, the Illinois Supreme Court described this basis as follows:

> A duty to disclose a material fact may arise out of several situations.  First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts.  Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff.  This position of superiority may arise by reason of friendship, agency, or experience.

*See id.* (citations omitted).  The Seventh Circuit, after reviewing the applicable Illinois caselaw, has elaborated on the "position of superiority" basis from *Connick* as follows:

> The Illinois Appellate Court has recently stated that the standard for identifying a special trust relationship is extremely similar to that of a fiduciary relationship.

Accordingly, state and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one [citing cases].

The special relationship threshold is a high one: the defendant must be clearly dominant, either because of superior knowledge of the matter derived from overmastering influence on the one side, or from weakness, dependence, or trust justifiably reposed on the other side. . . . In short, the defendant accused of fraudulent concealment must exercise overwhelming influence over the plaintiff.

. . . [A]symmetric information alone does not show the degree of dominance needed to establish a special trust relationship.

*See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 572-73 (7th Cir. 2012) (citations and internal quotations omitted).

Summerfield cannot satisfy that high standard here. Although Summerfield invokes this basis from *Connick*, it has not explained in its brief why its relationship with TAMKO qualifies. In its complaint, Summerfield has alleged that TAMKO was in a position of superiority because of its experience, but it has not alleged any facts to suggest a special or extraordinary relationship or anything beyond the usual commercial relationship. In fact, as discussed above, Summerfield did not have *any* direct relationship with TAMKO. *See Connick*, 675 N.E.2d at 593 (no duty of disclosure where plaintiff merely purchased the product from the defendant's authorized dealer). Thus, Summerfield cannot rely on this basis for the existence of a duty of disclosure here.

Second, Summerfield argues that a duty arose from TAMKO's affirmative representations, in which TAMKO failed to disclose the defects. TAMKO concedes that, as stated by the Seventh Circuit, "a duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while

omitting material facts that render the statement a misleading half-truth." *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) (citations and internal quotations omitted). In this case, Summerfield points to its allegations of representations by TAMKO, including representations that the shingles met certain industry standards and building codes and that the shingles involved in Summerfield's warranty claim for one building were merely part of a bad batch. TAMKO nonetheless argues that such representations are not sufficient because Summerfield has not alleged that TAMKO indicated on those occasions that it was comprehensively providing all information about its shingles.

The Court rejects this argument by TAMKO. In the two cases on which TAMKO relies, the Seventh Circuit did not describe this basis as requiring an explicitly comprehensive statement; rather, it determined in those cases, based on the particular facts, that the plaintiffs had not alleged any statements that could be considered deceptive half-truths. *See Crichton*, 576 F.3d at 398; *Toulon*, 877 F.3d at 736-37. In the case on which the Seventh Circuit relied, the Illinois Court of Appeals described this basis for a duty in this way:

> A statement which is technically true as far as it goes may nonetheless be fraudulent if it is misleading because it does not state matters which materially qualify that statement. Moreover, half the truth may obviously amount to a lie, if it is understood to be the whole.

*See Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 811 (Ill. Ct. App. 1993) (citations and internal quotations omitted). The *Heider* court concluded that while the defendant's statement that certain material "was not a problem" might have been true in the sense that there was no immediate asbestos problem, fraud had been sufficiently alleged

because the defendant failed to disclose that there was a potential future problem with asbestos. *See id.*

Thus, a particular case turns on whether the representations alleged could be considered misleadingly incomplete. The Court cannot say as a matter of law in this case that the representations cited by Summerfield are insufficient. For instance, the representation that the shingles met certain standards is not just misleading but is actually false if the shingles did not meet those standards. Statements that the shingles should last a certain duration reasonably imply the absence of a defect that would undermine that claim. The statement that shingles on one building were merely part of a bad batch may reasonably suggest that the problem is not a defect found in the shingles on all of the buildings. Accordingly, the Court rejects this basis for dismissal at this stage.

Nevertheless, as discussed above with respect to the Melnicks' claims and with respect to the fraud exception to the Illinois ELD, Summerfield has not alleged the representations on which it relies with particularity as required by Rule 9(b), and Summerfield's fraudulent concealment claim is subject to dismissal for that reason. Again, however, Summerfield is granted leave to amend its complaint to allege facts sufficient to state a claim for fraudulent concealment with particularity.[10]

F.    *ICFA Claim (Count XX)*

---

[10] TAMKO also argues that certain representations alleged by Summerfield constitute mere puffery. The Court rejects this basis for dismissal at this time, as Summerfield has clearly alleged fact-based misrepresentations and omissions. Whether any particular statement constitutes mere puffery is better considered once Summerfield has amended its complaint to plead the representations with sufficient particularity.

In Count XX, Summerfield asserts a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1, *et seq.*  Such a claim may be brought by any person who suffers actual damage as a result of a violation of ICFA. *See id.* 505/10a(a).   Thus, the plaintiff must show a deceptive act or practice by the defendant in the course of trade or commerce, with the intent that the plaintiff rely thereon, that proximately caused damage to the plaintiff.  *See Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002).

In seeking dismissal of this claim, TAMKO argues that because Summerfield has not alleged that it saw or heard any of TAMKO's allegedly deceptive marketing, Summerfield has not stated a plausible claim that it suffered damages as a proximate cause of any such deceptive act.  TAMKO relies on *Oliveira*, in which the Illinois Supreme Court ruled that because the plaintiff had not alleged that he saw, heard, or read any of the defendant's advertisements, his damage could not have been proximately caused by any deception in those advertisements, and he therefore could not state a claim for a violation of ICFA.  *See id.* at 160-64.  Subsequently, in *Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213 (Ill. 2004), the supreme court reaffirmed that "deceptive advertising cannot be the proximate cause of damages under [ICFA] unless it actually deceives the plaintiff," and that there must therefore be a nexus between the allegedly deceptive advertising and the damages alleged to have flowed from the purchase of the product.  *See id.* at 217-18.

In pleading this count, Summerfield has alleged that TAMKO engaged in misleading, false, and deceptive acts by making misrepresentations about the shingles and by failing to disclose the defect.  In its brief, Summerfield cites to its allegations of specific

40

representations on TAMKO's website (as of 2015) and its general allegation concerning statements on the website and in TAMKO's brochures, advertisements, and warranties. Summerfield has not alleged (or asserted in opposing dismissal of this claim) that it saw any such materials before TAMKO's shingles were installed on its buildings. The Court agrees with TAMKO that in the absence of any allegation that it at least saw a piece of deceptive adverting by TAMKO before the installation, Summerfield has not stated a plausible claim under *Oliveira* and *Shannon* that any damages flowing from the installation were proximately caused by any such deceptive advertising.

In response to this argument, Summerfield cites *Lipinski v. Martin J. Kelly Oldsmobile, Inc.*, 759 N.E.2d 66 (Ill. Ct. App. 2001), in which the Illinois Court of Appeals sated that a plaintiff need not show actual reliance to state an ICFA claim based on omission or concealment. *See id.* at 70 (citing *Perez v. Citicorp Mortg., Inc.*, 703 N.E.2d 518, 523 (Ill. Ct. App. 1998)). In the subsequent case of *Oliveira*, however, the Illinois Supreme Court made clear that its holding was based on proximate cause, not reliance. *See Oliveira*, 776 N.E.2d at 161-64. Summerfield has not explained how it has alleged that it was actually deceived by any particular piece of deceptive advertising by TAMKO and that its installation of the shingles and damage therefrom were thus proximately caused by the advertising.

Summerfield also argues that it relies on TAMKO's failure to disclose the alleged defect, but that distinction does not save Summerfield. In *De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009), the Illinois Supreme Court held that under *Oliveira* and *Shannon* a plaintiff may not recover under ICFA when no communication from the defendant has reached the

plaintiff and the defendant has withheld material information from consumers. *See id.* at 314-16. The court stated:

> In the present case, [the plaintiff] has not alleged any [misleading] statements or communications from [the defendant]. Indeed, [the plaintiff] has acknowledged that she did not rely on any statements from [the defendant] in purchasing [the product]. . . . [W]e have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause. . . . A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.

*See id.* at 316. Under this analysis, Summerfield cannot state a claim under the ICFA for an omission unless it actually saw advertising from TAMKO from which the material information was omitted, such that the omission could have proximately caused its damages from the installation of the shingles. Accordingly, the Court dismisses Summerfield's ICFA claim to the extent based on advertising and marketing materials or warranties by TAMKO.

Summerfield has alleged one specific deceptive act that is excepted from this ruling, namely TAMKO's statement, in the context of Summerfield's 2014 warranty claim, that the problematic shingles were merely part of a bad batch. As discussed above, that statement could reasonably imply a statement that Summerfield's other shingles were not defective. There is no issue with respect to whether Summerfield heard that statement by TAMKO, and thus the holding of *Oliveira* does not demand dismissal of an ICFA claim based on the statement. TAMKO argues that because the statement was made long after the installation of Summerfield's shingles in 2003, any such deception could not have

proximately caused damages flowing from the installation. Summerfield asserts, however, that it suffered different damages from the "bad batch" statement, as it could have replaced all of its shingles if told about the defect at that time. The Court agrees with Summerfield that the timing of the statement would not preclude a claim for damages actually caused by the statement.

As noted above, however, Summerfield has not pleaded a claim based on the "bad batch" statement with particularity as required by Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (Rule 9(b) applies to a claim of fraud under ICFA. To state a claim under ICFA based on this allegedly fraudulent statement, Summerfield must allege who made the statement, how and when it was made, and the contents of the statement. Summerfield must also allege the consequences of the statement, which means in this case that it must allege how the statement in 2014 caused it to suffer particular damage in light of its allegation that it had all of its roofs inspected in 2015. Summerfield is granted leave to amend to state a claim under ICFA based on the "bad batch" statement.

Accordingly, TAMKO's motion is granted with respect to all of Summerfield's claims except the claim for unjust enrichment, although Summerfield is granted leave to amend with respect to the tort claims subject to the ELD, the fraudulent concealment claim, and a limited ICFA claim.

## V. Ms. Louthan's Claims Under Ohio Law

TAMKO moves for partial dismissal of Ms. Louthan's claims under Ohio law.  It does not seek dismissal of Counts IV, VI, VII, and VIII as asserted by Ms. Louthan.

### A.    *Withdrawn Claims*

Ms. Louthan concedes in her response brief that she is not pursuing her claim for negligent misrepresentation (Count XI), and she previously withdrew her claim under the Ohio Product Liability Act (OPLA) (Count XVIII).  Accordingly, TAMKO's motion to dismiss is granted as unopposed with respect to those two claims.

### B.    *Express Warranty (Count I)*

TAMKO moves to dismiss Ms. Louthan's claim for breach of express warranty.  To the extent that this claim is based on a breach of TAMKO's written limited warranty, TAMKO seeks dismissal based on its argument that Ms. Louthan is not an "Owner" – defined in the warranty as the owner of the building at the time of the installation of the shingles – to which the warranty applies.[11]

The Court rejects this argument for dismissal at this time.  Ms. Louthan has alleged that she "is the owner" of a particular home; that TAMKO's shingles were installed "on Louthan's home" in September 2004; and that Ms. Louthan reviewed TAMKO's brochure and selected the shingles before their installation.  Thus, Ms. Louthan has stated a plausible claim that she was an owner of the home at the time of installation.  TAMKO asks the Court to take judicial notice of a deed passing title to Ms. Louthan from her mother in 2010.  The deed is a quitclaim deed, however, and the fact that her mother passed her interest to

---

[11] The warranty also allows for transfer within the first two years, but Ms. Louthan does not argue that such a transfer occurred in this case.

Ms. Louthan does not preclude the possibility that Ms. Louthan already shared ownership of the house with her mother.  The resolution of this issue must await the presentation of evidence.

Moreover, under Ohio law, a seller's warranty extends "to any natural person who is in the family or household of [the] buyer or who is a guest in [the buyer's] home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured . . . by the breach of the warranty."  *See* Ohio Rev. Code Ann. § 1302.31. A warranty may not exclude or limit the operation of this provision.  *See id.*  TAMKO argues that Ms. Louthan has not alleged that she meets the requirements of this statute.  She has alleged, however, that she selected the shingles, and it is undisputed that she is the daughter of the purported owner.  The Court cannot conclude as a matter of law that this statute would not apply here.  Accordingly, the Court denies TAMKO's motion to dismiss this claim to the extent based on the limited warranty.

TAMKO also seeks dismissal of this claim to the extent that it is based on express warranties not contained in the written limited warranty.  In Count I of their complaint, plaintiffs allege that TAMKO "created additional express warranties for the shingles through its sales brochures, catalogs, website and marketing materials."  TAMKO argues that it disclaimed any additional warranties in its limited warranty.

In response, Ms. Louthan argues that TAMKO's disclaimer of other warranties was unconscionable and therefore should not be enforced.  *See* Ohio Rev. Code Ann. § 1302.15 (court may refuse to enforce a clause that it finds to have been unconscionable when made). Ms. Louthan raises this issue only in a footnote, however, and she has not argued that any

particular circumstances in her case made this disclaimer unconscionable.  Nor has she alleged any particular facts giving rise to a plausible claim that a gross inequality of bargaining power existed between these parties.  *See Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 639 (Ohio 1989) ("findings of unconscionability in a commercial setting are rare;" "where there is no great disparity of bargaining power between the parties, a contractual provision which excludes liability for consequential damages and limits the buyer's remedy to repair or replacement of the defective product is not unconscionable"); *Zaremba v. Marvin Lumber and Cedar Co.*, 458 F. Supp. 2d 545, 549 (N.D. Ohio 2006) (warranty by which the seller assumes some responsibility for performance or maintenance of the product is not unconscionable) (quoting *Westfield Ins. Co. v. HULS Am., Inc.*, 714 N.E.2d 934, 949 (Ohio Ct. App. 1998)).  TAMKO's limited warranty did provide a remedy for defective shingles, and Ms. Louthan has not alleged any facts that would take this case beyond that of a normal commercial relationship. Accordingly, the Court rejects Ms. Louthan's claim that the disclaimer of other warranties was unconscionable.

Ms. Louthan also seeks to nullify the disclaimer under Ohio Gen. Rev. Code Ann. § 1302.29(A), which states that words creating a warranty and words negating or limiting that warranty shall be construed consistently if it is reasonable to do so, but that the limitation is inoperative to the extent such construction as consistent is unreasonable.  *See id.*  The Court agrees that it would be unreasonable to construe as consistent an express warranty made by TAMKO outside of the limited warranty and a disclaimer of any such warranty.  This statute cannot be applied here, however, without knowing the content of

46

the particular express warranties alleged by Ms. Louthan from TAMKO's marketing materials. In the complaint, plaintiffs quote from TAMKO's website as of 2015, but they do not identify any particular statements from the website that were made prior to the installation on Ms. Louthan's house. Ms. Louthan has identified only one piece of marketing material with any specificity: she alleges that she reviewed a brochure and then selected a type of shingle based on TAMKO's representations that "the shingles would last 30 years and she would not have to replace the shingles for a long time." TAMKO has not addressed the application of Section 1302.29 to this alleged warranty from the brochure, and the Court cannot conclude as a matter of law at this stage that the disclaimer would not be rendered inoperative with respect to this warranty. TAMKO's motion to dismiss the express warranty claim is denied to that extent.

Ms. Louthan has not alleged any other particular marketing materials, however, that contained an express warranty on which she bases this claim. Thus, the complaint does not provide adequate notice of a claim based on any other express warranty such that TAMKO could respond. Accordingly, TAMKO's motion to dismiss this claim is granted to the extent that it is based on any express warranty other than the limited warranty and the particular brochure cited by Ms. Louthan in the complaint. Ms. Louthan is granted leave to amend her complaint to attempt to allege sufficient facts to support a claim based on additional express warranties.

### C.    *Implied Warranty (Counts II and III)*

TAMKO seeks dismissal of Ms. Louthan's claims for breach of the implied warranty of merchantability (Count II) and breach of the implied warranty of fitness for a

particular purpose (Count III).  In part, TAMKO argues that Ms. Louthan may not maintain a claim under Ohio's enactment of the UCC because Ms. Louthan has not alleged contractual privity with TAMKO and because such claims are time-barred.  *See Lawyers Coop. Publishing Co. v. Muething*, 603 N.E.2d 969, 972 (Ohio 1992) ("absent a contractual relationship between the plaintiff and defendant, an action based on contract [under the UCC] for breach of warranty does not exist"); Ohio Rev. Code Ann. § 1302.98 (imposing a four-year limitation period, with the cause of action accruing upon tender of delivery of the product).[12]

Ms. Louthan does not dispute that she lacks contractual privity here, or that privity is required for an implied warranty claim under Ohio's UCC.  Ms. Louthan notes, however, that as a remote purchaser without privity, she may bring a claim in tort for breach of an implied warranty under Ohio law.  In *Lonzrick v. Republic Steel Corp.*, 218 N.E.2d 185 (Ohio 1966), the Ohio Supreme Court stated that it is settled law in that state that "there can be an action in tort, based upon breach of warranty, and no contractual relation between the plaintiff and the defendant is required."  *See id.* at 192.  The substance of such an implied warranty is the manufacturer's "implicit representation of good and merchantable quality and fitness for intended use" of the product.  *See id.* at 188.  The manufacturer

---

[12] Ms. Louthan argues in her response brief that she has alleged tolling of limitation periods based on fraudulent concealment.  The Ohio UCC's statute of limitation, however, makes clear that a claim accrues upon delivery, while allowing tolling only for particular reasons that do not apply here.  *See* Ohio Rev. Code Ann. § 1302.98(A), (B), (D).  Thus, Ms. Louthan has not shown that this limitation period is subject to tolling in this case.  *See Standard Alliance Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 822-23 (6th Cir. 1978) (Section 1302.98 is subject only to the specific tolling exceptions listed in the statute).

assumes a duty by the implicit representation, and the duty "is breached when a defect in the product causes the collapse of the product and is the direct and proximate cause of injury to a person whose presence the defendant could reasonably anticipate." *See id.* The Ohio Supreme Court has also recognized such a claim for property damage. *See Iacono v. Anderson Concrete Corp.*, 326 N.E.2d 267, 271 (Ohio 1975).

TAMKO does not dispute that Ohio recognizes such a claim. Its only argument in reply is that Ms. Louthan's complaint includes no such tort claim and asserts implied warranty claims only under the UCC. The Court disagrees. As noted above, the implied warranty in tort is one of merchantability, and in Count II Ms. Louthan has asserted a breach of such a warranty, without any reference to Ohio's statutes or the UCC. Thus, the Court will consider Ms. Louthan's claim in Count II to be asserted in tort. No privity is required for such a claim under Ohio law. Moreover, TAMKO does not argue that such a claim in tort would be time-barred in this case. *See U.S. Fidelity & Guaranty Co. v. Truck & Concrete Equip. Co.*, 257 N.E.2d 380, 385 (Ohio 1970) (two-year limitation period under Ohio Rev. Code Ann. § 2305.10 applies to claim for breach of implied warranty in tort, in absence of contractual relationship); Ohio Rev. Code Ann. § 2305.10(A) (cause of action accrues under this statute when the injury or loss to property occurs). Thus, the Court rejects these bases for dismissal of Count II as asserted by Ms. Louthan.

In Count III, Ms. Louthan has asserted a claim for breach of an implied warranty of fitness for a particular purpose. Ohio's UCC provides that such a warranty is implied in certain circumstances, *see* Ohio Rev. Code Ann. § 1302.28, but Ms. Louthan has not provided any authority to suggest that under Ohio law such a warranty may be implied in

tort despite the absence of a contractual relationship.  Accordingly, TAMKO's motion to dismiss is granted with respect to Count III as asserted by Ms. Louthan.

TAMKO also argues that it conspicuously disclaimed all implied warranties in its limited warranty, as permitted under Ohio's UCC.  *See* Ohio Rev. Code Ann. § 1302.29. TAMKO has not explained, however, how a warranty implied in tort may be disclaimed in that manner.  In fact, caselaw suggests the opposite.  *See Chemtrol*, 537 N.E.2d at 634 (noting that when the doctrine of implied warranty in tort is applicable, UCC provisions permitting the parties to exclude warranties contractually are of no avail) (quoting *Avenell v. Westinghouse Elec. Corp.*, 324 N.E.2d 583, 588 (Ohio Ct. App. 1974)).  Accordingly, TAMKO's motion to dismiss is denied with respect to Count II as asserted by Ms. Louthan.

### D.    *Strict Liability – Manufacturing Defect (Count V)*

TAMKO moves to dismiss Ms. Louthan's manufacturing defect claim on the basis of its argument that she has not sufficiently alleged facts to support such a claim.  The Court rejects this argument, as it does not agree that Ms. Louthan's allegations are merely conclusory.  Ms. Louthan has alleged facts to support her claim, including facts that consumers experienced failures with the shingles and that the shingles failed to conform to particular industry standards.  *See, e.g.*, *Mattos v. Eli Lilly and Co.*, 2012 WL 1893551, at *6-7 (D. Kan. May 23, 2012) (Lungstrum, J.) (defect claim allegations included additional facts and thus were not merely conclusory).  Moreover, Ms. Louthan's allegation concerning the asphalt content of the shingles provides at least some detail concerning how the shingles were defective.  Finally, Ms. Louthan's additional claim of a design defect

does not render her alternative claim of a manufacturing defect implausible or otherwise insufficient.  The Court denies the motion to dismiss this claim.

### E.    *Unjust Enrichment (Count IX)*

TAMKO argues that Ms. Louthan has not stated a valid claim under Ohio law for unjust enrichment because she did not purchase the shingles directly from TAMKO or otherwise pay money directly to TAMKO.  Ms. Louthan has not alleged that she paid money for the shingles directly to TAMKO, nor does she contend that she purchased the shingles directly from TAMKO and not from a retailer in the ordinary chain of distribution. The Court agrees that Ohio law does not permit a claim for unjust enrichment in such a retail or chain-of-commerce situation.

This conclusion is compelled by the holding of the Ohio Supreme Court in *Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005), in which the plaintiff purchased the defendant's product from a retailer.  *See id.*  The court upheld the dismissal of the plaintiff's unjust enrichment claim for the following reason:

> The rule of law is that an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser.  The facts in this case demonstrate that no economic transaction occurred between [plaintiff] Johnson and [defendant] Microsoft, and, therefore, Johnson cannot establish that Microsoft retained any benefit to which it is not just entitled.

*See id.* at 799 (citation and internal quotation omitted).  Thus, at least in the ordinary retail situation in which the consumer does not purchase the product directly from the manufacturer, the Ohio Supreme Court has made clear that the consumer may not assert a claim against the manufacturer for unjust enrichment under Ohio law.  *See Hoffer v.*

*Cooper Wiring Devices, Inc.*, 2007 WL 1725317, *4 (N.D. Ohio June 13, 2007) (following *Johnson* in a retail situation; noting that Ohio courts have allowed unjust enrichment claims without privity of contract only in cases involving subcontractors or when the defendant specifically tailored a product for a particular plaintiff).   Federal district courts in Ohio have consistently applied the holding of *Johnson* to dismiss unjust enrichment claims in cases involving retail purchases without a direct transaction involving the parties.  *See, e.g.*, *Miller v. Kent Nutrition Group, Inc.*, 2016 WL 11246420, at *8-9 (N.D. Ohio Sept. 16, 2016); *Young v. Carrier Corp.*, 2014 WL 6617650, at *7 (N.D. Ohio Nov. 21, 2014); *Savett v. Whirlpool Corp.*, 2012 WL 3780451, at *7 (N.D. Ohio Aug. 31, 2012); *In re Whirlpool Corp. Front-Loading Washer Products Liability Litig.*, 684 F. Supp. 2d 942, 951-53 (N.D. Ohio 2009); *Bower v. International Bus. Machines, Inc.*, 495 F. Supp. 2d 837, 844 (S.D. Ohio 2007); *Hoffer*, 2007 WL 1725317, at *4.

In arguing that a direct payment to the defendant is not required for assertion of this claim, Ms. Louthan relies on two federal court cases, but the Court is not persuaded by that authority.  First, Ms. Louthan cites *Randleman v. Fidelity National Title Insurance Co.*, 465 F. Supp. 2d 812 (N.D. Ohio 2006), in which plaintiffs who had refinanced home mortgages sued the company from whom their lenders had purchased title insurance, and in which the court allowed an unjust enrichment claim to proceed.  *See id.* at 825.  The court concluded that the plaintiffs' allegation of a transactional nexus with the defendant – including the allegations that they had engaged in transactions with the defendant, that they were "customers" of the defendant, and that they had paid premiums to the defendant – distinguished the case from the facts of *Johnson*.  *See id.*  No such allegations take the

present case from within the ambit of *Johnson*, however, as Ms. Louthan has not alleged any transaction with TAMKO or that her payments went directly to TAMKO.

Ms. Louthan also relies on *Paikai v. General Motors Corp.*, 2009 WL 275761 (E.D. Cal. Feb. 5, 2009), in which the court rejected an argument based on *Johnson* for dismissal of the plaintiff's unjust enrichment claim under Ohio law. *See id.* at *5. The defendant had argued that it did not receive a benefit from the plaintiff because the plaintiff purchased the car at issue from a dealer, not from defendant. *See id.* In rejecting that argument, the court stated that *Johnson* merely states that "an indirect purchaser cannot assert a common-law claim for restitution and unjust enrichment against a defendant *without establishing that a benefit had been conferred upon that defendant by the purchaser.*" *See id.* (emphasis in *Paikai*) (quoting *Johnson*, 834 N.E.2d at 799). The *Paikai* court noted that the plaintiff had alleged such a benefit in its case. *See id.* The Court rejects this interpretation by the *Paikai* court, however, as that court did not consider the entirety of the holding in *Johnson*. As noted above, the Ohio Supreme Court followed that quote with the following sentence: "The facts in this case demonstrate that no economic transaction occurred between [plaintiff] Johnson and [defendant] Microsoft, and, therefore, Johnson cannot establish that Microsoft retained any benefit to which it is not just entitled." *See Johnson*, 834 N.E.2d at 799. This conclusion by the supreme court governs the ordinary retail situation that lacks a direct transaction and payment between the parties.

The *Paikai* court also distinguished *Johnson* on the facts, as the plaintiff in its case had purchased the product from an authorized dealer of the defendant-manufacturer. *See Paikai*, 2009 WL 275761, at *6. *Johnson* cannot be distinguished in that manner from the

53

present case, as Ms. Louthan has not alleged that she purchased the shingles from a dealer in a special relationship with TAMKO.

For these reasons, federal courts in Ohio have rejected the reasoning of *Randleman* and *Paikai*, choosing instead to follow *Johnson* in the usual retail situation. *See Whirlpool*, 684 F. Supp. 2d at 952-53 (analyzing caselaw, including *Paikai* and *Randleman*); *see also Savett*, 2012 WL 3780451, at *7 (following *Johnson* and *Whirlpool*). The Court is persuaded by the court's analysis in *Whirlpool*, and it agrees, based on *Johnson*, that the Ohio Supreme Court would reject Ms. Louthan's claim for this reason. Ms. Louthan does not dispute that she paid no money directly to TAMKO, and she has not alleged any special circumstances, by which she conferred a benefit directly on TAMKO, that would distinguish *Johnson*. Accordingly, the Court grants TAMKO's motion to dismiss Ms. Louthan's unjust enrichment claim.

### F.   *Fraudulent Concealment (Count X)*

TAMKO argues that Ms. Louthan has failed to plead her claim for fraudulent concealment with particularity as required by Fed. R. Civ. P. 9(b). The Court agrees.

Ms. Louthan cites her allegations of affirmative representations by TAMKO, including statements in marketing materials concerning compliance with industry standards. Ms. Louthan has not identified any such representation with sufficient particularity, however. To the extent that Ms. Louthan bases her fraud claim on any particular representation (whether alleged to be false or misleadingly incomplete), she must in her pleading identify who made the statement, when and where it was made, and how it was false or misleading, *see supra* Part III.C., and she has not done so for any particular

54

representation. Ms. Louthan has specifically alleged that she relied on the representation in a brochure that the shingles would last for 30 years, but she has not described that brochure or indicated where or when she saw it. Accordingly, TAMKO's motion is granted with respect to this claim. Ms. Louthan is granted leave to amend her complaint to attempt to allege sufficient facts to support a claim for fraudulent concealment.

### G.  OCSPA Claim (Count XIX)

Ms. Louthan asserts a claim under the Ohio Consumer Sales Protection Act (OCSPA), Ohio Rev. Code Ann. §§ 1345.01 *et seq.* TAMKO argues that this claim is time-barred, as Section 1345.10 of the Act requires an action to be brought within two years of the occurrence of the violation. *See id.* § 1345.10(C). TAMKO notes that the installation of the shingles on Ms. Louthan's house took place in 2004, over ten years before Ms. Louthan brought this action. Moreover, Ohio courts have held that this two-year limitation period is not subject to a discovery rule. *See, e.g.*, *Savett v. Whirlpool Corp.*, 2012 WL 3780451, at *3 (N.D. Ohio Aug. 31, 2012) (citing *Rosenow v. Shutrump & Assocs.*, 839 N.E.2d 82, 86-87 (Ohio Ct. App. 2005), and *Sproles v. Simpson Fence Co.*, 649 N.E.2d 1297, 1302 (Ohio Ct. App. 1994)).

First, as Ms. Louthan notes, Section 1345.10's limitation period applies only to her claim for damages and does not apply to her alternate clam for rescission under the OCSPA. That latter claim is governed by Section 1345.09, which includes a discovery rule. *See* Ohio Rev. Code Ann. § 1345.09(C)(1) ("in any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it"); *see also Rosenow*, 839 N.E.2d at 86 (discovery

rule applies to claims for rescission but not to claims for damages, which are subject to the two-year limitation period in Section 1345.10).

In its reply brief, TAMKO argues that Ms. Louthan has not pleaded facts showing compliance with Section 1345.09's requirements for a claim of rescission. TAMKO did not raise this issue in its initial brief, however, despite the complaint's explicit statement in Count XIX that Ms. Louthan is seeking rescission as a remedy under OCSPA. The Court therefore declines to consider this argument newly raised in the reply. *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (Lungstrum, J.) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)). Accordingly, TAMKO's motion to dismiss this claim is denied to the extent that Ms. Louthan seeks rescission as a remedy.

Second, in this count, among other violations, Ms. Louthan alleges that TAMKO violated OCSPA in November 2015 in connection with her making a warranty claim. Such an alleged violation would fall within the two-year limitation period, and TAMKO has not argued that that particular claim is time-barred. Therefore, TAMKO's motion is also denied with respect to that particular alleged violation.

Third, for other alleged violations, Ms. Louthan argues that the statute of limitations was tolled because of fraudulent concealment. TAMKO notes that at least one court has held that "Ohio law does not allow tolling of [OCSPA]." *See Gerstle v. American Honda Motor Co., Inc.*, 2017 WL 2797810, at *10 (N.D. Cal. June 28, 2017). The Court does not agree with that statement of Ohio law, however. In *Gerstle*, the California federal court cited only one case to support its statement. *See id.* (citing *Zaremba v. Marvin Lumber and*

*Cedar Co.*, 458 F. Supp. 2d 545, 552 (N.D. Ohio 2006)).  The court specifically noted the *Zaremba* court's statement that this limitation period is "absolute".  *See id.* at *10 n.17.  In *Zaremba*, however, the federal court was only making the point that the discovery rule does not apply to the OCSPA limitation period.  *See Zaremba*, 458 F. Supp. 2d at 552 (citing *Lloyd v. Buick Youngstown GMC Truck Co.*, 686 N.E.2d 350 (Ohio Ct. App. 1996)).  Similarly, in *Lloyd*, the Ohio Court of Appeals addressed only whether the discovery rule of Section 1345.09 applied to the limitation period of Section 1345.10.  *See Lloyd*, 686 N.E.2d at 353.  TAMKO has not cited any instance of an Ohio court's stating that the OCSPA statute of limitations cannot be tolled under any circumstances, and the Court has located no such case.  Indeed, in at least four cases, Ohio courts have considered tolling based on concealment as applied to a claim under OCSPA.  *See Kondash v. Kia Motors Am., Inc.*, 2016 WL 1124621, at *21 n.27 (S.D. Ohio June 24, 2016) ("the Court acknowledges that the [OCSPA] statute of limitations may be tolled by equitable concealment") (citing *Unifund CCR Partners v. Young*, 2013 WL 5447666, at *7-8 (Ohio Ct. App. Sept. 27, 2013) (unpub. op.)); *Thornton v. State Farm Mutual Auto Ins. Co., Inc.*, 2006 WL 3359448, at *6 (N.D. Ohio Nov. 17, 2006) (considering merits of argument for tolling of OCSPA limitation period based on fraudulent concealment); *Unifund*, 2013 WL 5447666, at *7-8 (considering and rejecting on the facts the application of equitable tolling based on fraudulent concealment for a claim under the OCSPA); *State ex rel. Celebrezze v. Grogan Chrysler-Plymouth, Inc.*, 598 N.E.2d 796, 799 (Ohio Ct. App. 1991) (citing the absence of fraud in rejecting argument for tolling of the limitation period for an action by the Attorney General under the OCSPA).

The Ohio Supreme Court has acknowledged the principle that in certain circumstances a limitation period may be tolled by estoppel based on fraudulent concealment. *See Doe v. Archdiocese of Cincinnati*, 849 N.E.2d 268, 278-79 (Ohio 2006); *see also, e.g.*, *Phelps v. Lengyel*, 237 F. Supp. 2d 829, 836 (N.D. Ohio 2002) (noting "the case law holding that under certain circumstances Ohio law recognizes that the concealment of a cause of action can toll the statute of limitations"). TAMKO has not shown any reason why that tolling doctrine may not be applied to a claim under OCSPA, and the Court will therefore consider Ms. Louthan's invocation of the doctrine in this case.

In *Doe*, the supreme court, in relying on and quoting with approval particular holdings by other courts, made clear that fraudulent concealment sufficient to toll a limitation period requires a showing of specific affirmative acts subsequent to the underlying offense that prevent the plaintiff from timely filing suit. *See Doe*, 849 N.E.2d at 279; *see also Thornton*, 2006 WL 3359448, at *6 (applying this standard from *Doe*; "fraudulent concealment requires some affirmative act by the defendant designed to prevent discovery of the cause of action"). Ms. Louthan has not alleged any such acts by TAMKO, however. She has alleged only that TAMKO concealed the fact of the defect in the shingles. She has not alleged any affirmative acts by TAMKO subsequent to the installation of Ms. Louthan's shingles that prevented her from filing suit within the limitation period (let alone with the required particularity under Rule 9(b)). Moreover, TAMKO's conduct in rejecting her warranty claim in 2015 could not accomplish the necessary tolling because by that time the limitation period had already run. Accordingly, any claim for damages based on a violation other than that alleged in connection with the

2015 warranty claim is time-barred, and TAMKO's motion to dismiss is granted to that extent.

TAMKO also argues that the Court should dismiss plaintiffs' class claims under OCSPA. Specifically, TAMKO argues that plaintiffs have not alleged facts to satisfy the notice requirement of Section 1345.09, which "provides that a consumer may qualify for class-action status only when a supplier acted in the face of prior notice that its conduct was deceptive or unconscionable," such notice coming in the form of a rule adopted by the Ohio Attorney General or a court decision made public by that official. *See Marrone v. Phillip Morris USA, Inc.*, 850 N.E.2d 31, 34 (Ohio 2006) (citing Ohio Rev. Code Ann. § 1345.09(B)). No class has been certified in this case; thus, TAMKO in essence is seeking to strike certain class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D). The Court concludes in its discretion, however, that this issue would be better addressed at the class certification stage or the summary judgment stage, and it therefore denies TAMKO's motion as it relates to the class claim.[13]

Accordingly, TAMKO's motion to dismiss is granted with respect to the following claims asserted by Ms. Louthan: breach of express warranty (Count I) to the extent based on warranties other than those contained in TAMKO's limited warranty and in the brochure on which she relied; breach of the implied warranty of fitness for a particular purpose (Count III); unjust enrichment (Count IX); fraudulent concealment (Count X); negligent

---

[13] The Court notes that although TAMKO in its reply has addressed two cases cited by plaintiffs as providing the necessary notice, it has not addressed the rules on which the court relied in another case cited by plaintiffs, *Amato v. General Motors Corp.*, 463 N.E.2d 625 (Ohio Ct. App. 1982). *See id.* at 632-33 (citing Ohio Admin. Code 109:4-3-02, -03).

misrepresentation (Count XI); claims under OPLA (Count XVIII); and claims under OCSPA for damages (Count XIX) other than the claim based on a 2015 violation concerning the rejection of Ms. Louthan's warranty claim.  Ms. Louthan is granted leave to amend her complaint, on or before **July 15, 2020**, to allege facts to support claims for breach of express warranty and fraudulent concealment, as set forth above.  The motion as it relates to Ms. Louthan's claims is otherwise denied.[14]

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's motion to dismiss most of plaintiffs' claims (Doc. # 113) is **granted in part and denied in part**, as set forth herein.  Plaintiffs are granted leave to amend their complaint, on or before **July 15, 2020**, with respect to certain claims as directed.

IT IS SO ORDERED.

Dated this 26th  day of June, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge

---

[14] Because some claims have survived for each set of plaintiffs, the Court denies TAMKO's motion to dismiss plaintiffs' claims for declaratory and injunctive relief (Counts XXI and XXII).