IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MARTIN and BETH MELNICK; )
LIA LOUTHAN; and SUMMERFIELD )
GARDENS CONDOMINIUM, on behalf of )
themselves and all others similarly situated, )
  )
                Plaintiffs, )
  )
v. )   Case No. 19-2630-JWL
  )
TAMKO BUILDING PRODUCTS, INC., )
  )
                Defendant. )
  )
_____)

## MEMORANDUM AND ORDER

Three sets of plaintiffs assert claims against defendant TAMKO Building Products, Inc. ("TAMKO") arising out of its sale of roofing shingles that plaintiffs allege were defective. By Memorandum and Order of June 26, 2020, the Court granted in part and denied in part TAMKO's motion to dismiss certain claims, while granting plaintiffs leave to amend with respect to some of the dismissed claims. *See Melnick v. TAMKO Building Prods., Inc.*, __ F. Supp. 3d __, 2020 WL 3490363 (D. Kan. June 26, 2020) (Lungstrum, J.). Plaintiffs subsequently filed a second amended complaint. This matter now comes before the Court on TAMKO's partial motion to dismiss plaintiffs' second amended complaint (Doc. # 127). For the reasons set forth below, the Court **denies** the motion.

## I.     <u>Background</u>

By their first amended complaint, plaintiffs Martin and Beth Melnick, Lia Louthan, and Summerfield Gardens Condominium ("Summerfield") asserted common-law and statutory claims against TAMKO, under Connecticut, Ohio, and Illinois law, respectively. Ms. Louthan and Summerfield asserted claims for breach of express warranty, breach of implied warranty, strict product liability, negligence, and negligent misrepresentation. All three sets of plaintiffs asserted claims for unjust enrichment and fraudulent nondisclosure or concealment. Plaintiffs also asserted claims under the following statutes: the Melnicks, under the Connecticut Product Liability Act (CPLA) and the Connecticut Unfair Trade Practices Act (CUTPA); Ms. Louthan, under the Ohio Product Liability Act (OPLA) and the Ohio Consumer Sales Protection Act (OCSPA); and Summerfield, under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA). All plaintiffs also sought declaratory judgments and injunctive relief, and they asserted putative class claims.

In its opinion of June 26, the Court dismissed some of those claims. *See id.* The Court dismissed the Melnicks' fraudulent nondisclosure, CPLA, and CUTPA claims, although it granted plaintiffs leave to amend the first two of those claims. The Court dismissed Ms. Louthan's claim of breach of express warranty in part, with leave to amend; her OCSPA claim in part; and her claims of breach of implied warranty of fitness, unjust enrichment, negligent misrepresentation, and fraudulent concealment, with leave to amend the last of those claims. The Court dismissed Summerfield's breach of express warranty, breach of implied warranty, strict liability, negligence, fraudulent concealment, negligent misrepresentation, and ICFA claims with leave to amend all but the warranty claims.

On July 20, 2020, plaintiffs filed a second amended complaint by which they have attempted to cure the pleading deficiencies noted in the Court's prior order. TAMKO argues that those amendments are insufficient, and it therefore seeks dismissal of the amended claims.

## II.     Governing Standard

The Court will dismiss a cause of action for failure to state a claim under Fed. R. Civ. P. 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face," *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), or when an issue of law is dispositive, *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The complaint need not contain detailed factual allegations, but a plaintiff's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See Bell Atlantic*, 550 U.S. at 555. The Court must accept the facts alleged in the complaint as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the plaintiff, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

## III.    The Melnicks' Claims

### A.     *Fraudulent Nondisclosure*

In its prior order, the Court addressed TAMKO's argument that the Melnicks had not stated its fraudulent nondisclosure claim with particularity as required by Fed. R. Civ. P. 9(b). *See Melnick*, 2020 WL 3490363, at *7-8. The Court noted that a duty of disclosure

3

under Connecticut law may arise from incomplete representations and that the Melnicks had sufficiently stated the facts that TAMKO allegedly failed to disclose. *See id.* Nevertheless, the Court concluded that the Melnicks' allegations were not sufficient because, although they generally alleged that TAMKO made misrepresentations, they had not provided any detail or specifically identified any misrepresentations that they would have seen before their purchase of TAMKO shingles. *See id.* at *8. The Court summarized its reasoning as follows: "The Melnicks' claim for nondisclosure turns on what TAMKO did say to plaintiffs, and the Melnicks have not identified any such representations made to them with the necessary particularity (including where and when the representations were made)." *See id.* The Court did, however, grant the Melnicks leave to amend to cure that deficiency. *See id.* TAMKO now seeks dismissal of the Melnicks' amended fraudulent nondisclosure claim under Rule 9(b).

As set forth in plaintiffs' response brief, the Melnicks rely on two sets of representations by TAMKO to support their nondisclosure claim. First, they allege that in 2002, before purchasing the shingles, Mr. Melnick viewed TAMKO's website, which touted the shingles' purported resistance to algae and which described the 50-year warranty, but which did not disclose the product's defects. Second, the Melnicks allege that the "Heritage 50" product's name indicated to them that the shingles would last for 50 years.

TAMKO has not explained how the allegations relating to these representations fall short of the Rule 9(b) standard. Under Tenth Circuit law, satisfaction of that standard requires only that the complaint set forth "the time, place and contents of the false

4

representation, the identity of the party making the false statement and the consequences thereof." *See Melnick*, 2020 WL 3490363, at *7 (quoting *In re Urethane Antitrust Litig.*, 409 F. Supp. 2d 1275, 1284-85 (D. Kan. 2006)).  As the Court noted in its previous order, the rule is applied more liberally to claims of fraud by silence.  *See id.* (quoting *Woolf v. Stewart*, 2011 WL 484192, at *5 (D. Kan. Feb. 7, 2011)).  In addition, Rule 9(b) must be applied to further its purpose "to afford defendant fair notice of plaintiff's claims and the factual ground upon which they are based."  *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (citation and internal quotation omitted).

The Court concludes that the amended allegations are sufficient to satisfy the rule as it applies to the Melnick's fraudulent nondisclosure claim.  The Melnicks have now identified the representations on which they rely for creation of a duty of disclosure here, including the context in which those representations were made.  The allegations are sufficient to give TAMKO fair notice of the Melnicks' claim.  Indeed, the Melnicks have identified a number of specific statements that TAMKO made on its website at that time.

TAMKO argues that the Melnicks have not sufficiently stated plausible misrepresentation claims based on the alleged statements.  Specifically, TAMKO argues that the Melnicks have not alleged facts to support an allegation of a knowingly false representation concerning algae, and that the numeric product label does not constitute a representation concerning the expected duration of the product.  These arguments are not apt, however, as the Melnicks do not seek in this count of the complaint to recover for affirmative misrepresentations.  Rather, the claim is one for fraudulent nondisclosure, and in accordance with the Court's direction, the Melnicks have alleged particular

5

representations to provide necessary context for the alleged omissions on which the claim is based. Thus, these arguments do not provide a basis for dismissal of this claim, and the motion is denied as it relates to the claim.

### B. *CPLA – Statute of Repose*

In its previous order, the Court dismissed the Melnicks' CPLA claim as barred by the act's ten-year statute of repose, Conn. Gen. Stat. § 52-577a(a). *See Melnick*, 2020 WL 3490363, at *5-6. The Court rejected the Melnicks' arguments under three exceptions to the statute of repose, although it granted the Melnicks leave to amend with respect to the first and third exceptions. *See id.* The Melnicks did amend and reassert their CPLA claim, but TAMKO argues that the amendments are insufficient to cure the pleading deficiencies cited by the Court.

Under the first exception, the ten-year limitation does not apply if the plaintiff proves that "the harm occurred during the useful safe life of the product." *See id.* at *5 (citing Conn. Gen. Stat. § 52-577a(c)). In rejecting the Melnicks' invocation of this exception in its prior order, the Court noted that they had relied solely on the 50-year duration of the warranty. *See id.* at *5. The Court ruled that the warranty length said nothing about the product's expected duration, and that, although this issue usually presents a question of fact, no facts had been alleged to give rise to any reasonable inference concerning the useful safe life of the product. *See id.* at *6.

After amendment, the Melnicks now rely on the allegation that the shingles they purchased had an expected duration of 25 to 30 years, based on a study and an article. TAMKO argues that the cited study and article make clear that the actual life expectancy

of a shingle depends on various factors, none of which the Melnicks have addressed in their complaint. The Melnicks are not required to prove the applicability of the exception at the pleading stage, however. They have cited facts to support their invocation of the useful-safe-life exception, and it is not implausible that this exception may be satisfied here. Accordingly, the Court rejects TAMKO's argument for dismissal of the Melnicks' claim based on this exception to the statute of repose.

For the third exception, the CLPA provides that the ten-year statute of repose does not preclude an action against a product seller who intentionally misrepresents a product or fraudulently conceals information about it. *See id.* at *6 (citing Conn. Gen. Stat. § 52-577a(d)). In arguing the prior motion, the parties merely referred the Court to their arguments concerning the Melnicks' fraudulent nondisclosure claim, and because the latter claim was deemed insufficiently pleaded, the Court held that the Melnicks had not alleged facts to satisfy this exception. *See Melnick*, 2020 WL 3490363, at *6.

In support of its present motion, TAMKO again relies on its arguments for dismissal of the fraudulent nondisclosure claim. The Court has rejected those arguments. Accordingly, the Court concludes that the Melnicks have sufficiently alleged fraudulent concealment for purposes of the third exception to the CPLA statute of repose. TAMKO's motion to dismiss the CPLA claim under the statute of repose is denied.

### IV.     Ms. Louthan's Claims

#### A.     *Fraudulent Concealment*

In its prior order, the Court dismissed Ms. Louthan's fraudulent concealment claim because she had not pleaded that claim with particularity as required by Rule 9(b).  *See Melnick*, 2020 WL 3490363, at *24.  The Court ruled as follows:

> Ms. Louthan cites her allegations of affirmative representations by TAMKO, including statements in marketing materials concerning compliance with industry standards.  Ms. Louthan has not identified any such representation with sufficient particularity, however.  To the extent that Ms. Louthan bases her fraud claim on any particular representation (whether alleged to be false or misleadingly incomplete), she must in her pleading identify who made the statement, when and where it was made, and how it was false or misleading, and she has not done so for any particular representation.  Ms. Louthan has specifically alleged that she relied on the representation in a brochure that the shingles would last for 30 years, but she has not described that brochure or indicated where or when she saw it.  Accordingly, TAMKO's motion is granted with respect to this claim.  Ms. Louthan is granted leave to amend her complaint to attempt to allege sufficient facts to support a claim for fraudulent concealment.

*See id.* (citation omitted).  TAMKO now argues that the new allegations in the second amended complaint do not cure this pleading deficiency.

According to the latest complaint, the brochure is again the only TAMKO document on which Ms. Louthan allegedly relied in purchasing TAMKO's shingles, and Ms. Louthan does not dispute that her fraudulent concealment claim is now based solely on TAMKO's failure to disclose in that brochure that its shingles were defective.  Ms. Louthan did amend to add allegations concerning that brochure.  She now alleges that in late Summer 2004, before installation of the shingles, her roofer brought the brochure to her home; that the brochure showed different colors and time lengths for the shingles; that she purchased the

8

"Heritage 30" shingles "because, based on [TAMKO's] representations, the singles would last for 30 years and she would not have to replace the shingles for a long time;" that the brochure did not disclose that the shingles were defective; and that the shingles did not last 30 years and have failed.

TAMKO argues that although Ms. Louthan has now "arguably" identified when and where she saw the brochure, these allegations do not satisfy Rule 9(b) because Ms. Louthan has still not adequately described the brochure. TAMKO further argues that such vagueness is "troubling" in light of the fact that plaintiffs' complaint more specifically identifies two other brochures from that time period, neither of which Ms. Louthan claims to have seen, and neither of which contains any representation concerning the expected duration of the shingles.

The Court denies TAMKO's motion to dismiss this claim on this basis. As noted above, Rule 9(b) must be applied to further its purpose to afford the defendant fair notice of the plaintiff's claims, *see Koch v. Koch Indus., Inc.*, 203 F.3d at 1236, and the Court concludes that Ms. Louthan's allegations are sufficient to provide fair notice to TAMKO. As TAMKO effectively concedes, Ms. Louthan has now provided the where and when for TAMKO's brochure. It is clear from the allegations how the brochure was allegedly false or misleading – it failed to disclose the defective nature of the shingles, and it falsely indicated that the shingles would last 30 years. TAMKO appears to argue that Ms. Louthan should have described the brochure in great detail, but the Tenth Circuit requires only that a complaint alleging fraud set forth the time, place, and contents of the false representation, the identity of the party making the false statement, and the consequences thereof. *See*

*Melnick*, 2020 WL 3490363, at *7. Ms. Louthan has done just that with respect to the brochure. Moreover, as the Court pointed out in its previous order, Rule 9(b) is applied more liberally to claims of fraud by omission. *See id.* Finally, plaintiffs' allegations concerning the other two brochures, reliance on which Ms. Louthan has disclaimed for purposes of the fraudulent concealment claim, are not relevant to Ms. Louthan's compliance with Rule 9(b) with respect to a different brochure.

### B. *Breach of Express Warranty*

In ruling in its prior order on TAMKO's motion to dismiss Ms. Louthan's claim for breach of express warranty, the Court noted that Ms. Louthan had not alleged an express warranty in any TAMKO marketing material other than the statements in the brochure on which she relied in purchasing her shingles. *See id.* at *21. The Court proceeded to deny the motion as it related to warranties contained in the product's limited warranty and in the brochure, but it granted the motion to the extent that the claim was based on any other express warranty. *See id.*

By its present motion, TAMKO seeks reconsideration of the Court's previous denial with respect to an express warranty claim based on the brochure. TAMKO argues that Ms. Louthan's allegations concerning the brochure, even as amended, are simply too vague. The Court denies this motion for reconsideration. Ms. Louthan is not required to plead her warranty claim with particularity. She has identified representations in the brochure (that the shingles would last 30 years and would not need to be replaced for a long time), and those allegations provide TAMKO with fair notice of her claim for purposes of satisfying

the notice pleading standard of Fed. R. Civ. P. 8. Again, the fact that the contents of other brochures are alleged with more detail in the complaint is irrelevant.

Accordingly, TAMKO's present motion is denied in its entirety with respect to Ms. Louthan's claims.

### V. Summerfield's Claims

In its prior order, the Court dismissed Summerfield's strict liability and negligence claims as barred by the economic loss doctrine (ELD) as recognized under Illinois law. *See Melnick*, 2020 WL 3490363, at \*13-15. The Court rejected Summerfield's arguments under all three exceptions to the ELD, but it allowed Summerfield to amend to attempt to satisfy the particularity requirement of Fed. R. Civ. P. 9(b) with respect to the exception for damages proximately caused by a fraudulent representation. *See id.* The Court also dismissed Summerfield's fraudulent concealment claim because Summerfield had not alleged facts giving rise to a duty of disclosure, but it granted leave to amend to allege facts, with sufficient particularity under Rule 9(b), supporting a duty arising from affirmative representations by TAMKO. *See id.* at \*16-17. Finally, the Court dismissed Summerfield's ICFA claim, but it granted Summerfield leave to amend to satisfy Rule 9(b) with respect to a claim based on one alleged statement by TAMKO (the "bad batch" statement). *See id.* at \*17-19. In all three cases, Summerfield had attempted to rely on (1) the "bad batch" statement, and (2) representations by TAMKO in its promotional materials.

*A.   The "Bad Batch" Statement*

In its prior complaint, Summerfield alleged that TAMKO, in response to Summerfield's 2014 warranty claim for shingles on one half of one building, stated that those shingles were part of a "bad batch", which caused Summerfield to believe that other shingles were not defective.  The Court found that allegation insufficient to satisfy the ELD's fraud exception, as follows:  "Summerfield has not alleged, however, who made that statement, how the statement was delivered (orally?  in a document?), or when it was made."  *See id.* at *14.  The Court further ruled that to state a proper claim under the ICFA based on the "bad batch" statement, Summerfield must allege the who, how, when, and contents of the statement; and the consequences of the statement, "which means in this case that it must allege how the statement in 2014 caused it to suffer particular damage in light of its allegation that it had all of the roofs inspected in 2015."  *See id.* at *19.

With respect to this representation, Summerfield now alleges as follows:  Summerfield discovered deteriorated shingles on one building in April 2014; it promptly made a warranty claim; in responding to that claim, a TAMKO warranty representative told Summerfield's board president that those shingles were part of a bad batch; that that statement caused Summerfield to believe that the problem was isolated to the deteriorated shingles on one building and that other shingles were not defective; and that some of its other roofs quickly began to fail, causing damage in another building.

TAMKO argues that these allegations are still not sufficient, but the Court disagrees.  TAMKO argues that Summerfield has not alleged the required who, when, and how because it has not stated the name of the speaker, given the exact date, or specified whether the statement was made orally or in a document.  Summerfield has, however, identified the

speaker as TAMKO's warranty representative who responded to Summerfield's claim; it has provided a relatively specific time frame in alleging that the statement was made when TAMKO responded to Summerfield's warranty claim, which was made promptly after the deterioration was discovered in April 2014; and it has alleged that the speaker "told" Summerfield's president, which suggest an oral statement. Those details are sufficient to give TAMKO fair notice of the claims against it, as Summerfield has placed the alleged statement in the context of a particular occasion, and additional details may be easily obtained in discovery. *See, e.g.*, *Swimwear Solution, Inc. v. Orlando Bathing Suit, LLC*, 309 F. Supp. 3d 1022, 1047 & n.150 (D. Kan. 2018) (precise date is not necessarily required to satisfy Rule 9(b); allegations referring to a relatively short, definite time frame were sufficient to give the defendant notice of the misconduct alleged).

The Court is also satisfied, at this pleading stage, with Summerfield's theory of causation. Summerfield has alleged that TAMKO's representation gave it assurances that its other shingles were not defective, and that it suffered damage to another building shortly thereafter. The Court cannot say that such a theory is implausible as a matter of law on the face of the complaint. Summerfield will eventually need to support its theory with evidence from which a jury could find in its favor, but it is not required to prove that theory at this stage.

Finally, the Court rejects TAMKO's argument that Summerfield has not alleged that the "bad batch" statement was made with the requisite intent. As Summerfield notes, it has alleged that TAMKO had knowledge at the time of the statement that its shingles were defective, and thus under any reasonable interpretation the complaint alleges that

13

TAMKO's statement in contradiction of that knowledge was made with necessary intent. Accordingly, the Court concludes that Summerfield's allegations concerning the "bad batch" statement are sufficient to satisfy Rule 9(b)'s particularity requirement, and that Summerfield may therefore rely on that statement for purposes of the ELD fraud exception and its fraudulent concealment and ICFA claims.

### B.   *Other Alleged Misrepresentations*

As noted above, on all three issues on which Summerfield was permitted to amend – ELD fraud exception, fraudulent concealment claim, ICFA claim – Summerfield had relied in its briefs on both the "bad batch" statement and on other alleged representations by TAMKO (on its website and in marketing materials). With respect to the ELD exception and the fraudulent concealment claim, the Court allowed Summerfield to amend with respect to both sets of representations, and Summerfield has added new allegations concerning both in its latest amended complaint. Nevertheless, in its initial brief in support of its renewed motion to dismiss, TAMKO challenged only the sufficiency of the "bad batch" statement under Rule 9(b). It is response brief, Summerfield addressed the "bad batch" allegations, and it also mentioned its amended allegations concerning other representations in discussing the fraudulent concealment claim.

In its reply brief, TAMKO challenges Summerfield's reliance on marketing representations. For instance, it argues that its marketing of a shingle with "30" in the name and its own reference to the shingle as a "30-year shingle" should not be deemed to constitute a representation concerning the shingles' expected duration. The Court does not entertain such an argument made for the first time in the reply brief, however. *See U.S.*

*Fire Ins. Co. v. Bunge N. Am., Inc.*, 2008 WL 3077074, at *9 n.7 (D. Kan. Aug. 4, 2008) (Lungstrum, J.) (citing *Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003)).

TAMKO also argues in its reply brief that Summerfield has not alleged that in purchasing the shingles it relied on any other representations by TAMKO in its marketing materials. TAMKO contends that the Court demanded such an allegation in its prior ruling on Summerfield's fraudulent concealment claim, in which it noted that "Summerfield has not alleged the representations on which it relies with particularity as required by Rule 9(b)." *See Melnick*, 2020 WL 3490363, at *17. TAMKO has misunderstood, however, as the Court was referring to the representations on which Summerfield was relying *in arguing in support of its claims*. As is made clear by the use of "relies" (present tense) instead of "relied" (past tense), the Court was *not* referring to representations on which Summerfield relied *in purchasing the shingles*. The Court did not demand in its prior ruling that Summerfield plead its reliance with particularity. Moreover, in its initial brief in support of the instant motion, TAMKO did not challenge the other representations as they relate to Summerfield's claim, and, again, the Court will not consider TAMKO's argument made for the first time in its reply brief.

Accordingly, the Court rejects TAMKO's challenges to Summerfield's allegations in the second amended complaint, and Summerfield remains free to rely on both the alleged "bad batch" statement and other alleged representations in support of its ELD argument and its fraudulent concealment claim. The Court denies the instant motion in its entirety as it relates to Summerfield's claims.

15

IT IS THEREFORE ORDERED BY THE COURT THAT defendant's partial motion to dismiss the second amended complaint (Doc. # 127) is hereby **denied**.

IT IS SO ORDERED.

Dated this 16th day of September, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge
