IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARTIN and BETH MELNICK, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 19-2630-JWL-KGG |
| TAMKO BUILDING PRODUCTS, INC., | ) ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM & ORDER ON MOTION TO COMPEL**

Now before the Court is Plaintiffs' "Motion to Compel." (Doc. 232.) Having reviewed the submissions of the parties, Plaintiffs' motion is **GRANTED in part** and **DENIED in part** as more fully set forth herein.

**BACKGROUND**

In this putative class action, three sets of Plaintiffs have brought the present lawsuit against Defendant alleging that roofing shingles designed, manufactured, and sold nationwide by Defendant were defective. (*See generally* Doc. 124.) Defendant's motion to strike Plaintiffs' nationwide class allegations was rejected by Judge Nunley in the Eastern District of California before the case was transferred to the District of Kansas. (Doc. 87.) The Court notes, however, that Judge Nunley stated that "the parties stated Defendant's sales occurred

1

'throughout' the country, but have not determined how many states are implicated in the nationwide class, or which states beyond the four Plaintiffs' home states." (*Id.*, at 5.) The deadline for Plaintiffs to file a motion to certify the class is currently set for September 30, 2022. (Doc. 229.)

With the present motion, Plaintiffs move for an Order compelling Defendant to produce all documents responsive to Plaintiffs' Second Requests for Production of Documents Nos. 8, 38-43, 45 and 46, and provide supplemental responses to Plaintiffs' First Interrogatories to Defendant Nos. 3, 12, 13, 14, and 15. Request No. 8 seeks documents "sufficient to show which TAMKO's plants and lines produced Heritage Shingles for what geographic areas of the United States at all times during the Relevant Time Period." (Doc. 233-17, at 11.) Requests Nos. 38-43 relate to warranty claims and complaints on the Heritage Shingles. Request No. 45 asks for documents "sufficient to show TAMKO's gross revenue and net profits from sales of each Heritage Shingles product during the Relevant Time Period." (*Id.*, at 32.) Request No. 46 asks for documents "sufficient to show the quantity of each Heritage Shingles product sold by year, including a breakdown of such sales by state and by consumer." (*Id*, at 33.)

Interrogatory No. 3 asks Defendant to "[i]dentify each and every test that TAMKO used or uses to evaluate its Heritage Shingles pursuant to ASTM D3462, including for tear strength, and TAMKO's current or former officers, directors and

2

employees who were or are responsible for such testing, and the dates of such responsibility." (Doc. 233-18, at 7.) Interrogatory No. 12 seeks the identity of "all distributors, wholesalers, retailers and installers" who contacted Defendant regarding the quality of the shingles, including the dates of such communications. (*Id*., at 25.) Interrogatory No. 13 asks for the identities of the individuals responsible for handling "warranty claims and other complaints" on the shingles on behalf of Defendant. (*Id*., at 25.) Interrogatory No. 14 instructs Defendant to state its "revenue per year during the Relevant Time Period from the sale of Heritage Shingles, broken down by specific Shingle product." (*Id*., at 26.) Interrogatory No. 15 asks "the volume of each Heritage Shingle product sold by [Defendant] per year during the Relevant Time Period, including a breakdown of such sales by state." (*Id*., at 27.)

## ANALYSIS

**I.     Standards for Discovery.**

Fed.R.Civ.P. 26(b) states that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at state in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this

>scope of discovery need not be admissible in evidence to be discoverable.

Fed.R.Civ.P. 26(b)(1). As such, the requested information must be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. **Holick v. Burkhart**, No.16-1188-JTM-KGG, 2018 WL 372440, at *2 (D. Kan. Jan. 11, 2018).

Discovery requests must be relevant on their face. **Williams v. Board of Co. Comm'rs**, 192 F.R.D. 698, 705 (D. Kan. 2000). Relevance is to be "broadly construed at the discovery stage of the litigation and a request for discovery should be considered relevant if there is any possibility the information sought may be relevant to the subject matter of the action." **Smith v. MCI Telecomm. Corp.**, 137 F.R.D. 25, 27 (D. Kan. 1991).

Once this low burden of relevance has been established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request. *See* **Swackhammer v. Sprint Corp. PCS**, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections). Thus, "the objecting party must specifically show in its response to the motion to compel, despite the broad and liberal construction afforded by the federal discovery rules, how each request for

production or interrogatory is objectionable." ***Sonnino v. University of Kansas Hosp. Authority***, 221 F.R.D. 661, 670–71 (D. Kan. 2004).

"Unless a request is overly broad, irrelevant, or unduly burdensome on its face, the party asserting the objection has the duty to support its objections." ***Funk v. Pinnacle Health Facilities XXIII, LP***, No. 17-1099-JTM-KGG, 2018 WL 6042762, at *3 (D. Kan. Nov. 19, 2918) (quoting ***Hammond v. Lowe's Home Ctrs., Inc.***, 216 F.R.D. 666, 670 (D. Kan. 2003)).  Further, once the "low burden of relevance is established, the legal burden regarding the defense of a motion to compel resides with the party opposing the discovery request." ***Waters v. Union Pac. RR. Co.***, No. 15-1287-EFM-KGG, 2016 WL 3405173, at *1 (D. Kan. June 21, 2016) (citing ***Swackhammer v. Sprint Corp. PCS***, 225 F.R.D. 658, 661, 662, 666 (D. Kan. 2004) (stating that the party resisting a discovery request based on overbreadth, vagueness, ambiguity, or undue burden/expense objections bears the burden to support the objections)).  Within this framework, the Court will address the discovery requests at issue.

**II.    Discovery at Issue.**

    **A.    Arbitration Clause.**

As an initial matter, Defendant argues that "any post-2015 nationwide discovery would be doubly irrelevant in light of the post-2004 Heritage shingles arbitration clause." (Doc. 238, at 12.)  What Defendant refers to as the "mandatory

5

arbitration clause" was included on the wrapper of every package of Heritage shingles sold since late 2004. (*Id.*) Plaintiffs do not deny the existence of the clause on the wrapper, but point out state courts – including those in Oklahoma and Missouri – that have found the arbitration clause at issue to be unenforceable. (Doc. 241, at 9 (citing ***Williams v. TAMKO Bldg. Prod., Inc.***, 451 P.3d 146, 149 (Okla. 2019), *cert. denied*, 140 S. Ct. 2740, 206 L. Ed. 2d 918 (2020) and ***Hobbs v. TAMKO Bldg. Prod., Inc.***, 479 S.W.3d 147, 151 (Mo. Ct. App. 2015).)

As a threshold issue, Defendant has not established that the homeowners at issue herein had actual knowledge of the arbitration clause necessary to establish consent to be bound by it. See ***American Fam. Mut. Ins. Co. v. Tamko Bldg. Prod., Inc.***, 178 F.Supp.3d 1121, 1125-26 (D. Colo. 2016) (holding "[w]hether the parties agreed to arbitrate 'is a threshold matter'" governed by state law) (citing ***Avendon Eng'g, Inc. v. Seatex***, 126 F.3d 1279, 1287 (10th Cir. 1997). Pursuant to Kansas law, the "a binding contract requires a 'meeting of the minds on all essential elements.'" ***Braden v. Optum RX, Inc.***, No. 21-2046-TC-GEB, 2021 WL 5299402 (D.Kan. Nov. 15, 2021) (citing ***U.S.D. No. 446 v. Sandoval***, 295 Kan. 278, 282, 286 P.3d 542, 546 (2012)). Defendant has failed to establish this. As such, further analysis of this issue is in this ruling is unwarranted. Defendant may raise this substantive issue by appropriate motion to the Court. Defendant's objection is **overruled**.

B.     **Nationwide Discovery.**

Plaintiffs first argue that Defendant "has refused to produce nationwide (i.) warranty claim and product complaint information, and (ii.) sales and distribution information." (Doc. 233, at 10.) They argue that this information is relevant to Plaintiffs' claims in this nationwide class action.

Defendant responds that nationwide warranty claim files or sales data after 2015 because "there is virtually no chance a nationwide class would be certified in this case" and "any putative class members who purchased their shingles after 2004 would be excluded from the class pursuant to a binding arbitration clause that has been upheld by multiple courts." (Doc. 238, at 5.) Defendant points out that District Judge Lungstrum previously held in this case that the law of each Plaintiff's home state governs while identifying "a number of material differences among those state laws" that Defendant asserts would preclude nationwide certification. (*Id.*, at 10; *see* Doc. 120.[1])

Defendant also contends any minimal relevance of such information is outweighed by the undue burden. (Doc. 238, at 5.) Defendant provides a witness declaration estimating that the process of compiling this information could incur up to $100,000 in legal fees while reviewing the information thereafter could incur an

---

[1] ***Melnick v. TAMKO Bldg. Prods., Inc.***, 469 F. Supp. 3d 1082, 1093 n.2, 1100, 1103-05, 1108, 1115, 116-17 (D. Kan. 2020).)

additional $600,000 or more. (*Id.*, at 11 (citing Doc. 238-1 (Declaration of Hewett) and Doc. 238-2 (Declaration of Bernardo)).) Plaintiffs reply that Defendant "has failed to demonstrate any real burden in producing the requested nationwide sales and distribution information." (Doc. 241, at 6.)

Defendant's argument that nationwide discovery should be denied because Plaintiffs' class will likely fail to be certified is both circular and illogical. The discovery is needed to determine the existence of evidence to support the nation-wide class claim. Further, the operative Scheduling Order in this case specifically provides for an "initial period of discovery [which] shall include all discovery necessary to resolve the motion to certify the class and all discovery relevant to the claims of the named plaintiffs." (Doc. 229, at 2.) This discovery period continues through August 31, 2022. (*Id.*)

Federal Rule of Civil Procedure 1 states, in relevant part, that the Rules of Civil Procedure "should be construed, administered, and employed by the court and parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Measured under the tenants of Rule 1, nation-wide discovery is relevant to Plaintiffs' class claims. While it may indeed be burdensome, it is not unduly so nor is it disproportionate to the needs of the case.

To honor the principles of Fed.R.Civ.P. 1, discovery at this stage should prioritize evidence needed for Plaintiffs' motion to certify the class. Discovery

8

relating to damages and other evidence relevant to the merits stage of the case may be deferred to minimize potentially unnecessary expense and burden. The Court thus generally **overrules** Defendant's objection(s) to nationwide discovery that relates directly to class certification. The Court, however, **sustains** Defendant's objection(s) to nationwide discovery relating to damages and other issues relevant to the merits stage of these proceedings. Within this context, the Court will address the specific discovery requests at issue.

    **C.**    **Requests for Production at Issue.**

        **1.**    **Request No. 8.**

Request No. 8 seeks documents "sufficient to show which TAMKO's plants and lines produced Heritage Shingles for what geographic areas of the United States at all times during the Relevant Time Period." (Doc. 233-17, at 11.) Defendant objected that the request was overly broad unduly burdensome, and sought irrelevant information by seeking documents "relating to geographic areas of the United States beyond those relevant to plaintiffs' claims." (*Id*.) Defendant agreed to provide documents reflecting relevant information for shingles shipped to Connecticut, Illinois, and Ohio. Such shingles were shipped from plants in Joplin, MO, Frederick, MD, Dallas, TX, Phillipsburg, KS, and Tuscaloosa, AL "during at least portions of the alleged class period." (*Id*.)

This nation-wide information would arguably provide evidence relevant to Plaintiffs' attempt to certify the class. The information provided by Defendant is insufficient and Defendant's objections are **overruled**. Plaintiff's motion is, thus, **GRANTED** as to Request No. 8.

### 2. Requests Nos. 38-43.

Requests Nos. 38-43 relate to warranty claims and complaints on the Heritage Shingles. RFP No. 38 asks for all documents relating to written and oral complaints Defendant received regarding the shingles. (*Id*., at 29.) Request No. 39 seeks "[a]ll warranty claims [Defendant] has received concerning Heritage Shingles, and all documents and communications related to such warranty claims." (*Id*.) Request No. 40 asks for communications regarding complaints or warranty claims concerning the shingles and Defendant's "notes or logs of such communications." (*Id*., at 30.) Request No. 41 asks for documents and communications "concerning damage to homes and structures on which Heritage Shingles are or were installed." (*Id*.) Request No. 42 seeks production of Defendant's "warranty claim and complaint database(s) for Heritage Shingles." (*Id*., at 31.) Request No. 43 asks for documentation regarding "any and all tests, studies, analyses, inspections or investigations that [Defendant] or anyone on [its] behalf performed on Heritage Shingles or properties that were the subject of warranty claims or other complaints." (*Id*., at 31-32.)

10

This nation-wide information would arguably provide evidence relevant to Plaintiffs' attempt to certify the class.  Defendant's objections are **overruled**.  Plaintiff's motion is, thus, **GRANTED** as to Requests Nos. 38-43.

### 3. Request No. 45.

This document request seeks documents "sufficient to show [Defendant's] gross revenue and net profits from sales of each Heritage Shingles product during the Relevant Time Period." (*Id*., at 32.)  Defendant raised similar objections as to Request No. 8, discussed *supra*, and again refused to provide nationwide information, instead limiting its response to Connecticut, Illinois, and Ohio. (*Id*., at 33.)

As discussed above, discovery at this stage should prioritize evidence needed for Plaintiffs' motion to certify the class.  The Court thus **DENIES without prejudice** Plaintiffs' motion regarding Request No. 45 and the attempt to discover nation-wide evidence on Defendant's gross revenue and net profits from sales of the shingles at issue. (*Id*., at 32-33.)  Plaintiff may renew discovery on this subject after the District Court's ruling on the class certification motion.

### 4. Request No. 46.

Request No. 46 asks for documents "sufficient to show the quantity of each Heritage Shingles product sold by year, including a breakdown of such sales by state and by consumer." (*Id*, at 33.)  Defendant raised similar objections as to

11

Request No. 8, discussed *supra*, and again refused to provide nationwide information, instead limiting its response to Connecticut, Illinois, and Ohio. (*Id.*, at 33-34.)

This nation-wide information would arguably provide evidence relevant to Plaintiffs' attempt to certify the class. The information provided by Defendant is insufficient and Defendant's objections are **overruled**. Plaintiff's motion is, thus, **GRANTED** as to Request No. 46.

### D. Sufficiency of Responses to Interrogatories 3, 12-15.

#### 1. Interrogatory No. 3.

Interrogatory No. 3 asks Defendant to "[i]dentify each and every test that TAMKO used or uses to evaluate its Heritage Shingles pursuant to ASTM D3462, including for tear strength, and TAMKO's current or former officers, directors and employees who were or are responsible for such testing, and the dates of such responsibility." (Doc. 233-18, at 7.) Defendant objects that the Interrogatory is overly broad, unduly burdensome, and seeks irrelevant information as it asks for the identification of "each and every test" Defendant used to evaluate the shingles and "all individuals who have had some responsibility for such testing over an approximately 20-year period." (*Id.*) Defendant did, however, provide an extensive, narrative response to the Interrogatory.

Plaintiffs argue that while Defendant's Second Amended Response to Interrogatory No. 3 provides certain testing information, "it still does not list who is and was responsible for the testing and when." (Doc. 233, at 14.) According to Plaintiffs, Defendants response "only references two unhelpful organizational charts – neither of which mention testing, and one which is undated and does not even contain any names of individuals – and identifies one 'individual with knowledge regarding the subject matter of this Interrogatory.'" (*Id.* (citing Doc. 2338-18, at 11.) Plaintiffs contend this identifying information is necessary in order to determine who to depose regarding Defendant's testing of its Heritage Shingles. (*Id.*)

Defendant responds that at any given time, "[d]ozens of people are involved in some way in different types of testing … ." (Doc. 238, at 14.) Because the interrogatory seeks this information for more than 20 years, Defendant argues that the response demanded by Plaintiffs would result in a list of hundreds of names. (*Id.*, at 14-15.) Defendant argues that it "has produced materials regarding its testing programs, and plaintiffs can identify the individuals involved from the testing documents" Defendant previously produced. (*Id.*, at 15 (citing Fed.R.Civ.P. 33(d).) Further, given Plaintiffs' stated reason (to determine who to depose), Defendant refers to the "one 'individual with [personal] knowledge'" of product testing identified in its response and invites Plaintiffs to depose that witness. (*Id.*)

13

Plaintiffs reply that the spreadsheet previously produced by Defendant references over 150,000 documents. (Doc. 241, at 11.) This clearly is not within the spirit of Fed.R.Civ.P. 33.

The information sought is facially relevant and Defendant has not established its irrelevance. While it may be burdensome for Defendant to compile a list of such individuals over a 20 year period, Defendant has also failed to establish that the burden would be undue or disproportionate to the needs of the case. Defendant's objections are **overruled** and Plaintiff's motion is **GRANTED** as to Interrogatory No. 3.

### 2. Interrogatory No. 12.

Interrogatory No. 12 seeks the identity of "all distributors, wholesalers, retailers and installers" who contacted Defendant "regarding the quality of the Heritage Shingles, including the dates of such communications." (Doc. 233-18, at 25.) Plaintiffs argue that the information is relevant to their claims "concerning the breadth of the problems with Heritage Shingles." (Doc. 233, at 14.) According to Plaintiffs, this discovery would allow them to investigate relevant third party information regarding defects in Heritage Shingles. (*Id*.)

Defendant objects that Interrogatory No. 12 is overly broad, unduly burdensome, and seeks irrelevant information as it asks for identification of "all distributors, wholesalers, retailers and installers" who have contacted Defendant

14

regarding the quality of the over a 30-year period.  (Doc. 233-18, at 25.) Defendant then identified various responsive documentation produced.  (*Id.*)

Plaintiffs contend that Defendant's response has "left [Plaintiffs] with a list of over 150,000 documents – mainly non-responsive individual warranty claim files – to review in order to uncover the information sought by Interrogatory No. 12."  (Doc. 233, at 14.)  Defense counsel argues that they explained during the meet-and-confer process that Defendant produced the information "in a fully searchable and sortable format, which permits plaintiffs to identify the information they believe to be of interest."  (Doc. 238, at 15.)  Defendant continues that "to the extent plaintiffs prefer a list of names and dates rather than underlying documents, they are as capable as [Defendant] of constructing one from the records provided. (*Id.* (citing Fed. R. Civ. P. 33(d)).)  Plaintiffs reply that "instructing [t]hem to look through a haystack of 150,000 for a few needles is not within the spirit of Rule 33(d)."  (Doc. 241, at 12.)

This interrogatory is both vague and overly broad as it seeks information "regarding the quality of" the shingles at issue.  Defendant's objections are **sustained** and the Court **DENIES** Plaintiff's motion as to Interrogatory No. 12.

    3.    **Interrogatory No. 13.**

Interrogatory No. 13 asks for the identities of the individuals responsible for handling "warranty claims and other complaints" on the shingles on behalf of

Defendant. (Doc. 233-18, at 25.) Plaintiffs contend that they need this information "so that they can determine which individuals to depose concerning [Defendant's] handling of warranty claims and other customer complaints." (Doc. 233, at 15.)

Defendant objects that the Interrogatory is overly broad, unduly burdensome, and seeks irrelevant information as it asks for the identification of such individuals over a 20-year period. (*Id*., at 26.) Defendant then identified various responsive documentation produced and identified David Richins as "an individual with knowledge regarding the subject matter of this Interrogatory." (*Id*.)

In its brief in opposition, Defendant argues that if Plaintiffs are seeking the identity of every employee of Defendant "over a 20-year period who had some involvement in 'handling' warranty claims (which could include intake, evaluation, testing and inspection, and response, among other activities), that information can be located in the warranty claim files (including the sortable and searchable data referenced above)" that Defendant previously produced. (Doc. 238, at 16.)

Plaintiffs contend that Defendant's response "does not provide the requested list of individuals and instead requires to comb through an enormous set of documents" to do so. (Doc. 233, at 15.) Plaintiffs estimate more than 150,000 such documents. (*Id*., at 14.) Defendant scoffs at Plaintiffs' objection that Defendant has "provided *too much* information" and asserts that "Plaintiffs are just

16

as able to construct a list of names from the documents provided as is" Defendant. (Doc. 238, at 16 (citing Fed.R.Civ.P. 33(d)).)

The Court finds that Defendant's position is not within the spirit of Fed.R.Civ.P. 33.  Even assuming Plaintiffs are equally able to search and sort the information provided, Defendant would have innate knowledge of the information and individuals identified therein that Plaintiff does not possess.  Given the breadth of the documents involved, Defendant is in a better position to parse what is and is not truly responsive.  Defendant's objections are **overruled** and Plaintiff's motion is **GRANTED** as to Interrogatory No. 13.

### 4. Interrogatories Nos. 14 and 15.

Interrogatory No. 14 instructs Defendant to state its "revenue per year during the Relevant Time Period from the sale of Heritage Shingles, broken down by specific Shingle product."  (Doc. 233-18, at 26.)  Interrogatory No. 15 asks "the volume of each Heritage Shingle product sold by [Defendant] per year during the Relevant Time Period, including a breakdown of such sales by state."  (*Id*., at 27.)

Plaintiff argues that Defendant's responses to these Interrogatories "are inadequate because of [its] refusal to provide certain nationwide discovery."  (Doc. 233, at 15.)  According to Plaintiff,

> [r]emaining missing from [Defendant's] Second Amended Response to Interrogatory No. 14 is nationwide Heritage Shingles sales revenue per year from 2015 to the present.  In response to Interrogatory No. 15,

17

> [Defendant] has only provided sales volumes for Connecticut, Illinois and Ohio – not any other state in the country.

(*Id.*, at 15-16.)

As discussed above, discovery at this stage should prioritize evidence needed for Plaintiffs' motion to certify the class.  The Court thus **DENIES without prejudice** Plaintiffs' motion regarding Interrogatory No. 14 and the attempt to discover nation-wide evidence on "revenue per year during the Relevant Time Period from the sale of Heritage Shingles, broken down by specific Shingle product."  (Doc. 233-18, at 26.)  Plaintiff may renew discovery on this subject after the District Court's ruling on the class certification motion.

Interrogatory No. 15, on the other hand, seeks "the volume of each Heritage Shingle product sold by [Defendant] per year during the Relevant Time Period, including a breakdown of such sales by state."  (Doc. 233-18, at 27.)  This nation-wide information would arguably provide evidence relevant to Plaintiffs' attempt to certify the class.  Plaintiff's motion is, thus, **GRANTED** as to Interrogatory No. 15.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Compel (Doc. 232) is **GRANTED in part** and **DENIED in part** as set forth herein.  Supplemental responses are due within 30 days of the date of this Order.

18

**IT IS SO ORDERED.**

Dated this 1st day of February, 2022, at Wichita, Kansas.

                         /s Kenneth G. Gale
                         KENNETH G. GALE
                         United States Magistrate Judge