## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MARTIN MELNICK, BETH MELNICK, LIA LOUTHAN, and SUMMERFIELD GARDENS CONDOMINIUM, on behalf of themselves and all other similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**TAMKO BUILDING PRODUCTS LLC,**<br><br>**Defendant.** | **Case No. 19-2630-JAR-KGG** |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant TAMKO Building Products LLC's ("TAMKO") Motion to Compel Arbitration (Doc. 252) as to any TAMKO Heritage Shingles purchased by Plaintiff Summerfield Gardens Condominium ("Summerfield Gardens") in 2006 or later. The matter is fully briefed, and the Court is prepared to rule. As described more fully below, the Court grants TAMKO's motion with respect to the shingles installed on Lots 1, 2, 4, 18, 19, 20, and 21.

## I.     Background

In this putative nationwide class action, named Plaintiffs assert claims against Defendant TAMKO alleging that roofing shingles manufactured by TAMKO were defective. The case was originally filed in the Eastern District of California, and it was subsequently transferred to the District of Kansas on October 15, 2019, by stipulation of the parties. Prior to transfer,

TAMKO's motion to strike the nationwide class allegations was rejected by the California district court.[1]

Plaintiffs filed their Second Amended Class Action Complaint on July 20, 2020, which defined the class as: "All individuals and entities that own or have owned TAMKO Heritage shingles, or that own or have owned homes, residences, buildings or other structures located in the United States, on which TAMKO Heritage shingles are or were installed."[2] Judge John W. Lungstrum denied TAMKO's partial motion to dismiss the Complaint on September 16, 2020, and class certification discovery commenced.[3] The case was reassigned to the undersigned on February 17, 2022.[4]

Named Plaintiff Summerfield Gardens is a condominium association that owns twenty duplex buildings located in Godfrey, Illinois. The two units in each duplex share a roof, which is owned and maintained by the condominium association. Construction of the Summerfield Gardens buildings took place between 2003 and 2007. Nineteen of the twenty Summerfield Gardens buildings were roofed during construction with TAMKO Heritage Shingles.

Summerfield Gardens alleges that the Heritage Shingles have prematurely failed by cracking, degranulating, curling, and coming loose, which has caused water to leak into several of the homes and other additional damage. It seeks money damages both for the cost of replacing the Heritage Shingles and for harm to the underlying buildings. Based on these allegations, Summerfield Gardens asserts nine claims: strict liability (design defect); strict liability (manufacturing defect); strict liability (failure to warn); negligence; negligent failure to

---

[1] Doc. 87.

[2] Doc. 126.

[3] Docs. 137, 144.

[4] Doc. 251.

warn; unjust enrichment; fraudulent concealment; negligent misrepresentation; and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.[5]  Summerfield Gardens also seeks a declaratory judgment and injunctive relief.[6]

TAMKO is a limited liability corporation with its principal place of business in Galena, Kansas.  TAMKO manufactures Heritage asphalt roofing in Missouri, Kansas, Texas, Alabama, and Maryland, and has sold TAMKO Heritage shingles in every state in the United States except Hawaii and Alaska.

### The Arbitration Clause

TAMKO added arbitration language to packages of the Heritage Shingles in December 2004, and every package of shingles manufactured since that date has been wrapped with a 30-year Limited Warranty that contained some version of that arbitration language.  In 2005, 2006, and 2007, each package contained a large-print bold box at the center of each wrapping, which read "IMPORTANT, READ CAREFULLY BEFORE OPENING BUNDLE."[7]  Beneath this text was printed the following:

> In this paragraph "You" and "Your" refer to the installer of the shingles and the owner of the building on which these shingles will be installed.  This is a legally binding agreement between You and TAMKO Building Products, Inc. ("TAMKO").  By opening this Bundle, You agree: (a) to the terms and conditions of the limited warranty in effect for these shingles, including the agreement to arbitrate any and all disputes between you and TAMKO; . . . .[8]

To the left of the box was a "**MANDATORY BINDING ARBITRATION**" paragraph (the "Arbitration Clause").  It stated, in relevant part:

---

[5] Doc. 126 ¶¶ 148–221, 247–264.

[6] *Id.* ¶¶ 265–274.

[7] Docs. 253-8, 253-9, 253-10.

[8] *Id.*

> EVERY CLAIM, CONTROVERSY, OR DISPUTE OF ANY
> KIND WHATSOEVER INCLUDING WHETHER ANY
> PARTICULAR MATTER IS SUBJECT TO ARBITRATION
> (EACH AN "ACTION") BETWEEN YOU AND TAMKO
> (INCLUDING ANY OF TAMKO'S EMPLOYEES AND
> AGENTS) RELATING TO OR ARISING OUT OF THE
> SHINGLES OR THIS LIMITED WARRANTY SHALL BE
> RESOLVED BY FINAL AND BINDING ARBITRATION,
> REGARDLESS OF WHETHER THE ACTION SOUNDS IN
> WARRANTY, CONTRACT, STATUTE OR ANY OTHER
> LEGAL OR EQUITABLE THEORY.  TO ARBITRATE
> AGAINST TAMKO, YOU MUST INITIATE THE
> ARBITRATION IN ACCORDANCE WITH THE APPLICABLE
> RULES OF ARBITRATION OF THE AMERICAN
> ARBITRATION ASSOCIATION (WHICH ARE AVAILABLE
> ONLINE AT WWW.ADR.COM OR BY CALLING . . . 1-800-
> 778-7879) AND PROVIDE WRITTEN NOTICE TO TAMKO BY
> CERTIFIED MAIL . . . WITHIN THE TIME PERIOD
> PRESCRIBED IMMEDIATELY BELOW.[9]

Below the Arbitration Clause was a "Legal Remedies" paragraph, which stated, in relevant part:

> EXCEPT WHERE PROHIBITED BY LAW, THE OBLIGATION
> CONTAINED IN THIS LIMITED WARRANTY IS EXPRESSLY
> IN LIEU OF ANY OTHER OBLIGATIONS , GUARANTEES,
> WARRANTIES, AND CONDITIONS EXPRESS OR IMPLIED,
> INCLUDING ANY IMPLIED WARRANTY OR CONDITION
> OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR
> PURPOSE, AND ANY OTHER OBLIGATIONS OR LIABILITY
> ON THE PART OF TAMKO . . . .[10]

### The Lawsuit and Subsequent Discovery

Summerfield Gardens alleges in both its First and Second Amended Complaints that construction on its buildings began in 2003.  The sole warranty claim that it submitted to TAMKO, for a single purchase of shingles used at a single unit, was for shingles sold in March 2004—before any arbitration clause was added to the packaging.  Although the shingles

---

[9] *Id.*

[10] *Id.*

4

themselves are stamped with the approximate date of manufacture, Summerfield Gardens did not save any samples of the allegedly defective shingles after replacing them in 2015 or thereafter.

However, in November 2020 interrogatory responses, Summerfield Gardens disclosed the approximate dates of installation for each duplex on which Heritage Shingles were installed, and included the following table, in relevant part:

| January 2006 | 1700/1702 Meyer Court |
|---|---|
| February 2006 | 1701/1703 Meyer Court |
| March 2007 | 1705/1707 Meyer Court |
| September 2006 | 1709/1711 Meyer Court |
| June 2006 | 4912/4914 Castlegate Lane |
| May 2007 | 5000/5002 Castlegate Lane |
| February 2006 | 5008/5010 Castlegate Lane[11] |

Lots 1, 2, 4, 18, 19, 20, and 21 correspond to the above addresses.[12]

The interrogatory responses did not indicate when the shingles used during any of these installations or repairs were manufactured or purchased, but Summerfield Gardens indirectly provided information during its January 2021 document production.[13]  That production included invoices submitted to Emmons & Wickenhauser ("E & W"), the developer of Summerfield Gardens, which included shingle purchases by E & W from two supplier lumberyards.  These receipts indicate that the Heritage Shingles for these seven duplexes were purchased and shipped

---

[11] Doc. 253-12 at 6–7.

[12] *See* Docs. 253-1 through 253-6.

[13] Doc. 253-13.

to Summerfield Gardens in June 2006, May 2007, February 2006, January 2006, November 2006, March 2007, and September 2006, respectively.  David Fischer, of Fischer Lumber Co., the retailer that sold the shingles to E & W, testified that he generally sold Natural Timber TAMKO shingles within one or two months of purchasing them from a distributor, and the shingles sold to E & W for use at Lots 1, 2, 19, 20, and 21 in 2006 and 2007 were thus more likely than not manufactured after 2004.[14]  He was not able to identify when he received the shingles used for Lot 18, and was not asked about the shingles for Lot 4, but those shingles were sold to Summerfield Gardens on January 16 and February 14, 2006, respectively.

Fischer also testified that Fischer Lumber ultimately stopped purchasing Heritage Shingles and switched to GAF shingles because the company "[g]ot tired of dealing with the complaints" consumers made to Fischer Lumber about the shingles "on and off through the early 2000s."[15]  Similarly, Bob Emmons, the "E" in E & W, testified that the company stopped using Heritage Shingles in 2006, except for the Summerfield Gardens project, where it continued to use the shingles for consistency.[16]  Emmons said E & W started having trouble with the shingles and his business has "never gone back to TAMKO."[17]

## II.    Legal Standard

While the interpretation of contracts—including arbitration agreements—is generally a matter of state law, the Federal Arbitration Act ("FAA") imposes certain rules beyond those

---

[14] Doc. 253-15 at 43:11–18.

[15] *Id.* at 86:12–87:1, 88:8–9.

[16] Doc. 253-14 at 86:11–19, 91:8–16.

[17] *Id.* at 86:6–87:6, 91:8–17.

normally found in state law.[18]  The FAA applies to written arbitration agreements in any contract "evidencing a transaction involving commerce."[19]  By enacting the FAA, Congress declared "a liberal federal policy favoring arbitration agreements."[20]  That policy "'is merely an acknowledgment of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts.'"[21]  Under the FAA, a court should compel arbitration if it finds that (1) a valid arbitration agreement exists between the parties, and (2) the dispute before it falls within the scope of the agreement.[22]

"If a contract contains an arbitration clause, a presumption of arbitrability arises, particularly if the clause in question contains . . . broad and sweeping language."[23]  However, the presumption of arbitrability disappears when the parties dispute whether there is a valid and enforceable arbitration agreement in the first place.[24]  Whether a party agreed to arbitration is a contract issue, which means that arbitration clauses are only valid if the parties intended to arbitrate.[25]  No party can be compelled to submit a dispute to arbitration without having

---

[18] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629–30 (2009) and *Perry v. Thomas*, 482 U.S. 483, 493, n.9 (1987)); then citing *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[19] 9 U.S.C. § 2; *see Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004).

[20] *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

[21] *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)).

[22] 9 U.S.C. §§ 2–3.

[23] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995); *see also Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014).

[24] *Bellman*, 563 F. App'x at 613 (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998)).

[25] *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (citing *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

previously agreed to so submit.[26]  Courts apply state-law principles in deciding whether parties

agreed to arbitrate.[27]  The Supreme Court has confirmed that "generally applicable contract

defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration

agreements without contravening [the FAA]."[28]

When a party moves to compel arbitration and the opposing party disputes the validity of

the arbitration agreement, "the court uses a burden-shifting framework similar to that used in

deciding summary judgment motions."[29]  "Under this well-settled standard, summary judgment

is appropriate if the moving party demonstrates there is 'no genuine issue as to any material fact'

and that it is 'entitled to judgment as a matter of law.'"[30]  In the context of a motion to compel

arbitration, this standard requires the moving party to establish the existence of an arbitration

agreement by the preponderance of the evidence.[31]

If met, the burden then shifts to the non-movant to identify specific evidence

demonstrating a material disputed issue as to the existence of the agreement.[32]  "To demonstrate

a genuine issue of material fact as to the making of the agreement to arbitrate, the facts 'must be

identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated

---

[26] *Id.*

[27] *Id.* (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

[28] *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

[29] *Rangel v. Hallmark Cards, Inc.*, No. 10-4003-SAC, 2010 WL 781722, at *4 (D. Kan. Mar. 4, 2010).

[30] *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing Fed. R. Civ. P. 56(c)).

[31] *See Mohammed v. Uber Techs., Inc.*, No. 16 C 2537, 2018 WL 1184733, at *6 (N.D. Ill. Mar. 7, 2018) (granting motion to compel arbitration where defendants established, by a preponderance of the evidence, elements of a contract and arbitration provision contained therein); *Cwick v. First Stop Health*, LLC, No. 12 C 6238, 2016 WL 1407708, at *4 (N.D. Ill. Apr. 10, 2016) (granting motion to compel arbitration where defendant "has shown by a preponderance of the evidence that [plaintiff's] claims must be determined via the arbitration provision").

[32] *SmartText Corp.*, 296 F. Supp. 2d at 1263 (citations omitted); s*ee Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (explaining "[t]he party opposing arbitration must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract").

therein.'"[33]  If the non-movant demonstrates a genuine issue of material fact as to the making of an agreement, then the district court must hold a trial on the existence of an agreement to arbitrate.[34]  "However, '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.'"[35]

## III.    Discussion

TAMKO moves to compel arbitration with respect to shingles installed on Summerfield Gardens Lots 1, 2, 4, 18, 19, 20, and 21, which it contends were purchased by E & W in January 2006 or later.  TAMKO argues that under principles of contract law, the Arbitration Clause placed on packages of Heritage Shingles is valid and accepted when Summerfield Gardens, or an agent acting on its behalf, purchased the shingles and unwrapped them.  It further argues that because the Arbitration Clause expressly delegates the decision to the arbitrator, the arbitrator should determine the scope of the arbitration agreement; alternatively, it argues that the broad scope of the Arbitration Clause makes clear that Summerfield Gardens' claims are covered by the clause.  And finally, it disputes Summerfield Gardens' argument that it waived its right to compel arbitration.  The Court addresses these issues in turn.

### A.    Is there a valid and enforceable agreement to arbitrate?

The parties agree that Illinois law applies to deciding whether the parties agreed to arbitrate because Illinois is where the last act necessary to form the contract occurred, in this case

---

[33] *Rangel*, 2010 WL 781722, at *4 (quoting *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000)).

[34] *SmartText*, 296 F. Supp. 2d at 1262 (citing 9 U.S.C. § 4, which provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof."); *see also Klocek v. Gateway, Inc.*, 104 F. Supp. 2d 1332, 1336 (D. Kan. 2000) ("If the parties dispute making an arbitration agreement, a jury trial on the existence of an agreement is warranted if the record reveals genuine issues of material fact regarding the parties' agreement.") (citing *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997)).

[35] *Rangel*, 2010 WL 781722, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (internal quotation mark omitted).

purchase.[36]  "In Illinois, an offer, an acceptance, and consideration are the basic ingredients of a contract."[37]  "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it."[38]  "To accept an offer, a party must objectively manifest intent to be bound to the contract's terms."[39]  "Consideration is 'a bargained-for exchange, whereby the promisor . . . receives some benefit, or the promisee . . . suffers detriment.'"[40]

Summerfield Gardens argues that an essential element of TAMKO's claim is lacking here because: 1) the Heritage Shingles purchased for Summerfield Gardens in 2006 and 2007 by E & W could have been manufactured before December 2004; and 2) it did not assent to the Arbitration Clause because there is no evidence that it knew of or agreed to the clause.

### 1.    Did the shingles packaging contain the Arbitration Clause?

Summerfield Gardens argues that TAMKO has failed to show that the Heritage Shingles on the seven condominiums at issue were manufactured after TAMKO started including the arbitration provision on packaging in late 2004.  It notes that Fischer admitted that Fischer Lumber has no way of tracking a bundle of shingles from the time it comes in from a distributor to the time it goes out to a customer and takes issue with Fisher's testimony that shingles for

---

[36] Under choice-of-law rules of both Kansas and California, the law of the state of purchase generally governs in disputes of this type.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593–94 (9th Cir. 2012) (under California choice-of-law principles, the place of "the last event[] necessary for any liability" "has the predominant interest") (citation omitted), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 31 F.4th 651 (9th Cir. 2022); *Griffin v. Sec. Pac. Auto Fin. Servs. Corp.*, 25 F. Supp. 2d 1214, 1216 (D. Kan. 1998) ("location in which the last event necessary to impose liability occurred" "controls").

[37] *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006) (citation omitted).

[38] *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (internal quotation marks and citations omitted) (applying Illinois law).

[39] *Mohammed v. Uber Techs., Inc.*, No. 16 C 2537, 2018 WL 1184733, at *6 (N.D. Ill. Mar. 7, 2018) (citing *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) (applying Illinois law)).

[40] *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 866 (7th Cir. 2013) (quoting *Vassilkovska v. Woodfield Nissan, Inc.*, 830 N.E.2d 619, 624 (Ill. App. Ct. 2005)).

specific lots were more likely than not sold after 2004.  But Summerfield Gardens makes no attempt to offer evidence and merely speculates that the shingles installed in 2006 were received by Fischer Lumber from the distributer nearly two years before it sold them to E & W.  This is not sufficient to raise a genuine issue of fact under the relevant standard.

Here, it is undisputed that Heritage Shingles manufactured after 2004 were packaged with an Arbitration Clause.  Although E & W stopped using TAMKO shingles, it continued to use the Heritage Shingles for the Summerfield Gardens project for consistency, after TAMKO started adding the Arbitration Clause to its packaging in late 2004.  TAMKO presented testimony from Fischer that Fischer Lumber generally sold TAMKO shingles within one or two months after purchasing them from a distributor, and the Heritage Shingles sold to E & W in 2006 and 2007 were thus more likely than not manufactured after 2004.  This evidence is consistent with the showing TAMKO must make under the preponderance-of-the-evidence standard.[41]

Thus, the burden shifts to Summerfield Gardens to identify specific evidence demonstrating a material disputed issue as to the existence of an arbitration agreement. Summerfield Gardens has made no attempt to do so, presenting only argument and no contrary testimony or evidence.  It does not dispute Fischer's testimony that shingles purchased in 2006 and 2007 were likely manufactured after 2004, but merely speculates that the Heritage Shingles purchased for E & W could have been manufactured before December 2004.  Accordingly, the

---

[41] *See Mohammed*, 2018 WL 1184733, at *6 (granting motion to compel arbitration where defendants established, by a preponderance of the evidence, elements of a contract and arbitration provision contained therein); *Cwick v. First Stop Health*, LLC, No. 12 C 6238, 2016 WL 1407708, at *4 (N.D. Ill. Apr. 10, 2016) (granting motion to compel arbitration where defendant "has shown by a preponderance of the evidence that [plaintiff's] claims must be determined via the arbitration provision").

Court can infer that the shingle packages sold in 2006 and 2007 contained the Arbitration Clause.[42]

### 2.    Did an agent or subagent agree to the Arbitration Clause?

Next, Summerfield Gardens argues that even if it purchased shingles with the Arbitration Clause on the package, it is not enforceable because there is no evidence that it knew of or agreed to arbitration.  It argues that there is no evidence that either it or E & W ever saw, read, or received TAMKO's Arbitration Clause contemporaneously with the installation of the shingles and, under this scenario, the alleged assent to the Arbitration Clause is too attenuated to bind it.

Several state courts have considered the enforceability of TAMKO's specific Arbitration Clause.  Summerfield Gardens relies primarily on a decision by the Missouri state appellate court, which concluded that the plaintiffs' claims were not arbitrable because they had not personally seen or were aware of the Limited Warranty on the shingles packaging.[43]  While factually similar, the result of this decision appears to be based on the particular requirements of Missouri law.[44]  Nor is the Court persuaded by *Williams v. TAMKO Building Products, Inc.*, where the Oklahoma Supreme Court refused to enforce TAMKO's Arbitration Clause under principles of Oklahoma agency law because "[t]he Oklahoma Constitution preserves the right to trial by jury."[45]

---

[42] *See Hanckock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1265–67 (10th Cir. 2012) (upholding district court's grant of motion to compel arbitration where plaintiff did not provide sworn testimony or any other evidence disputing routine practice by which customers were provided arbitration agreement during installation of AT & T services and plaintiffs "failed to raise a genuine dispute regarding acceptance of the U-verse terms at the point of installation"), *abrogated on other grounds by Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 49 (2013); *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (holding that party opposing arbitration "cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial").

[43] *See Hobbs v. TAMKO Bldg. Prods., Inc.*, 479 S.W.3d 147, 149 (Mo. App. 2015).

[44] *Id.* at 150 (collecting cases).

[45] 451 P.3d 146, 152 (Okla. 2019), *cert. denied*, 140 S. Ct. 2740 (2020).

Instead, the Court finds persuasive the decisions of other federal courts applying principles of agency law similar to that of Illinois, which have found TAMKO's Arbitration Clause valid and enforceable.[46]  Two of these courts have expressly rejected the Missouri state court decision.[47]

For example, the District of Colorado recently considered similar circumstances in applying agency rules to compel an insurance company to arbitrate claims where its insureds' subagent actually opened the bundles of TAMKO Heritage Shingles.  In *American Family Insurance Co. v. TAMKO Building Products, Inc.*, the court explained that a "general contractor . . . became the insureds' special agent" and "[b]y delegating its duty to install the shingles . . . created a subagency" under Colorado law.[48]  Because of the subagency relationship, "whether the insureds themselves actually consented to the arbitration clause [was] irrelevant."[49]  The court found that, by opening the bundles of shingles affixed with wrappers that "specifically and conspicuously provided that opening the package would constitute acceptance of the terms of the limited Warranty, including the arbitration clause," the subagent "created a contract implied in fact."[50]  The court also found that "the fact that the insureds were 'two steps removed' from [the

---

[46] *See Dye v. TAMKO Bldg. Prods., Inc.*, 908 F.3d 675 (11th Cir. 2018) (applying Florida law); *Am. Fam. Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121 (D. Colo. 2016) (applying Colorado law); *Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F. Supp. 3d 584 (M.D.N.C. 2014) (applying North Carolina law); *Hoekman v. TAMKO Bldg. Prods., Inc.*, No. 2:14-cv-01581-TLN-KJN, 2015 WL 9591471 (E.D. Cal. Aug. 26, 2015) (applying California law); *Overlook Terraces, Ltd. v. TAMKO Bldg. Prods., Inc.*, No. 3:14CV-241-CRS, 2015 WL 13746723 (W.D. Ky. May 21, 2015) (applying Kentucky law).

[47] *See Dye v. TAMKO Bldg. Prods., Inc.*, 275 F. Supp. 3d 1314, 1320 (M.D. Fla. 2017) ("The [c]ourt finds the analysis in [Hobbs] unpersuasive" because "[w]hether or not the [p]laintiff actually read the warranty is irrelevant") (citation omitted), *aff'd*, 908 F.3d 675 (2018); *Am. Fam.*, 178 F. Supp. 3d at 1126 n.5 ("I find the analysis of the decision superficial and thus simply unpersuasive.").

[48] 178 F. Supp. 3d 1121, 1126 (D. Colo. 2016).

[49] *Id.*

[50] *Id.*

subcontractor did] not convince the court that there was undue surprise," noting that the insureds chose the particular Heritage Shingles that were installed.[51]

The same result applies here.  In Illinois, competent adults are bound by contracts containing an arbitration clause, "read or unread."[52]  But the Court agrees that whether Summerfield Gardens knew of or read the Arbitration Clause is not the issue; rather, the relevant question is whether a party acting on Summerfield Gardens' behalf would have had the opportunity to review the Arbitration Clause or could have "chosen to do so."[53]  This is so because under Illinois law, a party is bound to an agreement entered either on its own accord or on its behalf by an agent with actual or apparent authority.[54]  And a "subagent has the same power to bind the principal as does the agent."[55]

The language on the packaging at issue stated that the purchaser of the shingles was entering into a contract that was binding on the owner of the property on which they were to be installed, as well as on the purchaser itself.  Further, it referred to "a legally binding agreement between You and TAMKO" with "You" defined to mean "the installer of the shingles and the owner of the building on which these shingles will be installed."[56]

It is undisputed that developer E & W, which Summerfield Gardens refers to as its agent, purchased the shingles and then hired the roofer Fred Seymour and Sons ("Seymour"), to install

---

[51] *Id.* at 1127–28 (citing *Hoekman*, 2015 WL 9591471, at *6).

[52] *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147, 1149 (7th Cir. 1997) (Illinois law); *see, e.g.*, *Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 882 N.E.2d 157, 164 (Ill. App. Ct. 2008) (binding party to arbitration clause despite her claim that she "never saw" it).

[53] *Tortoriello*, 882 N.E.2d at 176.

[54] *See R.O.W. Window Co. v. Allmetal, Inc.*, 856 N.E.2d 55, 60–61 (Ill. App. Ct. 2006).

[55] *Roscoe Co. v. Lewis Univ.*, 398 N.E.2d 1083, 1085 (Ill. App. Ct. 1979) (citing Restatement (Second) Agency § 142 cmt. b).

[56] Docs. 253-8, 253-9, 253-10.

them.[57]  E & W, who had otherwise stopped using TAMKO shingles in 2006, chose the Heritage

Shingles for consistency.  According to Summerfield Gardens, Fischer Lumber "boomed" the

shingles directly up to the roof when it delivered them.  The shingles were then unwrapped and

installed by Seymour on all lots but Lot 21, which was installed by a different roofing company.

By delegating the installation of the shingles to Seymour, E & W created a subagency.  Thus,

Seymour, as Summerfield Gardens' subagent, had a full opportunity to review the limited

warranty, including the Arbitration Clause, when opening the package.  By purchasing the

packages of shingles and having them delivered to its subcontractors to open, E & W at the very

least represented itself as capable of binding the "owner of the building[s]."  Further, the "steps

of removal," from Fred Seymour to E & W to Summerfield Gardens, is more direct than the one

at issue in *American Family*, which ran from subcontractor to general contractor to insured

homeowner to insurer as subrogee.[58]

Accordingly, the Court concludes that the Arbitration Clause is valid and enforceable.

The Court thus turns to the question of whether the claims raised in this lawsuit are within the

scope of that agreement.

### B.      Should Arbitrator determine the scope of the Arbitration Clause?

The Arbitration Clause requires arbitration of "EVERY CLAIM, CONTROVERSY, OR

DISPUTE OF ANY KIND WHATSOEVER INCLUDING WHETHER ANY PARTICULAR

---

[57] In addition, by operation of the Illinois Condominium Property Act, developer E & W stands in the shoes of board managers and functions as the condominium association until the first board is elected and the condominium association is bound by contracts entered into by a developer prior to the election of the initial board. *See Glickman v. Teglia*, 902 N.E.2d 1256, 1260–62 (Ill. App. Ct. 2009).  TAMKO asserts that control was not handed over to an owner-elected board until August 2007, after most, if not all, of the shingles at issue were purchased.

[58] *See Am. Family Ins. Co. v. TAMKO Bldg. Prods., Inc.*, 178 F. Supp. 3d 1121, 1127 (D. Colo. 2016).

MATTER IS SUBJECTED TO ARBITRATION."[59]  It also provides that arbitration will be conducted according to the rules of the American Arbitration Association ("AAA").  These rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court."[60]  This Court and other courts in this District have held that the incorporation of the AAA rules provides "clear and unmistakable evidence" that the parties intended to delegate questions of arbitrability to the arbitrator.[61]  Additionally, the circuit courts to consider the issue have held that the incorporation of the AAA Commercial Arbitration rules—which contain language nearly identical to Rule 14(a) of the AAA Consumer Arbitration rules— in an arbitration clause constitutes "clear and unmistakable evidence" that the parties agreed to arbitrate questions of arbitrability.[62]  Accordingly, the Court finds that the arbitrator must decide matters going to the scope of the Arbitration Clause, including determination of whether it encompasses all of Summerfield Gardens' claims.[63]

---

[59] Docs. 253-8, 253-9, 253-10.

[60] Rule 14(a), AAA Consumer Arbitration Rules and Mediation Procedures, https://www.adr.org (last accessed September 19, 2022).

[61] *See, e.g.*, *Hedrick v. BNC Nat'l Bank*, 186 F. Supp. 3d 1189, 1196 (D. Kan. 2016) (collecting cases); *Seahorn v. JC Penney Corp.*, No. 12-CV-2617-CM, 2013 WL 452793, at *1, n.1 (D. Kan. Feb. 6, 2013).

[62] *See, e.g.*, *Agere Sys., Inc. v. Samsung Elec. Ltd.*, 560 F.3d 337, 339–40 (5th Cir. 2009); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11–12 (1st Cir. 2009); *Contec Corp. v. Remote Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005).

[63] Even if it was this Court's role to reach the issue of whether Plaintiff's claims are within the scope of the arbitration agreement, the substantial breadth of TAMKO's Arbitration Clause would compel this Court to resolve any doubt as to the scope of the agreement in favor of arbitration.  *See Hicks v. Cadle Co.*, 355 F. App'x 186, 192 (10th Cir. 2009) (explaining when a contract has a "broad, sweeping arbitration clause," arbitration of all issues will be presumed and it is the opposing party's burden to prove the claims are excluded) (citation omitted); *see also Fiala v. Bickford Senior Living Grp.*, 32 N.E.3d 80, 86 (Ill. App. Ct. 2015) (holding an "arbitration clause [that] is characterized by language providing that all claims arising out of or related to the contract at issue" are subject to arbitration and should be "broadly construed" according to its terms).

### C.      Did TAMKO waive its right compel arbitration?

Finally, Summerfield Gardens argues that TAMKO has known since at least November 2020 that the Heritage Shingles on the seven Summerfield Gardens lots at issue were installed in 2006 or later but did not assert a right to arbitrate until fifteen months later, thus waiving any such right.

"A party asserting a waiver of arbitration has a heavy burden of proof."[64]  The Tenth Circuit "give[s] substantial weight to the 'strong federal policy encouraging the expeditious and inexpensive resolution of disputes through arbitration.'"[65]  Any doubts should be resolved in favor of arbitration.[66]

Although there is no rule as to what constitutes waiver of a contractual right to arbitrate, the Tenth Circuit has articulated the following as factors useful to making this assessment:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties were "well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.[67]

---

[64] *Peterson v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 466 (10th Cir. 1988) (citation omitted).

[65] *Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 775 (10th Cir. 2010) (quoting *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1488 (10th Cir. 1994)) (citation omitted).

[66] *See In re Cox Enters., Inc. Set-top Cable Television Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (applying presumption in favor of arbitration to allegation of waiver).

[67] *Metz*, 39 F.3d at 1489 (quoting *Peterson*, 849 F.2d at 467–68 (alterations in original).

"These factors are not exclusive or exhaustive; nor should courts apply them mechanically."[68]  Instead, they "reflect principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration."[69]  The overarching consideration is "whether the party now seeking arbitration is improperly manipulating the judicial process."[70]  "This may occur when litigation has proceeded too far, so that switching to arbitration would create 'significant inefficiencies' or cause 'prejudice to opposing parties.'"[71]

After weighing the relevant factors, the Court finds that Summerfield Gardens has not met its burden to show waiver.  First, the Court is not persuaded that TAMKO has substantially invoked the "litigation machinery" in this case.[72]  The "critical question is what was happening in this litigation" during the time before the demand for arbitration.[73]  Here, the focus of this putative class action litigation so far has been on striking class allegations, transfer of the case from California to the District of Kansas, TAMKO's unsuccessful partial motion to dismiss, and class certification discovery disputes.  A revised scheduling order has been entered, and initial discovery on class certification must now be completed by January 28, 2023; and the deadline

---

[68] *Termini v. Grp. 1 Auto. Inc.*, No. 19-2196-KHV, 2019 WL 5535249, at *5 (D. Kan. Oct. 25, 2019) (citing *Hill*, 603 F.3d at 773).

[69] *Hill*, 603 F.3d at 773.

[70] *BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1174 (10th Cir. 2017) (quoting *Hill*, 603 F.3d at 773).

[71] *Termini*, 2019 WL 5535249, at *5 (quoting *In re Cox Enters., Inc. Set-top Cable Television Antitrust Litig.*, 835 F.3d 1195, 1205 (10th Cir. 2016)).

[72] *Metz*, 39 F.3d at 1489.

[73] *Hill*, 603 F.3d at 775; *see MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp. Inc.*, 886 F.2d 1249, 1261 (10th Cir. 1989) (finding waiver where party "fully and effectively invoked" litigation machinery by waiting to demand arbitration until after completion of one trial and resolution of post-trial motions); *Strong v. Davidson*, 734 F. App'x 578, 583 (10th Cir. 2018) (finding no waiver when party only "partially invoked" litigation machinery because dispute was at "front end" of litigation and discovery was still open); *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205–08 (4th Cir. 2004) (finding no waiver when parties had not substantially invoked litigation despite exchange of written discovery, including interrogatories and requests for production, participation in court-ordered mediation, and reopening of discovery for another month).

for named Plaintiffs to file a motion to certify the class has been extended to February 28, 2023.[74]  Discovery is not yet complete, and the Court has not yet set a trial date.  Thus, this factor does not support waiver.[75]

Relatedly, the Court finds that TAMKO did not unreasonably delay moving to compel arbitration.  Summerfield Gardens argues that TAMKO should have known no later than January 21, 2021, that the shingles at issue were purchased, delivered, and installed in 2006 and 2007.  But as TAMKO notes, the question is not its knowledge of the purchase, delivery, or installation dates of the shingles installed at Summerfield Gardens; rather, it is its knowledge of the date the shingles were manufactured.  TAMKO's motion to compel arbitration followed within a few weeks of the January 2022 deposition of a representative of one of the retailers that distributed the shingles where it learned that at least some of the shingles were received by his company in 2005 through 2007—after the Arbitration Clause was added to the Heritage Shingles wrapper in 2004.

Further, the Second Amended Complaint continues to assert that construction of the buildings at issue began in 2003, and contains no allegation that any of the shingles were purchased or installed after that year.  And the only warranty claim submitted to TAMKO involved shingles purchased in early 2004.  Although this case has been pending since 2019, courts typically do not find waiver unless the trial date is imminently approaching, even if a delay of several months has passed between filing suit and demanding arbitration.[76]  That is clearly not the case here.

---

[74] Doc. 265.

[75] *See Hill*, 603 F.3d at 775–76 (finding "very little" had happened in litigation when trial date was eleven months away, discovery was open for another five months, and parties had exchanged Rule 26 disclosures).

[76] *See, e.g., BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1175 (10th Cir. 2017) (finding no waiver for three-month delay when no trial date near); *Patten Grading*, 380 F.3d at 203, 205 (finding no waiver for eight-month delay and only four-month delay after party learned of arbitration agreement through discovery); *cf. Peterson*

Finally, Summerfield Gardens has not shown that a delay affected, misled, or prejudiced it. Prejudice is described as "inherent unfairness—in terms of delay, expense, or damage to a party's legal position."[77] Mere inconvenience is not sufficient; the proponent of waiver must show "how [it] would be *significantly* prejudiced because arbitration would create an 'inherently' unfair delay, expense, or damage to [its] legal position."[78] Here, Summerfield Gardens has not explained how it would suffer any prejudice, much less the significant prejudice required to support waiver. TAMKO does not contend that all of Summerfield Gardens' claims are arbitrable, only those that stem from shingles manufactured after 2004. In addition, Summerfield Gardens does not suggest any time estimates for any alleged delay caused by arbitration. Nor does it argue that any of the discovery conducted in this case is irrelevant to the non-arbitrable claims, or that TAMKO conducted discovery to benefit its position in arbitration.

Thus, Summerfield Gardens has not satisfied its heavy burden of demonstrating that TAMKO's conduct foreclosed its right to seek arbitration. On balance, the above factors weigh against waiver, especially in light of the strong federal presumption in favor of enforcing arbitration agreements.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant TAMKO Building Products LLC's Motion to Compel Arbitration (Doc. 252) is GRANTED with respect to Summerfield Gardens' Lots 1, 2, 4, 18, 19, 20, and 21.

---

*v. Shearson/Am. Exp., Inc.*, 849 F.2d 464, 468 (10th Cir. 1988) (finding waiver when arbitration request five weeks prior to scheduled trial date).

[77] *In re Cox Enters., Inc. Set-top Cable Television Antitrust Litig.*, 835 F.3d 1195, 1208–09 (10th Cir. 2016) (internal quotation marks omitted); *see also Strong v. Davidson*, 734 F. App'x 578, 583 (10th Cir. 2018) (finding prejudice where second arbitration would add further delay to case that "dragged on for years," and would require parties to incur over $12,000 in additional fees paid in first arbitration).

[78] *Termini v. Grp. 1 Auto. Inc.*, No. 19-2196-KHV, 2019 WL 5535249, at *7 (D. Kan. Oct. 25, 2019) (first citing *Hill*, 603 F.3d at 775; and then citing *Cox*, 835 F.3d at 1208–09).

**IT IS FURTHER ORDERED** that the parties shall file a status report no later than March 20, 2023, advising the Court whether the arbitration proceeding is ongoing, and whether a date has been set for the proceeding.

**IT IS SO ORDERED.**

Dated: September 20, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
