IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARTIN MELNICK, BETH MELNICK, LIA LOUTHAN, AND SUMMERFIELD GARDENS CONDOMINIUM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAMKO BUILDING PRODUCTS LLC,[1]<br><br>Defendant. | Case No. 19-CV-2630-JAR-BGS |

## MEMORANDUM AND ORDER

Plaintiffs – a married couple, an individual, and a corporation – assert numerous claims against Defendant TAMKO based on allegations that Defendant's roofing shingles were defective and failed prior to their expected or warrantied service life.  Plaintiffs now seeks class certification (Doc. 300).  The motion is fully briefed.[2]  For the reasons stated in more detail below, the Court denies Plaintiffs' motion.

I.      **Background**

Defendant manufactures asphalt roofing shingles.  Defendant markets its Heritage brand shingles as a premium product.  Two types of its Heritage shingles are branded the Heritage 30 and the Heritage 50.  These shingles are manufactured at five different manufacturing plants in the United States and distributed throughout the lower 48 states.  The shingles have the same basic design and components, but the plants use different product formulas and raw materials.

---

[1] Defendant is listed on the docket sheet as Inc., but it refers to itself as an LLC, and thus the Court will also refer to Defendant as an LLC.

[2] Six other motions are also pending, including Defendant's motion for summary judgment (Doc. 318) and five motions to exclude testimony (Docs. 314, 322, 324, 326, and 330).  The Court will address Defendant's motion for summary judgment in a separate Order.  The motions to exclude will be addressed at a later date.

From 2004 through 2020, Defendant sold over 219 million squares of Heritage 30 shingles and nearly 5 million squares of Heritage 50 shingles.[3]  In 2004 alone, Defendant sold enough Heritage shingles in Connecticut, Ohio, and Illinois to roof approximately 40,000 homes.

Plaintiffs assert that Defendant designed, manufactured, and represented to the marketplace that Heritage shingles met industry standards.  Plaintiffs specifically assert that Heritage shingles do not meet "tear testing" standards set by the American Society for Testing and Materials ("ASTM"), and therefore, the shingles are likely to fail before the end of the warranty period that accompanies the product.  They allege that Defendant has had issues meeting the tear-strength standard since the standard was implemented in 1998 and continues to do so.[4]

Heritage 30 and Heritage 50 shingles came with a 30-year and 50-year limited warranty, respectively.  Owners were required to notify Defendant of any claims under the warranty within 30 days following discovery of the problem.  The warranty could be transferred one time during the first two years.  Some of the shingles included an AR designation, due to the addition of algae-resistant granules, and those shingles also had a ten-year algae cleaning warranty.

Plaintiffs contend that Defendant's naming of the shingles with the number 30 and 50, and the marketing of the respective warranty period, led purchasers to believe that the shingles would last for 30 and 50 years.  In addition, they contend that Defendant's warranty program was obstructive.  Furthermore, Plaintiffs assert that Defendant frequently denied warranty claims.

---

[3] The Court notes that this timeframe is primarily outside the class period of 2000 through 2004, but there is no sales data prior to 2004.

[4] Plaintiffs cite to evidence of Defendant's alleged issues meeting tear-strength standards, but the primary evidence is after 2004.

Consumers of Heritage shingles have made nearly 50,000 warranty claims between 2001 and early 2021.

The four named Plaintiffs in this suit seek to be class representatives.  The first two are Martin and Beth Melnick.  After consulting with a roofer and viewing Defendant's website, they purchased TAMKO Heritage 50 AR shingles for their house in Connecticut in September 2002.  The shingles were manufactured in Defendant's Maryland plant.  Beginning in 2013, the Melnicks began to have problems.  The shingles had grown algae, cracked, and degranulated, and water leaked into the home.  In 2014, they initiated a warranty claim with Defendant that was denied in 2015.  In December 2015, the Melnicks filed suit against Defendant.  The Melnicks no longer own the home as they sold it in 2017.

The Melnicks seek to certify a class on the following claims: (1) a violation of the Connecticut Product Liability Act ("CPLA") (which includes six common law theories of breach of express warranty; breach of implied warranty; strict liability, both design defect and failure to warn; negligence; and negligent misrepresentation); (2) fraudulent nondisclosure/concealment; and (3) unjust enrichment.

The next putative class representative, Ms. Louthan, purchased Heritage 30 shingles after viewing Defendant's brochure and sample shingles.  Ms. Louthan purchased these shingles in Ohio, in 2004, for a home that was in her mother's name.  The shingles were manufactured at Defendant's Maryland plant.  The home was placed in her name in 2010.  Ms. Louthan alleges that she had two water leaks in 2009 and 2012.  In 2015, Ms. Louthan's husband tried to file a warranty claim.  The shingles had cracked, severely degranulated, curled, and come loose.

Ms. Louthan seeks to certify the following claims on behalf of a class: (1) breach of express warranty; (2) strict liability, both design defect and failure to warn; (3) fraudulent concealment; and (4) violation of the Ohio Consumer Sales Protection Act ("OCSPA").

Summerfield Gardens, the third putative class representative, is a condominium complex located in Illinois. It had 19 of its 20 duplexes constructed between the years of 2003 and 2007 with Heritage 30 Shingles.[5] The shingles were manufactured at Defendant's Texas plant. Summerfield Gardens' developer, Emmons & Wickenhauser, purchased all the shingles on those buildings. The developer had already been using Heritage shingles in other projects before the construction of Summerfield Gardens. Summerfield Gardens has not identified any specific representations that the board or the developers relied upon when purchasing the shingles.

The Summerfield Gardens' board filed a warranty claim in 2014 related to one of the duplexes, and one of Defendant's representatives told the board member that the shingles were part of a "bad batch." Defendant sent Summerfield Gardens replacement shingles for that duplex. In 2015, Summerfield Gardens began to experience problems with more of its shingles. The shingles had cracked, severely degranulated, curled, and come loose. Summerfield Gardens replaced the shingles on all its buildings.

Summerfield Gardens seeks to certify a class on the following claims: (1) strict liability, both design defect and failure to warn; (2) unjust enrichment; (3) fraudulent concealment; and (4) negligent misrepresentation.[6]

---

[5] The Court notes that the class period's end date is November 30, 2004. Plaintiffs state that the duplexes were constructed between 2003 and 2007 and that at least seven of the 19 buildings were purchased before December 2004.

[6] Plaintiffs assert 13 different substantive claims (under the laws of three different states) in their Amended Complaint, stating that they assert these claims individually, and on behalf of a class. They do not, however, seek class certification for all these claims in the motion pending before the Court. The Court will only address the claims for which Plaintiffs seek certification.

## II.      Class Certification Standard

Federal Rule of Civil Procedure 23 governs class actions in federal court.[7]  The Court possesses "significant latitude in deciding whether or not to certify a class."[8]  And whether a case should be allowed to proceed as a class action is a fact-based question that is fraught with practical considerations.[9]  Moreover, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule— that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of fact, etc."[10]  The Court must conduct a "rigorous analysis" to ensure that Plaintiffs' putative class meets the requirements for certification.[11]

As the party seeking class certification, Plaintiffs must show "under a strict burden of proof" that their putative class meets the requirements of Rule 23.[12]  Plaintiffs must first satisfy all four prerequisites of Rule 23(a) by showing that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) Plaintiffs' claims or defenses are typical of the claims or defenses of the class, and (4) Plaintiffs will fairly and adequately protect the interests of the class.[13]  These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation.[14]  If the

---

[7] Fed. R. Civ. P. 23.

[8] *Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citing *Shook v. Bd. of Cnty. Comm'rs,* 543 F.3d 597, 603 (10th Cir. 2008)).

[9] *See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988) (citation omitted).

[10] *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1187 (10th Cir. 2023) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

[11] *Id.* (citing *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 913 (10th Cir. 2018)).

[12] *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (quoting *Reed*, 849 F.2d at 1309).

[13] Fed. R. Civ. P. 23(a).

[14] *Sherman*, 84 F.4th at 1187.

requirements of Rule 23(a) are met, Plaintiffs must then show that their case fits within one of the categories described in Rule 23(b).[15]

Plaintiffs seek to proceed under both Rule 23(b)(2) and (b)(3).  Rule 23(b)(2) states that "[a] class action may be maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[16]  The Tenth Circuit interprets this requirement as demanding "a certain cohesiveness among class members with respect to their injuries, the absence of which can preclude certification."[17]

A Rule 23(b)(3) class "requires 'the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"[18]  "These requirements are commonly referred to as predominance and superiority, respectively."[19]

The Court will first discuss Plaintiffs' Rule 23(b)(3) class proposal.  Then it will discuss Plaintiff's Rule 23(b)(2) class proposal.  Finally, it will address Plaintiffs' alternative argument that the Court should certify a class with respect to common issues under Rule 23(c)(4).

---

[15] *See* Fed. R. Civ. P. 23(b).

[16] Fed. R. Civ. P. 23(b)(2).

[17] *Shook v. Bd. of Cnty. Comm'rs,* 543 F.3d 597, 604 (10th Cir. 2008) (citations omitted).

[18] *Sherman*, 84 F.4th at 1187 (quoting Fed. R. Civ. P. 23(b)(3)).

[19] *Id.*

III.    Discussion

A.    Proposed Rule 23(b)(3) Class

Plaintiffs seek to certify the following class under Rule 23(b)(3):

> All individuals and entities that purchased and had installed on homes, residences, buildings or other structures physically located in Connecticut, Ohio and Illinois TAMKO Heritage shingles; or that own homes, residences, buildings or other structures physically located in Connecticut, Ohio and Illinois, on which TAMKO Heritage shingles are or were installed (the "Class"). The Class period is limited to Heritage shingles that were purchased between January 1, 2000 and November 30, 2004 (the "Class Period").  Excluded from the Class are (i) TAMKO and its affiliates, subsidiaries, employees, and current and former officers, directors, agents, and representatives; and (ii) members of this Court and its staff.[20]

The Court notes that it has concerns with Plaintiffs' class definition.  Plaintiffs seek to certify a class that includes individuals and entities, who purchased and installed Defendant's shingles on structures in three different states.  The class also includes individuals or entities who did not purchase or install the shingles but who now own the structures on which the shingles were installed.  In addition, these shingles must have been purchased/installed between 2000 and 2004.  Plaintiffs' class definition is unwieldy and amorphous, and it is unclear how Plaintiffs would identify proposed class members.[21]

---

[20] Doc. 301 at 12.

[21] Defendant argues that Plaintiffs' proposed class definition is not ascertainable because there is no administratively feasible way to identify the class members.  Ascertainability is not an enumerated class certification requirement, and the Tenth Circuit has only addressed the question peripherally.  *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, No. 17-md-2785-DDC-TJJ, 2020 WL 1873989, at *9 (D. Kan. Feb. 27, 2020) (noting that it was "unsettled whether ascertainability [was] a separate and distinct requirement for class certification under Rule 23(b)(3)" but determining that if the Tenth Circuit addressed the question, the Circuit would apply a less restrictive ascertainability test); *but see Martinez v. FedEx Ground Package Sys., Inc.*, No. 20-1052 SCY/LF, 2023 WL 7114678, at *10 (D.N.M. Oct. 27, 2023) (noting that the Tenth Circuit, in unpublished opinions, affirmed the use of the stricter administrative feasibility test for determining whether a class was ascertainable) (citations omitted).  Because Plaintiffs' class definition is so amorphous and unwieldy, to the extent that ascertainability is an issue, Plaintiffs fail to meet this requirement.  *See Gonazalez v. Owens Corning*, 317 F.R.D. 443, 506–07 (W.D. Pa. 2016) (finding that the class was not ascertainable because it was not administratively feasible based on numerous reasons, including "that ownership of the structure will [likely] have changed, making

7

In addition, Plaintiffs state in a footnote that the Court can refine the class definition, and they state that they seek certification of state- and cause-of-action-specific claims.[22]  Yet, other than their footnote, they do not include any further substantive discussion on these points and do not set forth any definitions for their proposed sub-classes or cause-of-action sub-classes in their briefing.  Instead, they simply set forth the different state law applicable to their various causes of action.  The Court recognizes that it could refine the class definition.[23]  However, given the substantial number of claims and numerous complexities of the case, the Court will not do the work for Plaintiffs.  It is Plaintiffs' burden to demonstrate the appropriateness of class certification.[24]  And "[t]he plaintiff is the master of his own class definition."[25]  Accordingly, the Court will not propose class definitions other than the one Plaintiffs proposed that encompasses three states.

The Court will now consider whether Plaintiffs meet each requirement for certification.

---

documentation for roofing projects completed prior to transfer less likely to be available"); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:14-cv-3034-TWT, 2017 WL 2536794 at *4 (N.D. Ga. June 9, 2017) (finding that the plaintiffs could not identify an administratively feasible mechanism for identifying class members when the class definition encompassed homes or structures in Kentucky that had a particular type of shingles installed).

[22] *See* Doc. 301 at 12, n.1.

[23] *See In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, No. 17-2785-DDC-TJJ, 2020 WL 1180550, at *9 (D. Kan. Mar. 10, 2020) (collecting cases).

[24] *See In re Motor Fuel Temperature Sales Pracs Litig.*, 292 F.R.D. 652, 661 (D. Kan. 2013).

[25] *Evans v. Brigham Young Univ.*, No. 22-4050, 2023 WL 3262012, at *6 (10th Cir. 2023) (citation omitted).

## 1.  Rule 23(a) Requirements

### a.  Numerosity

Numerosity requires Plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable."[26]  Here, Plaintiffs assert that Defendant sold enough Heritage shingles in Connecticut, Ohio, and Illinois in 2004 alone to roof approximately 40,000 homes. Based on this figure, the Court finds that Plaintiffs satisfy the numerosity requirement.[27]

### b. Commonality

Commonality requires that "there are questions of law or fact common to the class."[28]  "It is not enough for Plaintiffs to demonstrate common questions apply to the class, rather they must show 'the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'"[29]  "A finding of commonality requires only a single question of law or fact common to the entire class."[30]

Plaintiffs state that there are numerous common questions, including whether the shingles were defective because they were prone to cracking, tearing, excessive degranulation, curling, and/or other deterioration.[31]  Plaintiffs identify at least one common question, and thus the Court finds that Plaintiffs satisfy commonality.[32]

---

[26] Fed. R. Civ. P. 23(a)(1).

[27] Defendant does not contest the numerosity requirement.

[28] Fed. R. Civ. P. 23(a)(2).

[29] *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1192 (10th Cir. 2023) (quoting *Wal-Mart Stores Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

[30] *Id.* (quoting *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018)).

[31] Plaintiffs identify 18 questions in their briefing, but the Court will not set them all forth here.  *See* Doc. 301 at 26.

[32] Defendant also does not contest the commonality requirement.

### c. Typicality

Typicality "requires that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"[33]  Typicality does not require that every class member share an identical factual situation to the named plaintiff.[34]  "Typicality requires only that the claims of the class representative and class members are based on the same legal or remedial theory."[35]  The Third Circuit has noted that "[a] proposed class representative is not 'typical' under Rule 23(a)(3) if the representative is subject to a unique defense that is likely to become a major focus of the litigation.[36]  In addition, this Court has explained:

> There is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.  The presence of actual unique defenses destroy[s] the representatives' typicality because the representatives' defenses are no longer typical of the class.  Also, unique defenses can make a representative inadequate because they are likely to usurp a significant portion of the litigant's time and energy.  If the defendants are successful in raising a unique defense, the entire class is bound by a defense which is ordinarily only applicable to the representative individually.[37]

Here, Defendant contends that Plaintiffs cannot meet the typicality requirement because the named Plaintiffs' claims are subject to unique defenses.  The Court agrees.  For example, the Melnicks seek to represent a class, but they did not disclose during the sale of their house that there were any issues with the shingles or that they were allegedly defective.  This failure to

---

[33] *Sherman*, 84 F.4th at 1193 (quoting Fed. R. Civ. P. 23(a)(3)).

[34] *Id.* (citing *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014)).

[35] *Id.* (quoting *Menocal*, 882 F.3d at 924).

[36] *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012) (quoting *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009)).

[37] *Doll v. Chic. Title Ins. Co.*, 246 F.R.D. 683, 687 (D. Kan. 2007) (quotation omitted).

disclose could impact their claim as to the defectiveness of the shingles. Thus, this unique defense would be a focus in the litigation that could be a danger to the absent class members.

In addition, Ms. Louthan is also subject to the unique defense that the home for which she purchased shingles was not titled in her name, and Defendant contends that the express warranty would not cover her claim. This unique defense would also be a focus in the litigation and could possibly foreclose Ms. Louthan's claim and affect absent class members.

Because resolution of these defenses to the individual Plaintiffs' claims could become a focus in the case, the Court finds that typicality is not met.[38]

### d. Adequacy

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." An adequate class representative "must be part of the class and possess the same interest and suffer the same injury as the class members."[39] "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."[40] The adequacy factor also "factors in competency and conflicts of class counsel."[41] "To defeat class certification, a conflict must be fundamental and go to specific issues in controversy."[42] Class certification will not be defeated by minor conflicts.[43]

The Court first finds that proposed class counsel is competent, and there are no conflicts. Counsel has extensive class-action experience and is fully qualified to represent the proposed

---

[38] To the extent that Plaintiffs' claims could be considered typical, the Court will address the numerous individualized inquiries in the predominance section below.

[39] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997) (quotations and citations omitted).

[40] *Id.* at 625.

[41] *Id.* at 626 n.20 (citations omitted).

[42] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 260 (D. Kan. 2010) (citation omitted).

[43] *Id.* (citation omitted).

class.  Class counsel has vigorously represented the named Plaintiffs in this case for the past nine years,[44] and the Court has no doubt that counsel would continue to do so.  Thus, class counsel meets the adequacy requirement.

The class representatives, however, are not adequate representatives.  As will be discussed below, Plaintiffs assert numerous claims.  Defendant points out that Plaintiffs' claims are subject to unique defenses, and Plaintiffs have conflicts with a large portion of absent class members.  The Court will note some of the potential conflicts below.

As to the Melnicks, they do not currently own the home with the shingles, and they did not disclose to the current owner any issues with the shingles or that they had filed a lawsuit alleging that the shingles were defective when they sold the house.  Yet, the class definition includes the new owner of the home as a member of the class too.  Plaintiffs gloss over these "quibbles" and claim that they are "just a distraction."[45]  Yet, two different class members would be seeking relief for the same shingles.  Plaintiffs contend that it would simply be a damages allocation issue and would not create a conflict that would preclude certification.  However, a fundamental conflict could exist between the current homeowner and the Melnicks should the current homeowner be precluded from recovery due to the Melnicks' failure to acknowledge or disclose the alleged defect in the shingles.

As to Summerfield Gardens, it seeks to represent a class that will assert fraudulent misrepresentation and negligent misrepresentation claims.  Yet, Summerfield Gardens' claims

---

[44] The case has been in the District of Kansas since 2019, and it was previously in the Eastern District of California for four years.

[45] Doc. 361 at 22.

are highly individualized, and it offers only a single oral misrepresentation to prove reliance.[46] Presumably, no other putative class member would have been exposed to the same representation.  Thus, Summerfield Gardens would not be an adequate class representative for these claims.

Finally, Ms. Louthan is also subject to the defense that the home for which she purchased shingles was not titled in her name, and Defendant contends that its express warranty would not cover her claim.  If Ms. Louthan cannot invoke the warranty, she would not be able to adequately represent putative class members with a claim for breach of express warranty.  Accordingly, she would not be an adequate representative.[47]

In sum, the Court finds that Plaintiffs meets the Rule 23(a) requirements for numerosity and commonality.  Plaintiffs, however, do not meet the Rule 23(a) requirements for typicality and adequacy.  Accordingly, they cannot satisfy the Rule 23(a) standard.  Nevertheless, the Court will go on to address the Rule 23(b) requirements as well.

## 2. Rule 23(b)(3) Requirements

### a. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[48]  Predominance requires a plaintiff to demonstrate that "common questions subject to generalized, class[-]wide proof *predominate* over individual

---

[46] Summerfield Gardens does not identify any specific representations that the board or the developers relied upon when purchasing the shingles.  The only specific misrepresentation that is at issue is that Summerfield Gardens received a bad batch of shingles.  This contention is intensely fact-specific.

[47] To the extent that Plaintiffs could be considered adequate class representatives for particular claims, the Court will address the many individualized issues with the claims below.

[48] *Amchem Prods.*, 521 U.S. at 623 (citation omitted).

questions.'"[49]  To determine predominance, "[c]ourts conduct a two-step analysis."[50]  The first step requires the court to characterize the issue as common or individual.[51]

> An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof.[52]

When determining which issues are common or individual, "the court must first 'consider the class's underlying cause[s] of action and determine which elements are amenable to common proof.'"[53]  "The court should '*characterize* the issues in the case as common or not, and then *weigh* which issues predominate.'"[54]  This inquiry often requires the Court to consider the merits of the class members' claims but only to the extent that they are relevant.[55]

### i.  Similar Cases

The Court will discuss throughout this order three similar cases seeking class certification against shingle manufacturers from three different courts.[56]  Although the Court will specifically discuss these cases in the context of analyzing whether Plaintiffs can meet the predominance standard for each of their claims, the Court finds it helpful to set forth a broad overview of each

---

[49] *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 838 (10th Cir. 2023) (quoting *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 789 (10th Cir. 2019)).

[50] *Id.*

[51] *Id.*

[52] *Id.* (quoting *Tyson Foods, Inc., v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

[53] *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1194–95 (10th Cir. 2023) (quoting *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018)).

[54] *Id.* at 1195 (quoting *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014)).

[55] *Id.* (quoting *CGC Holding Co.*, 773 F.3d at 1087).

[56] *Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288 (M.D. Fla. 2017); *Gonzalez v. Owens Corning*, 317 F.R.D. 443 (W.D. Pa. 2016), aff'd by *Gonzalez v. Owens Corning*, 885 F.3d 186 (3d Cir. 2018); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495-TWT, 2017 WL 2536794 (N.D. Ga. June 9, 2017).

of the cases here.  In each case, the court determined that class certification was inappropriate.

In *Hummel v. Tamko Building Products, Inc.*, the plaintiff brought multiple claims under Florida law against the same defendant in this case.[57]  These claims included breach of express warranty, strict liability, negligence theories, and violation of the Florida Deceptive and Unfair Practices Act.[58]  The Middle District of Florida denied the plaintiff's request for class certification finding that the facts of the case would require an individualized inquiry with each claim, and thus the plaintiff could not meet the predominance requirement.[59]

In *Gonzalez v. Owens Corning*,[60] three separate putative class actions (from Illinois, Texas, and California) were consolidated with a putative class action in the Western District of Pennsylvania.[61]  Each case arose from the defendants' "manufacture and sale of allegedly defective [] fiberglass asphalt roofing shingles."[62]  The plaintiffs sought certification on claims for breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, and violation of state consumer protection statutes.[63]  The Western District of Pennsylvania concluded that individualized issues predominated over common issues making class certification inappropriate under Rule 23(b)(3).[64]  In addition, the court determined that class treatment was not a superior method to other forms of adjudication.[65]  Finally, the court

---

[57] *Hummel*, 303 F. Supp. 3d at 1294.

[58] *Id.*

[59] *Id.* at 1297–1300.

[60] 317 F.R.D. 443 (W.D. Pa. 2016).

[61] *Id.* at 450.

[62] *Id.*

[63] *Id.* at 511.  Plaintiffs also brought claims for strict products liability, fraudulent concealment/misrepresentation, negligence, and negligent misrepresentation.  *Id.* at 456, 459, 461, 463 (setting forth a graph of each plaintiff's claims).

[64] *Id.* at 511–24.

[65] *Id.* at 524–25.

found that a Rule 23(b)(2) declaratory class and a Rule 23(c)(4) issue class were not warranted.[66]

The Northern District of Georgia, in *In re Atlas Roofing Corporation Chalet Shingles Products Liability Litigation*, addressed a multi-district class action "arising out of the marketing and sale of allegedly defective roofing shingles."[67]  In that case, the defendant represented that it complied with industry standards and building codes, but the plaintiff alleged that the shingles were defective due to a flaw in the manufacturing process.[68]  The plaintiff sought class certification for the following claims: negligence, negligent misrepresentation, strict products liability, breach of express warranty, breach of implied warranties, fraudulent misrepresentation, fraudulent concealment, and violation of Kentucky's Consumer Protection Act.[69]  The court first found that the plaintiff failed to "demonstrate an administratively feasible mechanism for identifying class members."[70]  The court went on to determine that the plaintiff could not meet the predominance requirement because individual issues predominated over common issues for each claim.[71]  The court also found that a class action was not a superior method to adjudicate the claims.[72]  Finally, the court concluded that an issue class under Rule 23(c)(4) or a declaratory class under Rule 23(b)(2) was inappropriate.[73]

---

[66] *Id.* at 526–29. The Third Circuit affirmed the district court's finding that the plaintiffs could not meet the predominance requirement.  *Gonzalez v. Owens Corning*, 885 F.3d 186, 195–202 (3d Cir. 2018).  In addition, the court found that the district court did not abuse its discretion in denying the plaintiffs' request for issue certification under Rule 23(c)(4).  *Id.* at 202–03.

[67] *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495-TWT, 2017 WL 2536794, at *1 (N.D. Ga. June 9, 2017).

[68] *Id.*

[69] *Id.* at *2.

[70] *Id.* at *4.

[71] *Id.* at *7–12.

[72] *Id.* at *12–13.

[73] *Id.* at *13–15.

### ii.  Claims in this Case

Pursuant to Tenth Circuit case law, the Court must consider Plaintiffs' causes of action to determine whether common issues predominate over individualized issues.[74]  Plaintiffs assert numerous claims under the law of three different states.  Under Connecticut law, the Court considers the following claims: (1) CPLA (with numerous theories including (a) breach of express warranty, (b) breach of implied warranty, (c) strict liability – both design defect and failure to warn, (d) negligence, and (e) negligent misrepresentation); (2) unjust enrichment; and (3) fraudulent concealment/nondisclosure.  The Court must consider Ohio law for the following claims: (1) breach of express warranty, (2) strict liability – both design defect and failure to warn, (3) fraudulent disclosure, and (4) violation of the OCSPA.  And under Illinois law, the Court must consider claims for (1) strict liability – both design defect and failure to warn, (2) unjust enrichment, (3) fraudulent disclosure, and (4) negligent misrepresentation.

Plaintiffs grouped the similar claims together, and thus the Court will do the same.  The Court first notes, however, that it must address an aspect of Connecticut law.  In Connecticut, "[t]he CPLA is the 'exclusive remedy' for—and the only cause of action available to—plaintiffs in Connecticut for product liability claims."[75]  "Even though the CPLA provides for only a single cause of action, a plaintiff may assert various common law theories of liability thereunder."[76] The various theories, or sub-claims, "must sufficiently allege all elements that would be required at common law."[77]  The available theories of liability include: (1) strict liability in tort, (2)

---

[74] *Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1194–95 (10th Cir. 2023) (quoting *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 915 (10th Cir. 2018)).

[75] *Hunte v. Abbott Lab'ies, Inc.*, 556 F. Supp. 3d 70, 82 (D. Conn. 2021).

[76] *Id.* (quoting *Phila. Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-CV-0217, 2019 WL 1258918, at *2 (D. Conn. Mar. 18, 2019)).

[77] *Id.* (quoting *Phila. Indem. Ins. Co.*, 2019 WL 1258918, at *2).

negligence, (3) breach of warranty, express or implied, (4) breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent, and (5) misrepresentation or nondisclosure, whether negligent or innocent."[78]  Thus, all these theories fall under the CPLA, and to determine whether the CPLA claim may go forward as a claim, the Court must conduct inquiries as to the underlying theories.  It will do so below.

### a.  Strict Liability Claims

Plaintiffs assert strict liability claims for design defect and failure to warn under the laws of Connecticut,[79] Ohio, and Illinois.  In Connecticut, all product liability claims "are governed by the same elements."[80]  Specifically, a strict liability product design defect claim requires the plaintiff to establish:

> (1) the defendant was engaged in the business of selling the product; (2) the product was in a defective condition unreasonably dangerous to the consumer or user; (3) the defect caused the injury for which compensation was sought; (4) the defect existed at the time of the sale; and (5) the product was expected to and did reach the consumer without substantial change in condition.[81]

A strict liability failure to warn claim includes the same five product defect elements.[82]  The plaintiff must additionally show "that product instructions or warnings 'were required, and if so, whether they were adequate' . . . [and] that 'if adequate warnings or instructions had been provided, the claimant would not have suffered the harm.'"[83]

---

[78] *Id.* (citing Conn. Gen. Stat. § 52-572m(b)).

[79] This theory falls under the CPLA claim.

[80] *Bifolck v. Philip Morris, Inc.*, 152 A.3d 1183, 1202 (Conn. 2016).

[81] *Id.* (quotation and citations omitted).

[82] *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 432 (D. Conn. 2021) (citing *Karavitis v. Makita U.S.A., Inc.*, 243 F. Supp. 3d 235, 252 (D. Conn. 2017)).

[83] *Id.* (quoting *Karavitis*, 243 F. Supp. 3d at 252–53*; see also Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 97 (D. Conn. 2020).

In Ohio, to prevail on a strict liability design defect claim, "the plaintiffs must prove that (1) a defect existed in the product manufactured and sold by the defendant; (2) the defect existed at the time the product left the defendant's hands; and (3) the defect directly and proximately caused the plaintiff's injury or loss."[84]  For a failure to warn claim, a plaintiff must demonstrate "(1) the manufacturer had a duty to warn; (2) the duty was breached; and (3) the plaintiff's injury proximately resulted from the breach of duty."[85]

In Illinois, a strict liability design defect claim requires the plaintiff to prove: "(1) a condition of the product that results from manufacturing or design; (2) the condition made the product unreasonably dangerous; (3) the condition existed at the time the product left the defendant's control; (4) the plaintiff suffered an injury; and (5) the injury was proximately caused by the condition."[86]  In addition, a strict liability failure to warn claim requires that the plaintiff

> prove that the manufacturer did not disclose an unreasonably dangerous condition or instruct on the proper use of the product as to which the average consumer would not be aware.  The duty to warn arises where the product possesses dangerous tendencies, the manufacturer knows of the non-obvious risks of harm, and knows or should know that harm may occur without instruction or a warning.[87]

Plaintiffs contend that the central elements of their design defect claims may be proven by common evidence because there is a common question of whether a defect existed when the shingles left their respective factories, and whether this defect caused Plaintiffs' damages.  In

---

[84] *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) (citations omitted).

[85] *Id.* (citation omitted); *see also McConnell v. Cosco, Inc.*, 238 F. Supp. 2d 970, 976 (S.D. Ohio 2003) (finding that the same standard applies to "both strict liability and negligence claims for inadequate warning").

[86] *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 109 (Ill. App. Ct. 2010).

[87] *Norabuena v. Medtronic, Inc.*, 86 N.E.3d 1198, 1207 (Ill. App. Ct. 2017) (citation omitted).

addition, they assert that their failure to warn claims survive predominance because Defendant knew of the danger and failed to warn about it.  Defendant argues that Plaintiffs cannot prove a product defect based on common evidence because whether the shingles are defective is an inherently individualized inquiry.  Defendant also asserts that there are individualized questions as to the causation of Plaintiffs' damages which preclude a finding of predominance for both the design defect claim and the failure to warn claim.

Here, Plaintiffs' defect theory is that Defendant's shingles were not designed to meet ASTM D3462's tear-strength requirements and thus were likely to fail prior to the expiration of the warranty period.  Plaintiffs' request for certification involves several different varieties of shingles manufactured over the span of four years at five different plants.[88]  As to whether there is common evidence to the shingles' defectiveness, several other courts have addressed a similar situation.

In *Hummel v. Tamko Building Products, Inc.*,[89] the Middle District of Florida considered whether to certify a class in Florida against the same defendant in this case for allegedly defective shingles.  In that case, the plaintiff alleged that Defendant's heritage shingles manufactured after 2004 suffered from a design defect that caused the shingles to fail "after a fraction of their warrantied life."[90]  With regard to the plaintiff's strict liability claim, the court found that "[d]etermining whether the [s]hingles suffered from a defect will require individualized evidence of which factory the specific [s]hingles were manufactured, what processes were used in manufacturing the [s]hingles, and what equipment and materials were

---

[88] Plaintiffs' class definition includes all types of TAMKO Heritage shingles.  However, the named Plaintiffs' claims only involve two different types of shingles – Heritage 30 and Heritage 50.

[89] 303 F. Supp. 3d 1288 (M.D. Fla. 2017).

[90] *Id.* at 1294.

used."[91]  The court concluded that "[s]uch individualized inquiries are inherently unsuitable for class-wide resolution."[92]

In *Gonzalez v. Owens Corning*,[93] the Western District of Pennsylvania considered whether to certify a four-state class based on allegations of defective roof shingles and misrepresentations on the shingles' expected life.  Although the plaintiffs in that case did not seek certification of their strict liability claim, the court found that "each and every legal cause of action that plaintiffs have elected to pursue on behalf of the proposed four-state class requires proof that [the] shingles were defectively designed."[94]  The court found that the different design specifications, different manufacturing plants, and different raw materials precluded a finding of commonality, and it would be "impossible for plaintiffs to meet their burden to prove a design defect by evidence common to the class."[95]  Accordingly, the court determined that the plaintiffs failed to meet the predominance standard under Rule 23(b)(3).[96]

Here, similarly, Defendant's shingles were produced at five different plants, with different product formulas and raw materials, over the four-year proposed class period.  Plaintiffs attempt to distinguish *Hummel* by asserting that they can prove a common defect regardless of where the shingles were manufactured because the shingles have the same basic design and components.[97]  Plaintiffs also contend that they do not assert that every shingle is identical but

---

[91] *Id.* at 1299.

[92] *Id.*

[93] 317 F.R.D. 443 (W.D. Pa. 2016).

[94] *Id.* at 511 (citations omitted).

[95] *Id.* at 512.

[96] *Id.*

[97] Plaintiffs do not address the Western District of Pennsylvania's decision in *Gonzalez* or the Third Circuit's opinion, *Gonzalez v. Owens Corning*, 885 F.3d 186 (3d Cir. 2018), affirming the district court's decision. In the district court, the plaintiffs also proceeded with a similar theory by alleging that Defendant "engaged in a single course of wrongdoing by manufacturing [] shingles in accordance with design specification that were defective because they made all [] shingles susceptible and vulnerable to having a useful life of no more than 20

instead that the shingles are defective because they were not designed to meet industry standards, *i.e*, ASTM D3462.  Yet, the plaintiff in *Hummel* asserted the same theory that Defendant "warranted that its [s]hingles were compliant with applicable industry standards" and "all suffered from common design defects that caused the shingles to fail after a fraction of their warranties life, causing property damage."[98]  And the *Hummel* court found that the plaintiff was unable to demonstrate common questions because the inquiry into the different factories, manufacturing processes, and equipment involved "individualized inquiries."[99]  Thus, the Court finds that Plaintiffs' theory is not distinguishable from the theory asserted in *Hummel*.[100]  The Court is persuaded by the reasoning of the Middle District of Florida, and finds that the individualized inquiries into production of the shingles preclude a finding that the common questions are susceptible to class-wide proof.

In addition, the evidence that Plaintiffs rely upon is problematic.  The Court is cognizant that "[f]or the purposes of class certification, [the] primary function is to ensure that the requirements of Rule 23 are satisfied, not to make a determination on the merits of the putative class's claims."[101]  Yet, the Court must conduct a rigorous analysis, and "[s]tated another way, consideration of how the class intends to answer factual and legal questions to prove its claim— and the extent to which the evidence needed to do so is common or individual—will frequently

---

years, even though [the defendant] promised that the shingles would have a useful life of 25 years, or more."). *Gonzalez*, 317 F.R.D. at 511.

[98] *Hummel v. Tamko Bldg. Prods. Inc.*, 303 F. Supp. 3d 1288, 1294 (M.D. Fla. 2017).

[99] *Id.* at 1299.

[100] Plaintiffs also asserts that the law in Florida is materially different than the applicable law in Illinois, Ohio, and Connecticut.  There may be variations in the law between the four states.  However, as to the strict liability claim, the law is similar.  In Florida, a strict liability claim requires proof that "(1) a product (2) produced by a manufacturer (3) was defective or created an unreasonable dangerous condition (4) that proximately caused (5) injury." *Id.* at 1299 (quoting *Edward Chadbourne, Inc. v. Vaughn*, 491 So. 2d 551, 553 (Fla. 1986)).

[101] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (citations omitted).

entail some discussion of the claim itself."[102]

Plaintiffs cite to evidence that Defendant had issues meeting the tear strength test, however, Plaintiffs' evidence is primarily from after the class period—2007 and on. Plaintiffs' proposed class period is limited to shingles manufactured between 2000 and 2004, and thus, Plaintiffs must have evidence from this timeframe to demonstrate a common design defect or to show that shingles manufactured between 2000 and 2004 failed to meet the tear strength requirement. Plaintiffs asserts that that they can rely on the later evidence by stating that Defendant did not fundamentally change the design or manufacturing process after 2004 but instead added an arbitration provision and class action waiver at that time. However, Plaintiffs fail to address the lack of evidence during the relevant class period. Thus, there are significant issues with Plaintiffs' ability to demonstrate a product defect through common evidence on this claim, as it relates to the proposed class period in this case.

Finally, Plaintiffs assert that even if Defendant's five factories used completely different materials and processes such that each factory produced a materially different product, it would not create an insurmountable issue that defeats predominance because investigating the makeup of shingles from five different factories is not an extensive or unmanageable inquiry. The Court disagrees. Plaintiffs assert a strict liability design defect claim and a failure to warn claim based on a product defect. An initial inquiry to determine whether the products were materially different based on where they were manufactured would be an individualized question. And then to determine whether those products suffered from a defect is another individualized question. Individualized questions "are inherently unsuitable for class-wide resolution."[103]

---

[102] *Id.* (citation omitted).

[103] *Hummel*, 303 F. Supp. 3d at 1299.

Furthermore, there are individualized causation issues in Plaintiffs' strict liability claims. The Northern District of Georgia addressed the same issue in *In re Atlas Roofing*, noting that "even if the Plaintiff could prove a uniform defect," there are many reasons why a roof may fail, "including commonplace events and ordinary wear and tear. There are also numerous reasons a shingle may blister, crack, or suffer granule loss."[104] The court found that "it is likely that the Defendant will bring at least one causation challenge against most—if not all—putative class members. Because the causation determination for most putative class members will involve individualized evidence, these individual causation questions will predominate at any trial."[105] The court concluded that "the [p]laintiff's strict products liability claim will be predominated by individualized causation questions. The individual class members will need to prove that the alleged damage, whether to the [s]hingles or other property, was caused by the alleged defective condition."[106]

Just as in *Atlas Roofing*, there are numerous reasons why putative class members' shingles may have failed. As to the four named Plaintiffs in the case, they disagree as to whether improper installation, improper flashing, "dead valleys," or ice damming could be the cause of the problems. The potential for so many distinct causation issues on each structure is highly individualized as to each potential class member. Thus, the Court finds that individual issues relating to causation predominate over common issues in Plaintiffs' strict liability claims. Accordingly, Plaintiffs cannot meet the predominance requirement for their strict liability claims.

---

[104] *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495-TWT, 2017 WL 2536794, at *7 (N.D. Ga. June 9, 2017).

[105] *Id.* at *7; *see also id.* at *7–9, 12 (discussing issues with causation in the context of breach of express and implied warranty claims, but also discussing the same causation issue in a strict products liability claim).

[106] *Id.* at *12 (citation omitted)

### b.  Breach of Express Warranty

Plaintiffs bring a breach of express warranty claim under both Connecticut and Ohio law.[107]  In Connecticut, "[t]o recover for breach of an express warranty, a plaintiff must show (1) that a warranty existed, (2) a breach of that warranty, and (3) damages proximately caused by the breach."[108]  A plaintiff must "adequately allege the representation that the defendant made and breached and to whom it was conveyed and how."[109]  "While advertisements can be part of the basis of the bargain [that forms an express warranty], the plaintiff must show, at a minimum that he or his agent knew of and relied on the statement."[110]  In addition, pursuant to Conn. Gen. Stat. Ann. § 42a-2-607(3)(a), "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

In Ohio, a claim for breach of express warranty requires that "(1) a warranty existed; (2) the product failed to perform as warranted; (3) plaintiff provided defendant with reasonable notice of the defect; and (4) plaintiff suffered injury as a result of the defect."[111]  "Generally, as part of a breach of warranty claim, Ohio Rev. Code § 1302.65(C)(1) requires the buyer to 'notify the seller of breach' 'within a reasonable time after [she] discovers or should have discovered any breach.'"[112]  Pre-suit notice, however, is not "an absolute rule," and notice may be inferred

---

[107] Plaintiffs' breach of express warranty claim under Connecticut law falls under the CPLA.  And "[a]ll product liability claims brought in Connecticut" require demonstrating that the "the product was in a defective condition."  *Hunte v. Abbott Lab'ies, Inc.*, 556 F. Supp. 3d 70, 82 (D. Conn. 2021) (quoting *Bifolck v. Philip Morris*, 152 A.3d 1183, 1202 (Conn. 2016)).  Thus, Plaintiffs' claim here also necessarily requires the common resolution of whether the product was defective.

[108] *Hunte*, 556 F. Supp. 3d at 88 (citation omitted).

[109] *Id.* at 89 (citations omitted).

[110] *Omega Eng'g, Inc. v. Eastman Kodak Co.*, 30 F. Supp. 2d 226, 246 (D. Conn. 1998) (citation omitted).

[111] *Forsher v. J.M. Smucker, Co.*, 612 F. Supp. 3d 714, 725 (N.D. Ohio 2020) (quoting *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008)).

[112] *Johnson v. Eisai, Inc.*, 590 F. Supp. 3d 1053, 1062 (N.D. Ohio 2022) (quoting Ohio Rev. Code § 1302.65(C)(1)).

depending on the circumstances of a particular case.[113]  Those circumstances are generally a factual inquiry.[114]

Here, Plaintiffs contend that the central elements of their express warranty claims may be proven by common evidence because they involve the same defective product, the same warranties, and Defendant's breach of those warranties.  Defendant asserts that individualized inquiries preclude certification.  Specifically, Defendant contends that the individualized inquiries into notice and whether the breach caused Plaintiffs' injuries predominate over any common questions.  The Court agrees.

As the *Hummel* court noted with the breach of express warranty claim asserted in that case:

> The determination of whether or not a seller of goods has received adequate notice of an alleged defect is a highly individualized inquiry.  Thus, in order to succeed on their claims of breach of express warranty, each member of the class would have to show that he or she provided [Defendant] adequate notice of the alleged defects in the [s]hingles within a reasonable time.  The determination of what constitutes a reasonable amount of time is also a highly individualized inquiry."[115]

The *Hummel* court concluded that the plaintiff's breach of express warranty claim was not amenable to class certification.[116]  In addition, the court in *In re Atlas Roofing* found that as to the plaintiff's breach of express and implied warranty claims, "individual issues going to causation, notice, coverage, privity and statute of limitations predominate over any common

---

[113] *Id.* (citing *Chemtrol Adhesives v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 638 (Ohio 1989)); *but see Forsher*, 612 F. Supp. 3d at 726 (stating that adequate pre-suit notice is a necessary prerequisite to bring a claim for breach of express warranty).

[114] *Eaton Corp. v. Angstrom Auto. Grp., LLC*, No. 1:20-cv-893, 2024 WL 342699, at *6–8 (N.D. Ohio, Jan. 30, 2024).

[115] *Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1298 (M.D. Fla. 2017).

[116] *Id.* at 1298–99.

questions in this case."[117]

Here, the determination of whether each class member provided notice, and did so within a reasonable amount of time, will be highly individualized.  And even if notice is not an absolute rule in Ohio, the circumstances for determining whether notice is not required is a highly individualized fact inquiry.[118]  Thus, whether notice is required or may be inferred, individual factual determinations will overwhelm the analysis.

In addition, there are other issues with proving these claims with common evidence.  As stated above in detail, the Court already found that whether the product was defective cannot be proven by common evidence.  Furthermore, there are individualized questions as to whether each class member saw, or was exposed to, the warranty.[119]  Finally, the question of whether Defendant's breach of the warranty proximately caused each class member's damages will be highly individualized.[120]  Thus, the Court concludes that individualized issues predominate over any common issues, and class certification on the express warranty claims must be denied.

### c.  Breach of Implied Warranty

Plaintiffs seek certification of a class to assert a breach of implied warranty claim in Connecticut only.[121]  "In Connecticut, 'a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that

---

[117] *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495-TWT, 2017 WL 2536794, at *7 (N.D. Ga. June 9, 2017).

[118] *See Eaton*, 2024 WL 342699, at *6–8.  Alternatively, even if notice could be considered on a class-wide basis in Ohio, the other individualized questions as to causation defeat the predominance showing.

[119] *See In re Hardieplank Fiber Cement Siding Litig.*, No. 12-2359, 2018 WL 262826, at *17 (D. Minn. Jan. 2, 2018) (finding that under Ohio law that whether each class member was exposed to, and relied upon, the specific representation the warranty would require an individualized analysis).

[120] *Id.*; s*ee also In re Atlas Roofing*, 2017 WL 2536794, at *7.

[121] Plaintiffs' breach of implied warranty theory falls under the CPLA.  As stated above, Plaintiffs' claim requires resolution of whether the product was defective.  *See Hunte v. Abbott Lab'ies, Inc.*, 556 F. Supp. 3d 70, 82 (D. Conn. 2021) (quoting *Bifolck v. Philip Morris*, 152 A.3d 1183, 1202 (Conn. 2016)).

kind.'"[122]  A claim for a breach of an implied warranty of merchantability requires proof that "1) a merchant sold the goods; 2) the goods were defective and not merchantable at the time of sale; 3) injury occurred to the buyer or his property; 4) the injury was caused by the merchant's defective product; and 5) notice was given to the seller of the claimed breach."[123]

Here, common issues do not predominate.  As explained above with the strict liability claims, whether the shingles were defective involve individualized inquiries that cannot be answered on a class-wide basis.  And as explained above with the breach of express warranty claim, the question of notice will be highly individualized.  If notice was not given, it will preclude the claim.  And finally, the question of causation will be an inherently individualized inquiry.[124]  Because the individualized issues outweigh any common issues, this claim is not susceptible to class-wide proof.

### d.  Negligence

Plaintiffs also seek certification of a negligence claim under the CPLA in Connecticut. "To prevail on a claim for negligence under the CPLA, a plaintiff must establish: (1) duty; (2) breach of that duty; (3) causation; and (4) actual injury."[125]  Plaintiffs contend that the central

---

[122] *Ferry v. Mead Johnson & Co.*, LLC, 514 F. Supp. 3d 418, 445 (D. Conn. 2021) (citing Conn. Gen. Stat. § 42a-2-314(1)).

[123] *Id.* (quoting *Gallinari v. Kloth*, 148 F. Supp. 3d 202, 215 (D. Conn. 2015) *abrogated on other grounds by Corley v. United States*, 11 F.4th 79 (2d Cir. 2021)); *see also Zeigler v. Sony Corp. of Am.*, 849 A.2d 19, 24 (Conn. 2004) (discussing a breach of implied warranty claim and that "plaintiff, as well as the other class members, is required to give individualized notice and the notice required is not simply notice of a defect-of which the defendants may already be aware-but notice of this plaintiff's claim the alleged defects constituted a breach of warranty.") (citation omitted).

[124] *See In re Atlas Roofing Corp.*, 2017 WL 2536794, at *7 (finding that numerous individualized inquiries precluded certification of a breach of express warranty or breach of implied warranty class); *Gonzalez v. Owens Corning*, 317 F.R.D. 443, 519–20 (W.D. Pa. 2016) (noting that causation must be proven for an implied warranty claim and finding that the plaintiffs could not "meet their burden to establish that causation can be proven by evidence that is common to the proposed four-state class.").

[125] *Hunte*, 556 F. Supp. 3d at 88 (quoting *Leonard v. Gen. Motors LLC*, 504 F. Supp. 3d 73, 93 (D. Conn. 2020)).

elements of the claim may be proven by common evidence—such as whether Defendant was negligent in the design and marketing of the shingles, and whether that negligence caused harm.

The court in *Hummel* addressed similar problems with certifying a negligence action.[126] The Middle District of Florida noted that "[t]he main hurdle to certification of [the plaintiff's] negligence actions is the issue of causation."[127]  The court found:

> [T]he causation inquiry will require proof that any alleged defects in the class member's [s]hingles were caused by a breach of duty by [Defendant] in its design and manufacturing of the [s]hingles. The very nature of shingles makes such an inquiry highly individualized.  There are many causes of shingle and roofing defects, such as weather-related problems, build-up of leaves and debris, foot traffic, excessive and/or harmful cleaning, and environmental factors such as heat and moisture.[128]

Ultimately, the court found that individualized causation inquiries would "be required for all of the individual class members, making the negligence claims raised by [the plaintiff] inherently ill-suited for class certification.[129]

Here, the Court is persuaded by the reasoning of the *Hummel* court.  The question of causation for each class member will be highly individualized.  Each individual class member will likely have different factual circumstances relating to the shingles such that causation will be

---

[126] *Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1299–1300 (M.D. Fla. 2017).

[127] *Id.* at 1299.  The Court recognizes that Florida law is slightly different for a negligence claim than Connecticut law.  Specifically, in a product liability case in Florida, the question is whether "the manufacturer was under a legal duty to design and manufacture a product reasonably safe for use."  *Id.*  In Connecticut, "[t]he test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case."  *Leonard*, 504 F. Supp. 3d at 93–94 (quoting *Simaneau v. Stryker Corp.*, No. 3:13-CV-1200, 2014 WL 1289426, at *11 (D. Conn. Mar. 31, 2014)).  The Court relies upon *Hummel* for its reasoning as to the individualized inquiries as to causation—not the court's analysis as to a duty.

[128] *Hummel*, 303 F. Supp. 3d at 1299 (citing *Gonzalez v. Owens Corning*, 317 F.R.D. 443, 520 (W.D. Pa. 2016)).

[129] *Id.* at 1299–1300.

an individualized inquiry.  Just between the four named Plaintiffs in this case, there are differing issues as to environmental factors and the installation of the shingles.  Thus, although there may be a common issue of whether a duty exists, the determination of the individualized causation issues will predominate over any common issues.  The Court finds that class certification of this claim is not warranted.

### e.  Unjust Enrichment

Plaintiffs bring an unjust enrichment claim under both Connecticut and Illinois law.  "To state a claim of unjust enrichment in Connecticut, a plaintiff must plausibly allege '(1) that the defendants were benefitted, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.'"[130]

In Illinois, to state an unjust enrichment claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."[131]

Plaintiffs contend that the central elements of these claims may be proven by common evidence because they involve Defendant's sale of the shingles and the wrongful retention of the proceeds.  Yet, here, the underlying issue of whether Defendant was unjustly enriched relies on the determination of whether the product was defective.  In other words, Defendant's retention of sales proceeds is unjust only if the shingles were defective.  As in *Gonzalez*, Plaintiffs' claim is premised on and requires proof that the shingles were defectively designed.[132]  And as noted

---

[130] *FIH, LLC v. Found. Cap. Partners LLC*, 176 F. Supp. 3d 52, 95 (D. Conn. 2016) (quoting *Vertex, Inc. v. City of Waterbury*, 898 A.2d 178, 190 (Conn. 2006)).

[131] *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)).

[132] *See Gonzalez*, 317 F.R.D. at 511–12 (addressing an unjust enrichment claim under Illinois, Pennsylvania, California, and Texas law).

above, there are individualized questions on this issue.

Furthermore, the court in *Gonzalez* specifically addressed the need for the plaintiffs to prove causation for an unjust enrichment claim under Illinois law.[133]  The court stated that the plaintiff "'must show a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit.'"[134]  Finding that the plaintiffs lacked common evidence to establish causation, the *Gonzalez* court found that the plaintiffs could not meet the predominance standard as to the unjust enrichment claim.[135]

Here, similarly, the same issue exists.  Plaintiffs' unjust enrichment theory is not separate from its product liability claim because Plaintiffs' claim is premised on the existence of a defect. Specifically, Plaintiffs contend that it was unjust for Defendants to retain a monetary benefit when the product it provided was defective.  As explained above in detail, Plaintiffs cannot prove the existence of a defect with common evidence.  Thus, the Court finds that predominance is also not met with the unjust enrichment claim.

### f.  Fraudulent NonDisclosure/Concealment and Negligent Misrepresentation

Plaintiffs assert a fraudulent nondisclosure/concealment claim in Connecticut, Illinois, and Ohio.[136]  Connecticut defines fraudulent nondisclosure as:

> Fraud by nondisclosure . . . involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak . . . . A lack of full and fair disclosure of such

---

[133] *Id.* at 519 (citing *Cleary*, 656 F.3d at 516, 519).

[134] *Id.* (quoting *Cleary*, 656 F.3d at 516, 519).

[135] *Id.* at 520; *see also Collier v. Adar Hartford Realty, LLC*, No. X07-HHD-CV-19-6115255-S, 2022 WL 18054024, at *16 (Conn. Super. Ct. Nov. 21, 2022) (noting that when individualized proof was required to establish the specific conditions in each challenged apartment unit, it was not appropriate to certify an unjust enrichment claim).

[136] Plaintiffs grouped the fraudulent disclosure/concealment and negligent misrepresentation claims together in their briefing.  Thus, the Court will do so as well.

> facts must be accompanied by an intent or an expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment.[137]

In Illinois, the elements of a fraudulent concealment claim include: "(1) false statement of material fact; (2) the defendant's knowledge or belief that the statement was false; (3) the defendant's intent that the statement induce the plaintiff to act; (4) the plaintiff's justifiable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement."[138]

In Ohio, the elements of a fraud claim (whether that be fraudulent nondisclosure or fraudulent misrepresentation) are:

> (1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance.[139]

As to the negligent misrepresentation claim, Plaintiffs only assert it under Connecticut and Illinois law.[140]   A negligent misrepresentation claim in Connecticut requires the plaintiff to show "(1) that the defendant made a misrepresentation of fact (2) that the defendant knew or should have known was false, and (3) that the plaintiff reasonably relied on the misrepresentation, and (4) suffered pecuniary harm as a result."[141]

---

[137] *Saggese v. Beazley Co. Realtors*, 109 A.3d 1043, 1054 (Conn. App. Ct. 2015) (quoting *Reville v. Reville*, 93 A.3d 1076, 1087 (Conn. 2014)).

[138] *Bauer v. Giannis*, 834 N.E.2d 952, 957 (Ill. App. Ct. 2005) (citation omitted).

[139] *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citation omitted).

[140] Plaintiffs' negligent misrepresentation claim in Connecticut falls under the CPLA.

[141] *Nazami v. Patrons Mut. Ins. Co.*, 910 A.2d 209, 213 (Conn. 2006) (citation omitted).

To state a claim for negligent misrepresentation in Illinois, a plaintiff must allege:

> (1) a false statement of material fact; (2) carelessness or negligence in ascertaining the truth of the statement by the party making it; (3) an intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; (5) damage to the other party resulting from such reliance; and (6) a duty on the party making the statement to communicate accurate information.[142]

Plaintiffs contend that both the fraudulent nondisclosure/concealment claims and the negligent misrepresentation claims may be proven by common evidence because they involve Defendant's knowledge, duties, conduct (including falsely representing that the shingles met industry standards) and intent.  In addition, they contend that reliance may be proven by common evidence of uniform misrepresentations.  Defendant asserts that Plaintiffs cannot prove exposure to a misrepresentation or deception on a class-wide basis and that individualized evidence will be necessary.

The Court again finds the reasoning in *Hummel* and *In re Atlas Roofing* persuasive here. In *In re Atlas Roofing*, the plaintiff asserted fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation claims.[143]  The plaintiff (like Plaintiffs in this case) asserted that "all the class members relied on [the defendant's] alleged omission and misrepresentations regarding the durability of the [s]hingles when they purchased the [s]hingles."[144]  The Northern District of Georgia found that where "there are both material variation in the representations and kinds of degrees of reliance by the class members," common issues are lacking, and "the class will need to prove reliance through individual evidence."[145] The

---

[142] *Hartford Fire Ins. Co., v. Henry Bros. Const. Mgmt. Servs., LLC*, 877 F. Supp. 2d 614, 618 (N.D. Ill. 2012) (citation omitted).

[143] *See In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:13-md-2495-TWT, 2017 WL 2536794, at *10–12 (N.D. Ga. June 9, 2017).

[144] *Id.* at *11.

[145] *Id.*

court also noted that "[f]or the alleged misrepresentation, each class member would need to establish what particular marketing material or industry standard he or she observed and relied upon.  This is further complicated by third party wholesalers, retailers, and contractors who made the purchase decisions for the vast majority of the [s]hingle purchases."[146]  The court concluded that in a case where such highly individualized evidence is necessary to demonstrate both fraudulent concealment and negligent misrepresentations, predominance is not satisfied.[147]

In addition, in *Hummel*, the plaintiff asserted a claim under the Florida Deceptive and Unfair Practices Act ("FDUTPA") for alleged misrepresentations about the defendant's shingles on its website and other promotional sources.[148]  The court found that class certification was not warranted because the predominance requirement was not met.[149]  Specifically, the court found that it "must determine whether individual members reviewed specific product literature, or whether individual members reviewed the website in anticipation of purchasing the [s]hingles."[150]  The court concluded that these inquiries were "fact-intensive individualized inquiries" that could not meet the predominance standard.[151]

"[E]fforts to certify classes based on causes of action that require an element of causation . . . often turn on whether the class can demonstrate that reliance is susceptible to generalized proof."[152]  Here, there will be numerous individualized factual inquiries.  The class members

---

[146] *Id.*

[147] *Id.* at *10–12; *see also Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1300 (M.D. Fla. 2017).

[148] *Hummel*, 303 F. Supp. 3d at 1300.  The Court recognizes that the *Hummel* court was discussing a different claim, but the FDUTPA claim also involves whether misrepresentations were made.  *Id.*

[149] *Id.*

[150] *Id.*

[151] *Id.*

[152] *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1089 (10th Cir. 2014) (citations omitted).

may attempt to rely on multiple or different misrepresentations, including written and/or oral statements. Whether each class member was exposed to a misrepresentation will be an individualized factual inquiry, and identifying which alleged misrepresentation class members relied upon, will be an individualized factual inquiry. Indeed, none of the named Plaintiffs in this case even rely on the same misrepresentations. For example, the Melnicks consulted with a roofer and state that they viewed Defendant's website. Ms. Louthan alleges that she relied on her roofer's oral representation and Defendant's brochure. As to Summerfield Gardens, it alleges an oral misrepresentation.[153] Thus, even among the named Plaintiffs, the reliance element is not susceptible to common evidence.[154] Finally, the Court notes that Plaintiffs' class definition also includes individuals who purchased homes with Defendant's shingles already on the home. These individuals would not have been exposed to a misrepresentation or omission from Defendant. Accordingly, the Court finds that Plaintiffs cannot meet the predominance standard with these claims because individual issues of reliance outweigh any common questions.

### g. Violation of OCSPA

Plaintiffs bring a claim under the OCSPA, which "prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions."[155] Generally, unfair or deceptive consumer sales practices are "those that mislead consumers about the nature of the product they

---

[153] As to the initial purchase of the shingles, Summerfield Gardens' developer purchased the shingles. The developers had already been using Heritage Shingles before the construction of Summerfield Gardens, and Plaintiffs do not identify any specific representations made to the developers. The only alleged misrepresentation—that Summerfield Gardens received a bad batch of shingles—is intensely fact-specific.

[154] The Court recognizes that Plaintiffs contend that Defendant falsely represented that its product met relevant industry standards and that the shingles would last a certain amount of time. As noted above, however, there must be common evidence that each class member was exposed to such a misrepresentation for the Court to certify such a claim.

[155] *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006) (citing Ohio Rev. Code. Ann. §§ 1345.02, 1345.03).

are receiving," and unconscionable acts "relate to a supplier manipulating a consumer's understanding of the nature of the transaction at issue."[156]  Before proceeding as a class action with an OCSPA claim, there is an additional requirement of "sufficient prior notice of what conduct was already declared to be deceptive."[157]  Thus, a class action plaintiff must demonstrate that "the defendants' alleged violations of the OCSPA are substantially similar to an act or practice previously declared to be deceptive by . . . a declaration by the Attorney General [or] a decision by the court in the state of Ohio."[158]  In addition, "Plaintiffs bringing OCSPA class-action suits must allege and prove that actual damages were proximately caused by the defendant's conduct."[159]  "If the class plaintiff fails to establish that all of the class members were damaged (notwithstanding questions regarding the individual damages calculations for each class member[]), there is no showing of predominance under [Rule] 23(b)(3)."[160]

Here, Plaintiffs contend that the unfair or deceptive acts under the OCSPA is Defendant's marketing and selling of the shingles with false representations and improperly denying and obstructing warranty claims.  As noted above, there are highly individualized questions as to the actual misrepresentations.[161]  Inquiries into the denial of warranty claims would also be highly

---

[156] *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733, 743 (N.D. Ohio 2010) (quoting *Whitaker v. M.T. Auto., Inc.*, 855 N.E.2d 825, 829 (Ohio 2006)).

[157] *CACH, LLC v. Young*, No. 15 MA 0176, 2021 WL 6276314, at *22 (Ohio Ct. App. Dec. 17, 2021) (citing *Marrone*, 850 N.E.2d at 34).

[158] *Beard v. Dominion Homes Fin. Servs, Inc.*, No. 2:06-cv-00137, 2007 WL 2838934, at *9 (S.D. Ohio Sept. 26, 2007) (citations omitted).

[159] *Felix v. Ganley Chevrolet, Inc.*, 49 N.E.3d 1224, 1231 (Ohio 2015) (citation omitted).

[160] *Id.* at 1233 (citations omitted).

[161] Because the Court finds that individualized fact questions predominate over common issues, it does not address the additional requirement required to certify a OCSPA class, *i.e*, that Defendant's actions are substantially similar to "either: (1) a rule [] adopted by the Attorney General under R.C. 1345.05(B)(2) . . . or (2) a court [in Ohio] declar[ing] the disputed act or practice violative of the [O]CSPA in a [public] decision." *CACH,* 2021 WL 6276314, at *22 (citation omitted).  In *CACH,* the Ohio Court of Appeals reversed the trial court's certification of a class action under the OCSPA by finding that the trial court erred in determining that the actions were substantially similar "to an act or practice previously declared to be a violation of the OCSPA in the state cases . . . ." *Id.* at *22–25.

individualized as each case would require determining whether the claimant met the warranty requirements.  For example, there are individualized inquiries as to whether Ms. Louthan, the named class representative for the OCSPA claim, properly made a warranty claim or was covered by the warranty because she was not the title owner of the house when the shingles were installed.  Accordingly, the Court finds that Plaintiff cannot establish that common issues outweigh individual issues with regard to this claim.

### h.  Violation of the CPLA

As noted above, product liability claims are required to be brought under the CPLA in Connecticut.[162]  The various common law theories asserted by Plaintiffs under the CPLA included strict liability, negligence, breach of express warranty, breach of implied warranty, and negligent misrepresentation.  The Court addressed each theory above, and for the same reasons asserted above, Plaintiffs' CPLA claim cannot be certified as a class action because individualized issues predominate over common issues.

### iii.  Damages and Affirmative Defenses

The calculation of Plaintiffs' damages and the consideration of Defendant's affirmative defenses also weigh in the Court's determination to deny class certification.  "The fact that damages may have to be ascertained on an individual basis is not, standing alone, sufficient to defeat class certification."[163]  Rather, predominance will only be destroyed if the "material

---

[162] *Hunte v. Abbott Lab'ies, Inc.*, 556 F. Supp. 3d 70, 82 (D. Conn. 2021).  Plaintiffs included an additional section addressing their CPLA claim.  Thus, the Court will also separately address this cause of action even though all theories under the CPLA were addressed above.

[163] *Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 798 (10th Cir. 2019) (quoting *Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 922 (10th Cir. 2018)); s*ee also Sherman v. Trinity Teen Solutions, Inc.*, 84 F.4th 1182, 1194 (10th Cir. 2023) (noting that when one or more central issues are common and predominant, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

differences in damages determinations" are individualized issues that overwhelm common questions to the class.[164]  Like the damages question, the assertion of an affirmative defense does not necessarily preclude a predominance finding.[165]  Instead, the question is whether the common issues predominate over the individualized issues.[166]

Plaintiffs assert two types of damages: (1) the cost to remove and replace the shingles; and (2) the cost to repair any damage caused by the shingles.  Plaintiffs propose a uniform method for calculating removal and replacement of the shingles.  As to the cost of repair, however, Plaintiffs concede that it will not be uniform across the class, but Plaintiffs contend that calculation of these damages on an individualized basis should not defeat class certification.

Here, the determination as to each class member's damages appears highly individualized. Even if Plaintiffs' first proposed method for determining the cost of removing and replacing the shingles could be uniformly applied, there is no way to uniformly calculate the cost of repair. Plaintiffs do not propose a uniform method for evaluating repair costs, and evaluating repair costs on a case-by-case basis is yet another individualized inquiry in the case.  In addition, Defendant's affirmative defenses, which include statute of limitations/statute of repose, accord and satisfaction, and contributory negligence, also require consideration of individualized evidence and present individualized inquiries.  Thus, although the individualized damages inquiry or affirmative defenses inquiry do not alone defeat class certification, the consideration

---

[164] *Naylor Farms*, 923 F.3d at 798 (quoting *Wallace B. Roderick Revocable Living Trust v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013)).

[165] *Sherman*, 84 F.4th at 1194 (citation omitted); *see also Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600, 617 (D. Kan. 2014) (stating that "the individual questions posed by the statute of limitations issue are not so serious or difficult to resolve that" they overwhelm the substantial common issues.).

[166] *Sherman*, 84 F.4th at 1194.

of these questions, in addition to the other individualized issues above, weighs against a predominance finding.[167]

### iv.  Predominance Summary

Each named Plaintiff relies on a unique set of facts, and although they assert some of the same claims, the claims require the Court to apply a different state law to each of the claims. There are numerous individualized factual issues as to each claim that cannot be proven by common evidence.  There are also individualized inquiries as to damages and affirmative defenses.  Although there are some common issues, the common issues do not substantially outweigh the individualized issues.  Instead, any common issues of law and fact are far outweighed by the numerous individualized inquiries and applicable state laws.  Accordingly, the Court finds that Plaintiffs cannot establish predominance under Rule 23(b)(3).

### b. Superiority

Federal Rule of Civil Procedure 23(b)(3) also requires that Plaintiffs demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[168]  When determining superiority, the following factors may be relevant:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

---

[167] *See Gonzalez v. Owens Corning*, 317 F.R.D. 443, 521–22, 523 (W.D. Penn. 2016) (stating that the "plaintiffs failure to demonstrate that damages can be proven by common evidence further demonstrates that certification of the proposed four-state class is improper" and that "[e]ven if the named plaintiffs could prove injury, causation, and damages with common proof," the individual statutes of limitation defenses prevented a predominance finding).

[168] Fed. R. Civ. P. 23(b)(3); *see also In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 219 F.R.D. 661, 679 (D. Kan. 2004) ("The requirement that a class action be the superior method of resolving the claims insures that there is no other available method of handling the litigation which has greater practical advantages.").

(D) the likely difficulties in managing a class action.[169]

In this case, a class action is not a superior method to adjudicate these claims.  First, as noted above, there are numerous individualized inquiries.  Based on the number of individualized factual and legal inquiries, adjudicating these claims on a class-wide basis presents practical and administrative problems.[170]

In addition, each class member's individual recovery weighs against a finding that a class action is the superior method for adjudicating claims.  "'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'"[171]  Here, the individual recoveries are not small.  Plaintiffs are seeking repair and/or replacement of their roofs, as well as any other damages that may have been caused by damage to the roofs.[172]  In contrast to a case where the individual class member's recovery is measured in dollars, the recovery here could be measured in the thousands and tens of thousands for each class member.  Because of the amount of recovery, Plaintiffs' contention that class members would lack the incentive to proceed individually is without merit.[173]

---

[169] Fed. R. Civ. P. 23(b)(3)(A)–(D).

[170] *See In re Atlas Roofing*, 2017 WL 2536794 at *13 (finding that superiority was not met because "adjudicating these claims on a class-wide basis will likely present a manageability problem" as "[t]here will be numerous fact-intensive individual inquiries, including physical inspection of class members' [s]hingles and individual testimony regarding when class members discovered the defect and provided notice to [the defendant].").

[171] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

[172] For example, the Melnicks seek several thousands of dollars for damage to the inside of their house that they contend was caused by the shingles' failure.

[173] *See Gonzalez v. Owens Corning*, 317 F.R.D. 443, 524–25 (W.D. Pa. 2016) (finding that a class action was not a superior method and noting that the claims were not financially insignificant because they ranged from $5,000 to $22,000 which was in contrast to the harm in some class action cases that involved minor consumer transactions amounting to approximately $30 each claim); *In re Atlas Roofing*, 2017 WL 2536794, at *13 (noting that replacing a roof could be several thousand dollars and the case was "unlike class actions where the class members have suffered only a minor harm and would not pursue their claim but for the class action mechanism,"

Furthermore, there are manageability problems with instructing the jury should the case proceed. The jury would have to consider nineteen different causes of action under three different state laws.[174] Due to the individualized issues and variations in state law, the Court finds that Plaintiffs cannot meet the superiority requirement in Rule 23(b).

### B.    Rule 23(c)(4) Issue Certification

Plaintiffs alternatively request that if the Court declines to certify a class that the Court certify common issues. "Rule 23(c)(4) advances judicial economy by allowing adjudication of issues common to the class even when the entire case does not satisfy the requirements to proceed as a class action."[175] To certify an issue class under Rule 23(c)(4), the issue class itself must meet the requirements of Rules 23(a) and the predominance and superiority requirements of Rule 23(b).[176] Certifying an issue class is "inappropriate 'if the noncommon issues are inextricably entangled with common issues or . . . are too unwieldy or predominant to be handled on a class action basis.'"[177] Whether "resolution of the issue class will 'materially advance' resolution of the dispute" is a "pertinent consideration to finding whether Rule 23(b)(3)'s superiority requirement is met."[178]

Plaintiffs' alternative argument as to issue certification is vague and cursory. They state that "resolution of common issues—such as duty, breach, or liability—would substantially

---

thus disagreeing "with the plaintiff's contention that the class members lack any significant interest in controlling the litigation.")

[174] *See, e.g., In re HomeAdvisor, Inc. Litig.*, 345 F.R.D. 208, 237 (D. Colo. 2024) (noting that a nationwide class action with an additional nine state classes was not a superior method because the application of numerous state laws and instructing the jury on the application of multiple state laws, was not manageable).

[175] *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1189 (10th Cir. 2023) (citation omitted).

[176] *Id.* at 1188.

[177] *Id.* (quoting *In re Motor Fuel Temperature Sales Pracs. Litig.*, 292 F.R.D. 652, 665 (D. Kan. 2013) (alteration in original)).

[178] *Id.* (quoting *In re Motor Fuel*, 292 F.R.D. at 665).

advance the litigation for future resolution of any remaining individualized issues."[179]  They

assert that the existence of a defect, Defendant's duties, misrepresentations, knowledge, and

intent are all provable by common evidence.  Plaintiffs, however, do not expand on this

argument or set forth any specifics.

The Court denies Plaintiffs' request for issue certification.  First, Plaintiffs' cursory

reference as to what issues they seek to certify is insufficient.  Presumably, Plaintiffs rely on the

same arguments that they asserted as to their claims, but it is Plaintiffs' burden to demonstrate to

the Court, with specificity, *what* issues they seek certification for.[180]  In addition, they must set

forth *how* the issue class will satisfy predominance and *how* it is superior to other methods of

adjudication.[181]  Plaintiffs fail to do so.[182]

In addition, Plaintiffs do not adequately explain how certifying any issues would materially

advance the litigation.  In analyzing Plaintiff's claims above, the Court found that common

issues did not predominate over individualized issues.  All of Plaintiff's claims have numerous

individualized inquiries.  Even though Plaintiffs set forth common issues, the individualized

issues still predominate, and there is no reason to find that an issue class is superior to other

methods for adjudicating an issue.[183]  Thus, certifying any issues would not promote judicial

---

[179] Doc. 301 at 49.

[180] As shown above, Plaintiffs' claims (and thus the issues as well) are numerous.

[181] *See, e.g.*, *Martinez v. FedEx Ground Package Sys., Inc.*, No. 20-1052 SCY/LF, 2023 WL 7114678, at *16–17 (D.N.M. Oct. 27, 2023) (noting that the plaintiffs did not identify how the issue class would satisfy predominance, nor analyze the superiority of an issue class, and thus because the plaintiff's brief did not "sufficiently address the factors required for the Court to certify an issue, they did not carry their burden to demonstrate this case is suited for issue certification.").

[182] In their reply, Plaintiffs state that they propose certification of an issue class "centering on [Defendant's] liability."  Doc. 361 at 24.  Yet, they still do not adequately elaborate on predominance and superiority with an issue class.

[183] *See In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:14-cv-3034-TWT, 2017 WL 2536794, at *14 (N.D. Ga. June 9, 2017) (finding that a Rule 23(c)(4) issue class should not be certified and noting that "[t]he [p]laintiffs' case for certification collapses when it confronts the fact that certification of a common issues

efficiency or materially advance the litigation.  Accordingly, Plaintiffs' request for issue certification is denied.

### C.   Proposed Rule 23(b)(2) Class

Plaintiffs also seeks to certify the following 23(b)(2) class:

> All individuals and entities that own homes, residences, buildings or other structures physically located in Connecticut, Ohio or Illinois on which TAMKO Heritage shingles purchased between January 1, 2000 and November 20, 2004 are currently installed. Excluded from the class are (i) TAMKO and its affiliates, subsidiaries, employees, and current and former officers, directors, agents, and representatives; and (ii) members of this Court and its staff.[184]

They seek declaratory and injunctive relief, including a declaration that "all Heritage Shingles manufactured by [Defendant] during the class period suffer from an inherent defect rendering them unfit for their ordinary and anticipated use"; a declaration that Defendant "knew of the defects in its shingles and that the limitations contained in the warranties accompanying [the] shingles are unenforceable"; an injunction requiring that Defendant "establish an inspection program and protocol" which would "require [Defendant] to inspect, upon request, a class member's [shingles] to determine whether they exhibit product deterioration or failures"; and an injunction requiring that Defendant "establish a program to re-audit and reassess all prior warranty claims on [its] shingles, including claims previously obstructed or denied in whole or in part."[185]

Under Rule 23(b)(2), Plaintiffs must demonstrate that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief

---

class will not dispose of a single case or eliminate the need for a single trial") (quoting *In re Conagra Peanut Butter Prods. Liab. Litig.*, 251 F.R.D. 689, 701 (N.D. Ga. 2008)).

[184] Doc. 301 at 49.

[185] *Id.*

or corresponding declaratory relief is appropriate respecting the class as a whole."[186] "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."[187] Class certification under this provision is not authorized when individual class members would be entitled to different injunctive or declaratory relief.[188] In addition, "it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."[189]

Plaintiffs argue that any monetary damages Defendant may have to pay as a result of the injunctive relief are incidental. The Court disagrees. As noted by the Supreme Court, monetary claims may only proceed in a Rule 23(b)(2) class if they are incidental to the injunctive or declaratory relief.[190] Plaintiffs' request for injunctive relief would effectively result in individualized monetary damages for each of the putative class members because it requires Defendant to establish a program for inspecting class members' roofs with the ultimate result of replacement or repair of the allegedly defective product. Thus, the Court denies Plaintiffs' request for certification of a class under Rule 23(b)(2).

### D.  Summary

In sum, the Court denies Plaintiffs' request for class certification. Plaintiffs cannot meet the typicality and adequacy requirements under Rule 23(a), and Plaintiffs cannot satisfy the

---

[186] Fed. R. Civ. P. 23(b)(2).

[187] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).

[188] *Id.*

[189] *Id.* at 360–61; *see also Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 836 (10th Cir. 2023).

[190] *Wal-Mart Stores*, 564 U.S. at 360; *see also Hummel v. Tamko Bldg. Prods., Inc.*, 303 F. Supp. 3d 1288, 1300–01 (M.D. Fla. 2017) (declining to certify a Rule 23(b)(2) sub-class by finding that the monetary damages sought in the case were not incidental to the plaintiff's declaratory relief); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, No. 1:14-cv-3034-TWT, 2017 WL 2536794, at *14 (N.D. Ga. June 9, 2017) (denying the plaintiff's proposed Rule 23(b)(2) class that requested the declaratory relief that the shingles were defective and that the warranties were void because it was "clear that the monetary damages [were] not incidental to the requested declaratory relief").

predominance and superiority requirements under Rule 23(b)(3).  In addition, the Court denies

Plaintiffs' request for class certification under Rule 23(b)(2) because Plaintiffs are effectively

seeking monetary damages rather than injunctive or declaratory relief.  Finally, the Court denies

Plaintiffs' request for an issue class under Rule 23(c)(4) because Plaintiffs fail to adequately

address the requirements and do not demonstrate that an issue class would advance judicial

economy.

      **IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Class Certification (Doc.

300) is **denied**.

      **IT IS SO ORDERED.**

      Dated: March 27, 2024

                                      S/ Julie A. Robinson
                                      JULIE A. ROBINSON
                                      UNITED STATES DISTRICT JUDGE