## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **MARTIN MELNICK, BETH MELNICK, LIA LOUTHAN, AND SUMMERFIELD GARDENS CONDOMINIUM, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**TAMKO BUILDING PRODUCTS LLC,[1]**<br><br>**Defendant.** | **Case No. 19-CV-2630-JAR-BGS** |

## MEMORANDUM AND ORDER

Plaintiffs – a married couple, an individual, and a corporation – assert three sets of claims against Defendant TAMKO, arising out of alleged defects in Defendant's roofing shingles. Defendant seeks summary judgment on Plaintiffs' claims (Doc. 318).  The motion is fully briefed.[2]  For the reasons stated in more detail below, the Court grants in part and denies in part Defendant's motion.

## I.    Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[3]  In applying this standard, the court views the evidence and all reasonable inferences therefrom in

---

[1] Defendant is listed on the docket sheet as Inc., but it refers to itself as an LLC, and thus the Court will also refer to Defendant as an LLC.

[2] Five motions to exclude testimony (Docs. 314, 322, 324, 326, and 330) are pending.  These motions to exclude will be addressed at a later date.  The Court recently ruled on, and denied, Plaintiffs' Motion for Class Certification.

[3] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

the light most favorable to the nonmoving party.[4]  "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the nonmoving party, is such that a reasonable jury could return a verdict for the nonmoving party."[5]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[6]  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[7]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[8]  Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[9]  The nonmoving party may not simply rest upon its pleadings to satisfy its burden.[10]  Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11]  To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript[,] or a specific exhibit incorporated therein."[12]  The non-moving party cannot avoid

---

[4] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[5] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

[6] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[7] *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[8] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

[9] *Anderson*, 477 U.S. at 256.

[10] *Id.*; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[11] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

[12] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[13]

Finally, summary judgment is not a "disfavored procedural shortcut;" on the contrary, it is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.'"[14]  In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial."[15]

## II.    Uncontroverted Facts[16]

Defendant is a limited liability corporation with its principal place of business in Galena, Kansas.  It manufactures roofing shingles, and its Heritage brand shingles are premium asphalt roofing shingles with a fiberglass mat.  Two of its Heritage shingles are branded the Heritage 30 or Heritage 50.  Heritage 30 shingles and Heritage 50 shingles came with a 30-year and 50-year limited warranty, respectively.

*The Melnicks*

Martin and Beth Melnick purchased TAMKO Heritage 50 AR shingles for their former house in West Hartford, Connecticut in September 2002.[17]  These shingles were manufactured at Defendant's Frederick, Maryland plant.  The Melnicks, after consulting with a roofer, viewed Defendant's website.  Due to the website's statements, Mr. Melnick believed that the shingles had a 50-year warranty.  The shingles were installed in September 2002.

---

[13] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (citation omitted).

[14] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[15] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

[16] The facts are uncontroverted, stipulated to, or viewed in the light most favorable to Plaintiffs as the nonmoving parties.

[17] AR indicates that the shingles have a ten-year algae cleaning warranty.

The Melnicks noticed several roof leaks beginning in 2013.  The shingles have grown algae, cracked, and degranulated, and water leaked into the home.  Various portions of the interior of the home, including the master bedroom, upstairs bathroom, adjacent bedroom, and hallway, were damaged and had mold.  The Melnicks testified that they spent several thousand dollars to repair damage inside the house.

In late 2014, the Melnicks started a warranty claim with Defendant and followed the claim process instructions.  The warranty claim was denied in March 2015.  In the letter denying the claim, Defendant stated that the limited 120-month algae warranty had expired.

In December 2015, the Melnicks sued Defendant, alleging that the shingles on the home grew algae, cracked and degranulated, which resulted in water leaks.  In addition, they claimed that Defendant misrepresented the algae-resistant quality of the shingles on its website and misrepresented that the shingles would last for the duration of the warranty that came with the product.

Ms. Melnick sold the house in February 2017, more than a year after initiating this lawsuit against Defendant.  She did not disclose to the buyer the alleged issues with the shingles or the existence of the shingle-related lawsuit.  The house sold for $315,000, which was the price suggested by the real estate broker.  There is no evidence that the home sold for less money due to the allegedly defective shingles.[18]  The original shingles remain on the house and continue to shed water.  The new owner continues to have problems with the shingles, including the shingles leaking and blowing off.

---

[18] Ms. Melnick testified that the defective shingles could have affected the sales price, but she has no other evidence other than her opinion.

The Melnicks' claims include: (1) fraudulent concealment/nondisclosure, (2) violation of the Connecticut Product Liability Act ("CPLA"),[19] and (3) unjust enrichment.  They also seek declaratory and injunctive relief.  In addition, they seek to certify a class on their claims.

*Lia Louthan*

Lia Louthan is the owner of a home in Walton Hills, Ohio.  The home was purchased in her mother's name, and her mother did not transfer ownership of the home to Ms. Louthan until 2010.  In 2004, Ms. Louthan sought to have the shingles replaced on the home and purchased Heritage 30 shingles.  These shingles were manufactured at Defendant's Frederick, Maryland plant.

Ms. Louthan claims that she decided to purchase the shingles based on the recommendation of her roofer.  Ms. Louthan testified that the roofer provided her with a Heritage Shingles brochure, sample board, and warranty.  The roofer testified that he provided Ms. Louthan with a sample board but that he did not provide her with a brochure or warranty information.  After reviewing the materials, Ms. Louthan purchased the shingles.  The shingles were installed on the home in September 2004.

The Heritage 30 shingles came with a 30-year Limited Warranty, which could be transferred "one time during the first two years" of the warranty's term to a purchaser of the

---

[19] As is also noted in the Court's class certification order, "[t]he CPLA is the 'exclusive remedy' for—and the only cause of action available to—plaintiffs in Connecticut for product liability claims.  Even though the CPLA provides for only a single cause of action, a plaintiff may assert various common law theories of liability thereunder.  The available theories of liability include: (1) strict liability in tort, (2) negligence, (3) breach of warranty, express or implied, (4) breach of or failure to discharge a duty to warn or instruct, whether negligent or innocent, and (5) misrepresentation or nondisclosure, whether negligent or innocent."  *Hunte v. Abbott Labs., Inc.*, 556 F. Supp. 3d 70, 82 (D. Conn. 2021) (internal citations omitted).  Accordingly, the Melnicks' theories of liability based on negligence, strict liability, breach of warranty (express or implied), and negligent misrepresentation are subsumed under the CPLA.

property the shingles were placed on.[20]  This Limited Warranty stated that it was applicable to the "'owner' of the building at the time the [s]hingles are installed on that building."[21]

Ms. Louthan claims that the shingles led to a leak in 2009.  As to this leak, it caused shifting and shrinking in the home's crown molding, cracked the drywall, and stained the ceiling. Water also reached the basement.  Ms. Louthan submitted an insurance claim regarding this leak and received an insurance award.  Ms. Louthan's husband, Jeffrey Louthan, repaired the damage by patching drywall, caulking crown molding, and repairing the hardwood floor.  Nothing was done to the roof or the shingles following the 2009 leak.

In 2012, there was another leak causing water to come into the home and affect certain walls.  Ms. Louthan's expert, Justin Kestner, attributed this event to a "valley leak," which was the result of improper installation of the shingles.  Following this leak, Mr. Louthan repaired the interior damage and applied flex seal, which fixed the issue.

Mr. Louthan contacted Defendant to file a warranty claim in November 2015.  Defendant told him that he was not the homeowner and that the house had changed ownership since the shingles were placed on it.  The shingles remain on the roof and continue to shed water.

Ms. Louthan's claims include: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) strict liability (design defect, manufacturing defect, and failure to warn), (4) negligence, (5) negligent failure to warn, (6) fraudulent concealment, and (7) violation of the Ohio Consumer Sales Protection Act ("OCSPA").  She also seeks declaratory and injunctive relief.  In addition, she seeks to certify a class on the following claims: breach of express warranty, strict liability, fraudulent concealment, and violation of the OCSPA.

---

[20] Doc. 320-9 at 3.

[21] *Id.*

*Summerfield Gardens*

Summerfield Gardens is a condominium development in Godfrey, Illinois consisting of 20 duplexes.  Each duplex contains two units which share a roof.  19 of the 20 duplexes were constructed with Heritage 30 shingles, and construction took place between 2003 and 2007.  The shingles were manufactured at Defendant's Dallas, Texas plant.  Summerfield Gardens' developer, Emmons & Wickenhauser, purchased all the shingles on those buildings.  The developer had already been using Heritage shingles in other projects before the construction of Summerfield Gardens.

In April 2014, Summerfield Gardens discovered a problem with the shingles on the front half of the roof covering one duplex.[22]  Summerfield Gardens' board president, James Herndon, made a warranty claim for these shingles and, as part of the claim, sent samples of the shingles to Defendant.  Defendant approved the claim and provided a prorated number of shingles, consistent with the terms of the applicable limited warranty.  A representative of Defendant told Herndon that the duplex received a "bad batch" of shingles.  Defendant's "bad batch" statement led Summerfield Gardens to believe that the problem was isolated.

In 2015, Summerfield Gardens began to experience problems with more of its shingles, starting with the shingles on the back side of the duplex identified above.  Shingles at another residence caused damage to the building's roof decking and structural elements between the roof and interior ceiling of the building.[23]  Summerfield Gardens had its roofs inspected by a home inspection company and two roofing companies in July 2015.  The inspections showed that some

---

[22] This residence was 5004/5006 Castlegate Lane.

[23] This residence was 5029/5031 Castlegate Lane.

roofs needed to be replaced and various other roofs required repairs.  Due to deterioration, Summerfield Gardens replaced shingles on its buildings.[24]

Summerfield Gardens filed suit in 2016 alleging that the shingles on its buildings had cracked, severely degranulated, curled, and come loose.  It also alleged that water had leaked into several properties.  Summerfield Gardens' claims include: (1) strict liability (design defect, manufacturing defect, and failure to warn), (2) negligence, (3) negligent failure to warn, (4) unjust enrichment, (5) fraudulent concealment, (6) negligent misrepresentation, and (7) violation of Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA").  It also seeks declaratory and injunctive relief.  In addition, it seeks to certify a class on the following claims: strict liability, unjust enrichment, fraudulent concealment, and negligent misrepresentation.

*Procedural History of this Case*

This case was originally filed in the Eastern District of California.  After the California plaintiff's claims were dismissed, it was transferred to the District of Kansas on October 15, 2019, by stipulation of the parties.  In 2020, Judge Lungstrum (previously assigned to the case) ruled on two motions to dismiss.[25]  The Second Amended Complaint, filed July 20, 2020, is the operative complaint.[26]  In 2022, the undersigned granted a motion to compel arbitration as to certain shingles related to Summerfield Gardens.[27]

Plaintiffs assert that Heritage shingles do not meet "tear testing" standards set by the American Society for Testing and Materials ("ASTM"), and therefore, the shingles are likely to

---

[24] Only 12 buildings are at issue here because 7 of the buildings' shingles had a mandatory arbitration clause.  *See* Doc. 285.

[25] *Melnick v. TAMKO Bldg. Prods., Inc.*, 469 F. Supp. 3d 1082, 1097 (D. Kan. 2020) (*Melnick I*); *Melnick v. TAMKO Bldg. Prods., Inc.*, No. 19-2630-JWL, 2020 WL 5548807, at *7 (D. Kan. Sept. 16, 2020) (*Melnick II*).

[26] Doc. 124 (Redacted Second Amended Complaint); Doc. 126 (Sealed Second Amended Complaint).

[27] Doc. 285.

fail before the end of the warranty period that accompanies the product.  They allege that Defendant has had issues meeting the tear-strength standard since the standard was implemented and continues to do so.  In addition, Plaintiffs contend that Defendant's naming of the shingles with the number 30 and 50, and the marketing of the respective warranty period, led purchasers to believe that the shingles would last for 30 and 50 years.

Defendant has filed a Motion for Summary Judgment on the named Plaintiffs' claims.

## III.  Discussion

### A.  The Melnicks' Claims

The Melnicks' claims include: (1) fraudulent nondisclosure, (2) violation of the CPLA, and (3) unjust enrichment.[28]  Defendant argues that it is entitled to summary judgment because (1) all claims fail for lack of loss/injury, (2) the fraudulent nondisclosure claim fails because of lack of reliance and deception, and (3) the CPLA claim is stale.  The Melnicks contend that (1) there is evidence of damages; (2) the fraudulent nondisclosure claim does not require reliance, but even if it does, there is evidence of it; and (3) the CPLA claim is not stale.  The Court addresses each argument in turn, before concluding that Defendant is not entitled to summary judgment on any of the Melnicks' claims.

#### 1.  Damages

Defendant first asserts that the Melnicks' claims fail for lack of loss or injury because under Connecticut law, all of the Melnicks' claims require evidence that they suffered damages. The Court agrees with Defendant's statement of the law.  The Melnicks, however, present

---

[28] All Plaintiffs also seek injunctive and declaratory relief.  The declaratory and injunctive claims rise and fall with the substantive claims.  *See Nero v. Oklahoma*, 2022 WL 14423872, at *2 (10th Cir. 2022) (stating that the plaintiff must state a valid cause of action to maintain a declaratory judgment action); *Pinkney v. TBC Corp.*, No. 19-cv-2680-HLT, 2020 WL 1528544, at *6 (D. Kan. Mar. 31, 2020) (stating that "injunctive relief is a remedy, not an independent cause of action") (citation omitted).

evidence that they spent several thousand dollars repairing damage to the inside of their home. In addition, they contend that they submitted a warranty claim to Defendant around the same time the damages occurred that was denied. Accordingly, there is a genuine dispute of material fact regarding whether the Melnicks sustained an injury or a loss. Thus, summary judgment on this basis would be inappropriate.[29]

### 2. Fraudulent Nondisclosure

Defendant next asserts that the Melnicks' fraudulent nondisclosure claim fails for lack of reliance and deception. As to this claim, Defendants point out that Judge Lungstrum's previous order limited the two sets of misrepresentations/nondisclosures as: (1) Defendant's website "touted the shingles' purported resistance to algae and [] described the 50-year warranty, but [] did not disclose the product's defects"; and (2) "the 'Heritage 50' product's name indicated to them that the shingles would last for 50 years."[30]

The parties disagree over whether reliance is an element of this claim with Defendant asserting that it is, and the Melnicks asserting that it is not. Connecticut defines fraudulent nondisclosure as:

> Fraud by nondisclosure . . . involves the failure to make a full and fair disclosure of known facts connected with a matter about which a party has assumed to speak, under circumstances in which there was a duty to speak . . . . A lack of full and fair disclosure of such facts must be accompanied by an intent or an expectation that the other party will make or will continue in a mistake, in order to induce that other party to act to her detriment.[31]

---

[29] The Court notes, however, that there is no evidence that the price of the Melnicks' home was affected by the shingles.

[30] *Melnick v. TAMKO Bldg. Prods., Inc.*, No. 19-2630-JWL, 2020 WL 5548807, at *2 (D. Kan. Sept. 16, 2020) (*Melnick II*).

[31] *Saggese v. Beazley Co. Realtors*, 109 A.3d 1043, 1054 (Conn. App. Ct. 2015) (quoting *Reville v. Reville*, 93 A.3d 1076 (Conn. 2014)).

The Court concludes that reliance is an element of a fraudulent nondisclosure claim in Connecticut.  "It is an essential element of any claim of fraud that the alleged fraudulent activity was made in order 'to induce action by the other party.'"[32]  Furthermore, cases from Connecticut explicitly state that "[i]n an action based on fraudulent nondisclosure the plaintiff must prove not only the nondisclosure but his reliance on it."[33]  Thus, the Melnicks must prove reliance to prevail on their fraudulent nondisclosure claim.

The Melnicks argue that they present evidence of reliance by showing that they purchased the shingles because of their algae resistance, quality, endurance, and the expectation that they would last 50 years.  Defendant contends that the Melnicks cannot demonstrate that they relied upon Defendant's misrepresentations because Mr. Melnick testified that: (1) he knew that algae could grow on the shingles; and (2) he understood that the warranty length did not mean that the shingles were guaranteed to last that long.[34]  Yet, Mr. Melnick also testified that he believed that Defendant stated that the shingles were algae-resistant when they really were not.  And Mr. Melnick testified that he believed that the Heritage 50 shingle was a 50-year product.  Thus, Defendant's argument discounts other testimony by Mr. Melnick.  Because a reasonable jury could find that the Melnicks relied upon Defendant's statements, there are genuine issues of material fact that preclude summary judgment.  Accordingly, the Court denies summary judgment on this claim.

---

[32] *Asnat Realty, LLC v. United Illuminating Co.*, 253 A.3d 56, 66 (Conn. App. Ct. 2021) (quoting *Whitaker v. Taylor*, 916 A.2d 834, 842 (Conn. Ct. App. 2007)).

[33] *Falcigno v. Falcigno*, CV126033535S, 2018 WL 4308679, at *6 (Conn. Super. Ct. Aug. 13, 2018) (quoting *Creelman v. Rogowski*, 207 A.2d 272, 274 (Conn. 1965)).

[34] Defendant does not address any of the other elements of the claim.

### 3. CPLA Claim

Finally, Defendant asserts that Plaintiffs' CPLA claim is stale and barred by the statute of repose.  Plaintiffs assert that their claim is not barred because two exceptions to the statute of repose are applicable: (1) the "useful safe life" exception; and (2) the intentional misrepresentation or fraudulent concealment exception.  Connecticut General Statute Annotated § 52-577a(a) provides that "[n]o product liability claim . . . shall be brought . . . later than ten years from the date that the party last parted with possession or control of the product."  Here, the Melnicks' shingles were installed in 2002, and they filed suit in 2015.  Thus, their CPLA claim will be barred by the ten-year statute of repose if no exception is applicable.[35]

#### a. Useful Safe Life Exception

Pursuant to Conn. Gen. Stat. Ann. § 52-577a(c), the ten-year statute of repose is not applicable if Plaintiff demonstrates that "the harm occurred during the useful safe life of the product."[36]  The useful safe life of a product starts at the time of the product delivery, "extends for the time during which the product would normally be likely to perform or be stored in a safe manner," and "expires when the product is no longer 'likely' to be safe for 'normal' use."[37]  When determining whether the useful safe life exception is applicable,

> the trier of fact may consider among other factors: (1) [t]he effect
> on the product of wear and tear or deterioration from natural

---

[35] *See State Farm Fire & Cas. Co. v. Omega Flex, Inc*., 3:20-CV-00648, 2023 WL 2666676, at *8 (D. Conn. Mar. 28, 2023) (noting that the ten-year statute of repose in § 52-577(a) would bar the plaintiff's CPLA claim, absent any exception, because the defendant "last parted with possession or control" of the product fifteen years before the complaint was filed).

The parties have already been before the Court on this issue two times previously.  *See Melnick II*, 2020 WL 5548807, at *3 (finding that the second amended complaint adequately alleged facts "to support [the plaintiffs] invocation of the useful-safe-life exception" and denying Defendant's request for dismissal); *Melnick v. TAMKO Building Prods., Inc.*, 469 F. Supp. 3d 1082, 1096 (D. Kan. 2020) (*Melnick I*) (granting Plaintiffs leave to amend their complaint to allege additional facts that the useful-safe-life exception may be applicable).

[36] Conn. Gen. Stat. Ann. § 52-577a(c).

[37] *Hubbard-Hall, Inc. v. Monsanto Co.*, 98 F. Supp. 3d 480, 483–84 (D. Conn. 2015) (quoting the Model Uniform Products Liability Act § 110(A) (1979)).

> causes; (2) the effect of climatic and other local conditions in which the product was used; (3) the policy of the user and similar users as to repairs, renewals and replacements; (4) representations, instructions and warnings made by the product seller about the useful safe life of the product; and (5) any modification or alteration of the product by a user or third party.[38]

Generally, "[t]he duration of the product's useful safe life is a question of fact for the jury."[39]

Here, Defendant asserts two arguments.  It first asserts that the shingles continue to shed water so therefore they have never ceased being useful or safe.  Defendant contends that because the shingles remain useful, this fact contradicts Plaintiffs' claims that the shingles are defective.  However, there are factual questions as to the shingles' defectiveness.  Furthermore, the useful safe life exception may be applicable "if the product was still 'in a condition to accomplish its intended purpose' when the harm occurred."[40]   Thus, there are questions of fact as to the condition of the shingles and whether the useful safe life exception is applicable.

Defendant next contends that Plaintiffs cannot prove that their shingles' failures occurred during the useful safe life of the product, because Plaintiffs' own expert stated that a variety of factors can affect the shingle's useful life.  Yet, this evidence does not demonstrate conclusively that the useful safe life exception is *inapplicable*.  Instead, it shows that there are questions of fact regarding the durability and longevity of the shingles.  Accordingly, there are questions of fact about the applicability of the useful safe life exception.  Thus, summary judgment is inappropriate on this point.

### b.  Intentional Misrepresentation/Fraudulent Concealment Exception

---

[38] Conn. Gen. Stat. Ann. § 52-577a(c); *see also Hubbard-Hall,* 98 F. Supp. 3d at 483–84 (quoting § 52-577a(c)).

[39] *Kuhne v. Reynolds*, 3:01cv1090, 2019 WL 959678, at *6 (D. Conn. Feb. 27, 2019) (citing *Hubbard-Hall*, 98 F. Supp. 3d at 483)).

[40] *Hubbard-Hall*, 98 F. Supp. 3d at 484 (quoting *Terry v. Palace Aids, Inc.*, CV990078989S, 2000 WL 1521347, at *3 (Conn. Super. Ct. Sept. 22, 2000)).

Defendant also challenges Plaintiffs' alternative argument that the intentional misrepresentation/fraudulent concealment exception to the ten-year statute of repose applies. Connecticut General Statute Annotated § 52-577a(d) provides that "[t]he ten-year limitation . . . shall not preclude any action against a product seller who intentionally misrepresents a product or fraudulently conceals information about it, provided the misrepresentation or fraudulent concealment was the proximate cause of harm of the claimant." Yet, Defendant simply relies on the same argument it asserted above as to why the fraudulent nondisclosure claim fails, *i.e.*, that there is no evidence of deception and reliance. The Court previously rejected this argument because there are questions of fact relating to reliance and deception. For these same reasons, Defendant fails to demonstrate that the misrepresentation/fraudulent concealment exception to the ten-year statute of repose is inapplicable. Because genuine issues of material fact remain as to whether either exception to the statute of repose is applicable, Defendant is not entitled to summary judgment on the CPLA claim.

In sum, the Court denies Defendant's motion for summary judgment on the Melnicks' claims.

### B. Ms. Louthan's Claims

Ms. Louthan's claims include: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) strict product liability (design defect, manufacturing defect, and failure to warn), (4) negligence, (5) negligent failure to warn, (6) fraudulent concealment, and (7) violation of the OCSPA.[41] Defendant asserts that it is entitled to summary judgment on her claims because (1) there is no evidence of injury, (2) the fraud-based claims fail due to lack of reliance, (3) the express warranty claim fails for several reasons, including that she was not the

---

[41] She also seeks injunctive and declaratory relief.

"owner" of the home and that she waited six years before filing a warranty claim, (4) the negligent failure to warn claim fails under Ohio law, and (5) the tort and OCSPA claims are time-barred.  The Court addresses each argument in turn.

### 1. Injury/Damages

Defendant asserts that each of Ms. Louthan's claims require proof that she suffered an injury, and that Plaintiff has no such evidence of damages.  In Ohio, a breach of express warranty claim requires proof that "the plaintiff suffered an injury as a result of the defect."[42]  A breach of implied warranty requires proof that the product was defective and that the defect caused the injury.[43]  Strict product liability claims also require that the defect proximately caused the plaintiff's damages.[44]  In addition, a plaintiff cannot prove a negligence claim without proving damages.[45]  An element of a negligent failure to warn claim is an injury proximately caused by the breach of the duty to warn.[46]  In addition, a fraudulent concealment claim requires injury or damages.[47]  Finally, a claim brought under OSCPA requires injury or actual damages proximately caused by the deceptive practices of the defendant.[48]

Ms. Louthan does not challenge Defendant's argument that she is required to present evidence of damages for each claim, but she asserts that she does so.  She argues that all her claims must proceed because the evidence shows that she suffered damages to her house in 2009

---

[42] *See Holbrook v. Louisiana-Pacific Corp.*, No. 3:12cv484, 2015 WL 1291534, at *3 (N.D. Ohio Mar. 23, 2015) (citing *Thompson I.G. v. Edgetech I.G. Inc.*, 590 F. App'x 532, 537 (6th Cir. 2014)).

[43] *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir. 2000) (citation omitted).

[44] *McConnell v. Cosco, Inc.*, 238 F. Supp. 2d 970, 975 (S.D. Ohio 2003).

[45] *Moore v. Kubota Tractor Corp.*, No. 12CA7, 2013 WL 313841, at *5 (Ohio Ct. App. Jan. 23, 2013).

[46] *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) (addressing a negligent failure to warn claim under Ohio law).

[47] *Cianfaglione v. Lake Nat'l Bank*, 134 N.E. 3d 661, 666–67 (Ohio Ct. App. 2019).

[48] *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 680 (6th Cir. 2017).

and 2012 that could be due to roof leaks.  Ms. Louthan presents some evidence of damages, but it is unclear as to whether those damages resulted from defective shingles.  Because there is question of fact as to whether Ms. Louthan's injury or damages were caused by the shingles, summary judgment is inappropriate on this basis.

### 2.  Reliance

Defendant next asserts that Ms. Louthan's fraud-based claims fail for lack of reliance.[49] Ms. Louthan contends that there is evidence demonstrating her reliance.  Ms. Louthan states that her roofer provided her with a Heritage Shingles brochure and sample board.[50]  In addition, Ms. Louthan states that she read a copy of the shingles' warranty prior to purchasing the shingles. Due to this evidence, the Court finds that there are genuine disputes of material fact as to whether Ms. Louthan relied upon these representations when she decided to purchase the shingles.  Thus, Defendant is not entitled to summary judgment on this basis.

### 3.  Breach of Express Warranty

Defendant argues that Ms. Louthan's breach of express warranty claim also fails for two additional reasons.  First, Defendant contends that Ms. Louthan is not entitled to invoke the benefits of the Limited Warranty because she was not the "owner" of the house on which the shingles were installed.  Second, Defendant asserts that even if the warranty extended to Ms. Louthan, she failed to notify Defendant within 30 days following discovery of a problem with

---

[49] Defendant contends that Ms. Louthan's breach of express warranty claim and fraudulent concealment claim are both fraud claims.  The Court will not categorize Ms. Louthan's breach of express warranty claim as a fraud-based claim.  Instead, the Court only addresses Defendant's contention that Ms. Louthan does not have evidence of reliance.

[50] Defendant cites to the roofer's testimony that he did not show Ms. Louthan any marketing brochures. This testimony simply raises further issues of material fact.  In addition, these facts are more relevant to determining credibility, and the Court does not make credibility determinations as to conflicting testimony at the summary judgment stage. *Lazy S Ranch Properties, LLC v. Valero Terminaling and Distrib. Co.*, 92 F.4th 1189, 1198 (10th Cir. 2024).

the shingles. Ms. Louthan contends that there are questions of fact as to whom the owner of the home was at the time of shingles installation, whether the 30-day requirement was waived, and when Ms. Louthan discovered the problems with the shingles. The Court will only address whether Ms. Louthan was the "owner" of the house because this point is dispositive.

The Court first notes that Defendant seeks summary judgment on this breach of express warranty claim on a limited basis. Ms. Louthan points out that Defendant did not challenge Ms. Louthan's breach of warranty claim as it relates to express warranties formed outside of the written Limited Warranty itself. In other words, Defendant does not challenge the express warranties in the marketing materials that Ms. Louthan viewed. Because Defendant does not move for summary judgment on this basis, nor address Ms. Louthan's argument on this point, the Court also will not address it. Instead, the Court will only address the limited argument as to the Limited Warranty.

As to Defendant's first contention, the evidence shows that Ms. Louthan purchased the shingles for the home in 2004. But the evidence also shows that the home was in Ms. Louthan's mother's name in 2004, and her mother did not transfer ownership to Ms. Louthan until 2010. The written Limited Warranty states it is applicable to the "'owner' of the building at the time the [s]hingles are installed on that building."[51] Thus, at the time of the shingles installation, Ms. Louthan was not the owner of the home, and the express written Limited Warranty would not extend to her. Furthermore, the Limited Warranty provides that it could be transferred "one time during the first two years" of the warranty's term to a purchaser of the property that the shingles were placed on. Here, there is no evidence that the warranty was transferred within the first two years of the warranty term because the warranty term began in 2004.

---

[51] *Id.*

Ms. Louthan's contention that there is a question of fact as to who the "owner" was at the time of the shingles purchase is contradicted by the evidence. Accordingly, the Court agrees with Defendant that Ms. Louthan is not covered by the written Limited Warranty. Thus, Defendant is entitled to summary judgment on this claim—to the extent it is premised on the written Limited Warranty.

### 4. Negligent Failure to Warn

Defendant asserts that Ohio does not recognize a negligent failure to warn claim absent safety issues. In addition, Defendant argues that Ms. Louthan does not present any evidence of personal injury. Ms. Louthan does not disagree with the lack of evidence of personal injury. Instead, Ms. Louthan contends that a negligent failure to warn claim does not require product safety to be at issue.

In Ohio, a negligent failure to warn claim requires a plaintiff to demonstrate that "(1) the manufacturer had a duty to warn; (2) the duty was breached; and (3) the plaintiff's injury proximately resulted from the breach of duty."[52] In addition, a plaintiff must show "'that in the exercise of ordinary care, the manufacturer knew or should have known of the risk or hazard about which it failed to warn' and 'that the manufacturer failed to take the precautions that a reasonable person would have taken in presenting the product to the public.'"[53]

In *In re Whirlpool Corp. Front-Loading Washer Products Liability Litigation*,[54] the Northern District of Ohio addressed a negligent failure to warn claim in the context of a product liability case and found that such a claim was "cognizable in Ohio only if the allegedly

---

[52] *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013) (citing *Hanlon v. Lane*, 648 N.E.2d 26, 28 (Ohio Ct. App. 1994)).

[53] *Id.* (quoting *Doane v. Givaudan Flavors Corp.*, 919 N.E.2d 290, 296 (Ohio Ct. App. 2009)).

[54] 45 F. Supp. 3d 706 (N.D. Ohio 2014).

inadequate warning addresses a *safety* defect."[55]  The court noted that Ohio case law was clear that "a manufacturer or vendor is negligent when he has knowledge of a latent defect *rendering a product unsafe* and fails to provide a warning of such defect."[56]  Thus, the court concluded that "the legal requirements for [the plaintiff's] failure-to-warn claim are different from [the plaintiff's] other tort claims—a safety defect is required."[57]  Accordingly, the Northern District of Ohio dismissed the plaintiff's negligent failure to warn claim because it found that the propensity for mold growth inside a washing machine was not a safety defect.[58]

The Court finds the Northern District of Ohio's ruling persuasive that a negligent failure to warn claim requires a safety defect.  Ms. Louthan does not present any evidence that the shingles were unsafe or involved a safety defect.  Accordingly, Defendant is entitled to summary judgment on this claim, and the Court dismisses Ms. Louthan's negligent failure to warn claim.

### 5.  Statute of Limitations

Finally, Defendant asserts that each of Ms. Louthan's tort claims[59] and part of her OCSPA claim are time-barred.[60]  The parties disagree as to whether Ms. Louthan's tort claims are governed by a two-year or four-year statute of limitations.[61]  Regardless of which statute of limitations is applicable, the parties agree that the statute of limitations may not begin until the

---

[55] *Id.* at 716.

[56] *Id.* (collecting Ohio cases).

[57] *Id.* at 717–18.

[58] *Id.* at 718–19.

[59] Defendant includes Ms. Louthan's claims for breach of implied warranty of merchantability, strict liability (design defect, manufacturing defect, and failure to warn), negligence, and negligent failure to warn (Counts II–VII) as her tort-based claims.

[60] Defendant states that it is not advancing a timeliness argument as to post-2015 conduct, *i.e.*, obstruction of the warranty claim in 2015.

[61] Defendant contends that a two-year statute of limitations governs Ms. Louthan's claims, while Ms. Louthan asserts that a four-year statute of limitations is applicable.

injury is discovered, and that this discovery rule applies both to Ms. Louthan's tort claims and part of her OCSPA claim.  The parties disagree, however, as to the timing of Ms. Louthan's discovery of the injury and whether she timely commenced these claims.  The Court only addresses the parties' discovery rule argument at this time, finding that there are questions of fact that preclude summary judgment on this issue.

Ordinarily, a cause of action in tort cases accrues, and the statute of limitations begins to run, at the time of the wrongful act.[62]  Under the discovery rule, however, the statute of limitations does not start "until a plaintiff knew or should have reasonably known both that [the] plaintiff was injured and that there was a connection between the injury and a defendant's conduct."[63]  "The statute of limitations is tolled only until a plaintiff has an indication of wrongful conduct of the defendant."[64]  "[T]he discovery rule is an exception created to avoid the unconscionable result in circumstances where an injured party's right to recovery may be barred by the statute of limitations before he is even aware of its existence."[65]  "Often, the application of a statute of limitations is a mixed question of law and fact."[66]

Defendant argues that Ms. Louthan was aware of the alleged problems with the shingles in 2009.[67]  It contends that the evidence shows that she speculated that the leak in her home in 2009 was from the shingles.  In addition, Defendant asserts that Ms. Louthan did not take any

---

[62] *W.H.C., Inc. v. Interlake Chemicals, LTD*, 549 F. Supp. 3d 723, 727 (N.D. Ohio 2021) (citation omitted); *see also Norgard v. Brush Wellman, Inc.*, 766 N.E.2d 977, 979 (Ohio 2002).

[63] *W.H.C.,Inc.* 549 F. Supp. 3d at 727 (citations omitted); *see also In re Whirlpool Corp. Front-Loading Prods. Liab. Litig.*, 45 F. Supp. 3d 706, 721–22 (N.D. Ohio 2014) (citations omitted).

[64] *W.H.C., Inc.*, 549 F. Supp. 3d at 728 (internal quotation marks and citation omitted).

[65] *New Wembley LLC v. Klar*, 202 N.E.3d 99, 103 (Ohio Ct. App. 2022) (citations omitted).

[66] *Id.* at 104 (quoting *Doe v. Robinson*, No. L-07-1051, 2007 WL 3120279, ¶ 17 (Ohio Ct. App. Oct. 26, 2007).

[67] Defendant only addresses the 2009 leak and does not address the 2012 leak.

steps to investigate the cause of the 2009 leak until years later.  Thus, Defendant argues that the statute of limitations (whether it be two years or four years) should not be tolled pursuant to the discovery rule, and Ms. Louthan's claims are barred because she did not file suit until seven years after her initial injury.[68]

Ms. Louthan contends that her 2016 filing satisfies the statute of limitations (whether it be four years or two years) because the discovery rule applies.  She asserts that she did not know that the 2009 and 2012 roof leaks (her injuries) were a result of Defendant's conduct until 2015.  She testified that she "'really became aware' of the degranulation, cracking, and other issues with the [s]hingles in 2015."[69]  Thus, Ms. Louthan asserts that because she did not know that her injuries were caused by her defective shingles until 2015, the clock began to run in 2015, and her claims were timely filed in 2016.

Here, the pertinent question is when Ms. Louthan knew or reasonably should have known that Defendant's product allegedly caused her injuries.  Ms. Louthan and Defendant present widely different dates for when she discovered the shingles' defect—2009 versus 2015.  Defendant, on the one hand, argues that Ms. Louthan has no evidence that her roof leaks in 2009 and 2012 were caused by the shingles.  On the other hand, Defendant asserts that Ms. Louthan knew, or should have reasonably known, that these leaks were caused by the shingles.  Ms. Louthan asserts that she was unaware of the defective shingles until 2015, and only realized then that her 2009 and 2012 leaks resulted from Defendant's conduct.

---

[68] Defendant does not set forth a specific date. In this case, the First Amended Complaint, which included Ms. Louthan as a plaintiff, was filed on May 16, 2016.  Thus, the Court uses this date to measure the timeliness of Ms. Louthan's claims.

[69] Doc. 362 at 38.

The Court concludes that, based on the evidence currently before the Court, there is a question of fact as to when Ms. Louthan knew that Defendant's shingles allegedly caused her injuries. Furthermore, there is a question of fact as to whether Ms. Louthan exercised reasonable diligence in discovering that Defendant's shingles caused her injuries.[70] Thus, Defendant's request for summary judgment on the basis that Ms. Louthan's tort claims are barred by the statute of limitations is denied because the discovery rule might apply to toll Ms. Louthan's claims.

As to Ms. Louthan's OCSPA claim, the discovery rule is also applicable to OSCPA claims seeking rescission.[71] "Rescission or revocation of a contract of sale is not available . . . unless the same occurs within a reasonable time after the consumer discovers or should have discovered the reason thereof, and before a substantial change in the condition of the subject of the transaction."[72] As noted above, there are disputed issues of fact as to when Ms. Louthan discovered, or should have discovered the shingles' issues. Thus, Defendant's argument for summary judgment on the OSCPA claim also fails.

In sum, the Court grants in part and denies in part Defendant's motion as to Ms. Louthan's claims. Ms. Louthan's negligent failure to warn claim is dismissed. In addition, Ms.

---

[70] *See New Wembley*, 202 N.E.3d at 104 (finding that an issue of fact existed as to whether the plaintiff should have discovered the conduct of the defendant earlier and thus summary judgment was inappropriate); *W.H.C., Inc.*, 549 F. Supp. 3d at 728 (finding that it could not dismiss the plaintiffs' complaint because it appeared "that there may be a dispute of material fact as to when plaintiffs reasonably knew or should have known that the defendants' product caused the [injury].").

[71] *Mayernik v. CertainTeed LLC*, 476 F. Supp. 3d 625, 634 (S.D. Ohio 2020) (citing *Allen v. Andersen Windows, Inc.*, 913, F. Supp. 2d 490, 506 (S.D. Ohio 2012)). "The discovery rule applies only to OCSPA claims seeking recission as a remedy; otherwise, there is no discovery rule applicable to OCSPA claims." *Id.* Rescission of the consumer transaction is an available remedy under the OCSPA. *See Baker v. Tri-County Harley Davidson, Inc.*, No. CA98-12-250, 1999 WL 1037262, at *2 (Ohio Ct. App. Nov. 15, 1999) (citing Ohio Rev. Code § 1345.09(B)).

[72] *Clayton v. McCary*, 426 F. Supp. 248, 262 (N.D. Ohio 1976) (quoting Ohio Rev. Code § 1345.09(C)).

Louthan's breach of express warranty claim, to the extent it is premised on the written Limited Warranty, is dismissed.  Ms. Louthan's other claims remain.

### C.  Summerfield Gardens' Claims

Summerfield Gardens' claims include: (1) strict liability (design defect, manufacturing defect, and failure to warn), (2) negligence, (3) negligent failure to warn, (4) unjust enrichment, (5) fraudulent disclosure/concealment, (6) negligent misrepresentation, and (7) violation of ICFA.[73]

Defendant contends that it is entitled to summary judgment on Summerfield Gardens' claims because (1) Summerfield Gardens spoliated the shingles at issue, (2) the failure to warn and fraud-based claims fail because there is no evidence of reliance and proximate cause, (3) the negligence and strict liability claims are barred by the economic loss doctrine, and (4) the unjust enrichment claim fails for the same reason the fraud claims fail.  The Court will address each argument in turn.

### 1.  Spoliation

Defendant first contends that, except for the last two roofs to be replaced, Summerfield Gardens spoliated evidence related to the allegedly defective shingles.  Defendant essentially argues that Summerfield Gardens fails to produce the defective product and thus cannot prove its claim.  Summerfield Gardens argues that Defendant had access to, and took possession of, some of the defective shingles.  In addition, Summerfield Gardens asserts that one of Defendant's experts inspected three duplex's shingles.

---

[73] It also seeks injunctive and declaratory relief.

Based on the record before the Court, it is unclear as to what evidence is lacking.[74] Defendant admits that there is evidence as to the last two roofs to be replaced.  In addition, it is uncontroverted that Summerfield Gardens sent shingles from the first roof that had issues— 5004/5006 Castlegate Lane—to Defendant as part of its warranty claim, and Defendant inspected those shingles and approved the warranty claim.  Finally, there is evidence that Defendant's expert examined shingles from at least three roofs and observed the removal of shingles from several other roofs.  Thus, Defendant is not entitled to summary judgment on this basis.

### 2.  Reliance and Proximate Cause

Defendant next argues that five of Summerfield Gardens' claims—failure to warn,[75] fraudulent concealment, negligent misrepresentation, and violation of the Illinois Consumer Fraud Act ("ICFA")—fail for lack of reliance and proximate cause.  It contends that Summerfield Gardens does not have evidence, and cannot demonstrate, that Summerfield Gardens' harm was proximately caused by Defendant's statements or misrepresentations.  Summerfield Gardens contends that there is evidence to support that it was harmed by Defendant's statements and misrepresentations.

Summerfield Gardens' strict product liability claim (failure to warn) and its negligent failure to warn claim both require that Defendant's failure to warn was the proximate cause of

---

[74] Defendant uses the word "spoliation."  "Spoliation is the intentional destruction or alteration of evidence."  *Foster v. Lawrence Memorial Hosp.*, 809 F. Supp. 831, 836 (D. Kan. 1992) (citing Black's Law Dictionary 1401 (6th ed. 1990)).  In addition, "[i]n Illinois, spoliation of evidence is a form of negligence." *Schaefer v. Universal Scaffolding & Equip., LLC*, No. 10-cv-0791-MJR-PMF, 2014 WL 509344 (S.D. Ill. Feb. 10, 2014) (citation omitted).  To the extent that Defendant is requesting a sanction against Summerfield Gardens for destroying evidence, Defendant's argument fails.  Defendant does not adequately address spoliation law in the context of a sanction.

[75] There are two claims related to failure to warn:  strict liability – failure to warn (Count V) and negligent failure to warn (Count VII).

the injury.[76]  Summerfield Gardens' fraudulent concealment claim also requires that damages

result from the plaintiff's reliance.[77]  In addition, Summerfield Gardens' negligent

misrepresentation claim and ICFA claims require reliance.[78]

Summerfield Gardens identifies two types of statements or misrepresentations that it

relied upon, and which were the proximate cause of its injuries: (1) the "bad batch" statement,

and (2) representations in Defendant's promotional materials.[79]  The Court will address each set

of statements separately.

### a.  "Bad Batch" Statement

Summerfield Gardens alleges that Defendant's warranty representative told it that the

shingles on one of Summerfield Gardens' buildings were part of a "bad batch," which led

Summerfield Gardens to believe that the shingles problem was isolated when in fact it was

common to other roofs in the complex.  Defendant asserts that there is not a triable question of

fact as to whether the "bad batch" statement was made because Summerfield Gardens cannot

specifically identify the name of the TAMKO representative or the specific time that the

information was relayed.  This specificity, however, is unnecessary.

Summerfield Gardens provides sufficient evidence, through several different individuals,

that during the warranty claim process, it was told that the shingles failed because they were

---

[76] *See Vhora v. Michelin N. Am., Inc.*, No. 98 C 2657, 1999 WL 63682, at *3 (N.D. Ill. Feb. 4, 1999) (addressing a strict product liability failure to warn claim) (citation omitted); *Kane v. R.D. Werner Co.*, 657 N.E.2d 37, 39 (Ill. App. Ct. 1995) (noting that a negligent failure to warn claim will fail if the plaintiff did not read the warnings because the plaintiff's injuries could not be caused by the defendant's warnings).

[77] *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 274 (Ill. App. Ct. 2015).

[78] *Great N. Ins. Co. v. Amazon.com, Inc.*, 524 F. Supp. 3d 852, 859–60 (N.D. Ill. 2021) (stating that the plaintiff's negligent misrepresentation claim and ICFA claim failed because the plaintiff did not produce any evidence that he relied on false misrepresentations, and thus failed to prove causation).

[79] Judge Lungstrum also identified these two sets of representations as: "(1) the 'bad batch' statement, and (2) representations by [Defendant] in its promotional materials."  *Melnick v. TAMKO Bldg. Prods., Inc.*, 469 F. Supp. 3d 1082, 1112 (D. Kan. 2020) (*Melnick I*).

from a "bad batch."  Summerfield Gardens also provides evidence that it believed that the problem was isolated, so they delayed the replacement of shingles on other roofs.  And they also provide evidence that after this statement, shingles on numerous other homes had issues and caused damage.  Thus, there is a question of fact as to whether Summerfield Gardens relied on this "bad batch" statement and whether the "bad batch" statement proximately caused Summerfield Garden's damages.

### b.  Other Misrepresentations/Promotional Statements

Defendant also contends that Summerfield Gardens cannot demonstrate that it relied on any of Defendant's promotional statements, and thus cannot demonstrate that its damages were proximately caused by Defendant's misrepresentations.  Defendant argues that the evidence demonstrates that nobody on the Summerfield Gardens' board saw any marketing materials from Defendant prior to purchasing Defendant's shingles.  In addition, Defendant asserts that the developers who purchased the shingles also testified that they did not review any marketing materials prior to the purchasing the shingles.

Summerfield Gardens concedes that nobody on its board saw any marketing materials by only responding to Defendant's argument that the developers did not rely on any marketing materials prior to purchasing Defendant's shingles.  Summerfield Gardens argues that the developer/builders had already been using the shingles and would have had the opportunity to view the marketing materials earlier.  Yet, Summerfield Gardens does not identify any earlier marketing materials, any misrepresentations included in such marketing materials, or any information that was omitted from said marketing materials.  Indeed, Summerfield Gardens does not identify any misrepresentations or omissions specific to its builders/developers, and thus fails

to offer any evidence that the builder/developer relied on any misrepresentations or omissions.[80] In conclusion, Summerfield Gardens' claims for failure to warn, fraudulent concealment, and negligent misrepresentation can only proceed as to the "bad batch" statement.[81]  They are dismissed as to any other alleged misrepresentations or omissions.

### 3.  Economic Loss Doctrine

Defendant next asserts that Summerfield Gardens' strict liability and negligence claims[82] are barred by the economic loss doctrine ("ELD").  In Illinois, the ELD is known as the *Moorman* doctrine.[83]  "Under *Moorman*, solely economic losses generally are not recoverable in tort actions, including under theories of strict liability and negligence."[84]  An exception to this rule is "where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud."[85]  Summerfield Gardens' strict liability and negligence claims proceed under the fraud exception to the ELD doctrine.[86]

Defendant argues that the ELD fraud exception that Summerfield Gardens relies upon hinges on the "bad batch" statement.  And Defendant reiterates its previous argument that there is no evidence that this statement was the proximate cause of any property damage.  The Court previously found, however, that there were questions of fact as to whether Summerfield

---

[80] Summerfield Gardens' argument that the builders stopped using the shingles does not demonstrate Summerfield Gardens' reliance on Defendant's statements (misrepresentations and/or omissions) and/or harm resulting from those statements.  It simply demonstrates that the builders stopped using the shingles.

[81] The Court notes that the ICFA claim was already limited to the "bad batch" statement.

[82] Docs. 124, 126; Counts III, IV, V, VI, VII and X.

[83] *Melnick v. TAMKO Bldg. Prods., Inc.*, 469 F. Supp. 3d 1082, 1105 (D. Kan. 2020) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (1982)).

[84] *Id.* (citing *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (1997)).

[85] *Id.* (quoting *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 333–34 (2006)).

[86] *Melnick v. TAMKO Bldg. Prods., Inc.*, No. 19-2630-JWL, 2020 WL 5548807, at *5–6 (D. Kan. Sept. 16, 2020) (*Melnick II*).  Though Summerfield Gardens attempted to assert that several *Moorman* exceptions applied, Judge Lungstrum allowed the claims to proceed under only the fraud exception.  *Id.*

Gardens' reliance on the "bad batch" statement proximately caused Summerfield's damages. Thus, Defendant's argument again fails, and because there are questions of fact as to whether the "bad batch" statement proximately caused Plaintiff's injuries, the ELD does not bar Summerfield Gardens' claims.[87]   Accordingly, the Court denies Defendant's motion for summary judgment as to these claims on this basis.

### 4. Unjust Enrichment

Defendant argues that Summerfield Gardens' unjust enrichment claim is just a repackaged version of its fraud-based claims and that because the fraud-based claims fail, the unjust enrichment claim must fail too.  Summerfield Gardens argues that its unjust enrichment claim is not based solely on fraudulent conduct.  Instead, it argues that its unjust enrichment claim concerns Defendant "unjustly retaining a benefit for the inferior Shingles installed on the Summerfield Gardens buildings."[88]

In Illinois, to state an unjust enrichment claim, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience."[89]   If a plaintiff's claim is premised "on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the

---

[87] Defendant does not address the other misrepresentations/promotional statements under the ELD fraud exception.  Instead, Defendant erroneously states that Judge Lungstrum only allowed Summerfield Gardens to replead its tort claims under the fraud exception to the ELD based on the purported "bad batch" statement.  However, Judge Lungstrum previously allowed Summerfield Gardens to "rely on both the alleged 'bad batch' statement *and other alleged representations in support of its ELD argument* and fraudulent concealment claim."  *Id.* at *7 (emphasis added).  Thus, Judge Lungstrum specifically stated that the other alleged misrepresentations were at issue under the ELD fraud exception.  Because Defendant fails to address these additional statements in the context of the ELD fraud exception, Defendant does not move for summary judgment as to these statements, and thus summary judgment is improper.

[88] Doc. 362 at 29.

[89] *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (1989)).

unjust enrichment claim as well."[90]  However, "fraud is not an indispensable element of an unjust enrichment claim" if the plaintiff's theory of unjust enrichment is not based on fraudulent dealings.[91]  Because Summerfield Gardens' unjust enrichment claim is not based solely on fraudulent conduct but is also based on the premise that Defendant unjustly retained a benefit, that is the sales proceeds for its sale of the alleged defective shingles, Defendant's argument for summary judgment on the unjust enrichment claim fails.  Accordingly, the Court denies Defendant summary judgment on this claim.

In sum, the Court grants in part and denies in part Defendant's motion as to Summerfield Gardens' claims.  Summerfield Gardens' claims for failure to warn, fraudulent concealment, negligent misrepresentation, and violation of the ICFA can only proceed as to the "bad batch" statement.  Those claims are dismissed as to any other alleged misrepresentations or omissions.  Summerfield Gardens' strict liability, negligence, and unjust enrichment claims remain.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 318) is **granted in part** and **denied in part**.  The Melnicks' claims remain.  Ms. Louthan's claims are dismissed in part and remain in part.   Summerfield Gardens' claims are dismissed in part and remain in part.

**IT IS SO ORDERED.**

Dated: March 27, 2024

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[90] *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007) (discussing the holding in *Athey Prods. Corp v. Harris Bank Roselle*, 89 F.3d 430 (7th Cir. 1996)).

[91] *Id.*